FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNIFIED WESTERN GROCERS, INC.;
CERTIFIED GROCERS OF CALIFORNIA,
LTD.; GROCERS SPECIALTY
COMPANY; ALFRED A. PLAMANN;
CHARLES PILLITER; DANIEL T. BANE;
ROBERT M. LING; DAVID A.
WOODWARD,
        *Plaintiffs-Appellants,*

v.

TWIN CITY FIRE INSURANCE
COMPANY, an Indiana corporation,
        *Defendant-Appellee.*

No. 05-15986
D.C. No.
CV-03-00336-HG
OPINION

Appeal from the United States District Court
for the District of Hawaii
Helen Gillmor, District Judge, Presiding

Argued and Submitted
June 9, 2006—Pasadena, California

Filed August 14, 2006

Before: Alex Kozinski and Ronald M. Gould, Circuit Judges,
and Ricardo S. Martinez,* District Judge.

Opinion by Judge Gould

---

*The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, sitting by designation.

9543

## COUNSEL

Jonathan H. Steiner, McCorriston Miller Mukai MacKinnon LLP, Honolulu, Hawaii, for the plaintiffs-appellants.

Kim W. West, Tucker Ellis & West LLP, San Francisco, California, for the defendant-appellee.

## OPINION

GOULD, Circuit Judge:

We must determine whether the Appellants, three related corporate entities and six officers and/or directors of these entities, are entitled to insurance coverage for an underlying litigation brought by the bankruptcy trustee of a former subsidiary of the corporate entities. The district court granted summary judgment to the insurance company based on findings that the trustee's complaint alleged only willful acts and sought only restitutionary relief uninsurable under California law. We hold that genuine issues of material fact remain as to the resolution of these issues, and we remand to the district court for further factual development.

I

Before May 1996, Hawaiian Grocery Stores, Inc. ("HGS") was a wholly-owned subsidiary of Appellant Grocers Specialty Corporation, which was itself a subsidiary of Appellant Certified Grocers of California, Ltd., now known as Appellant Unified Western Grocers, Inc.[1] Unified acquired HGS on January 16, 1990 for about $2.3 million and reportedly invested a total of $7 million into the subsidiary from 1990 to 1996. After HGS began to lose money in 1995 and 1996, Unified decided to sell HGS. In May 1996, Unified appointed six corporate officers of Unified to act as officers and/or directors of HGS (the "Individual Appellants"). These officers and/or directors approved a leveraged buy-out transaction on May 14, 1996 to sell all of the common shares of HGS from Unified to an entity named RHL, Inc. for around $2.4 million.[2]

---

[1] Following the method of the Appellants, all three corporate appellants will be referred to as "Unified" or the "Corporate Appellants."

[2] RHL, Inc. is alleged to be the alter ego of Richard H. Loeffler who acted as President of HGS after Unified relinquished its ownership interest in HGS.

To fund this transaction, Unified obtained a line of credit from Congress Financial Corporation for $4.5 million, which was secured by the assets of HGS. At the same time, the Individual Appellants, acting as the HGS board of directors, also authorized a secured promissory note for $5.3 million from HGS to Unified, which converted Unified's equity investment in HGS into a secured debt, and issued preferred stock of HGS to Unified. The Individual Appellants, except for Appellant Daniel Bane, then resigned their positions as officers and/or directors of HGS on May 28, 1996 after the consummation of the sale of stock from Unified to RHL, Inc.

HGS filed for bankruptcy on December 15, 1999 in the District of Hawaii. Mark J.C. Yee ("Yee" or "trustee") was appointed trustee for the bankruptcy estate. Yee then filed two actions in the district court: *Yee v. Unified Western Grocers, et al.*, Civil No. 02-164, (the "Entity Litigation"), which involved only the Corporate Appellants and HGS's accounting firm, KPMG, and *Yee v. Unified Western Grocers, et al.*, Civil No. 02-668, (the "Underlying Litigation"), which named the Corporate Appellants, Individual Appellants, and other law firms and individuals.[3]

According to the Third Amended Complaint ("TAC" or "Underlying Complaint") in the Underlying Litigation, which is the operative pleading for the summary judgment motions at issue, Unified "retained a control position in HGS, through its conspiratorial relationship with RHL, Inc, and used this position to obtain not only the $2.4 million . . . for its stock, but large payments on its antecedent investment, that it would likely not have been repaid if the HGS had been liquidated or sold at a nominal price in 1996." TAC ¶ 106. The complaint alleges that Unified continued to drain assets out of HGS while misleading creditors as to the credit-worthiness of HGS and concealing damaging information. Yee alleges that

---

[3] According to the parties, both actions have settled and been dismissed while this appeal was pending.

around $8.5 million was transferred from HGS to Unified between May 1996 and December 1999. *See* Entity Litig., 4th Am. Compl. ¶ 158.

The Individual Appellants were insured by Appellee Twin City under a Directors' and Officers' Liability Policy ("D&O Policy") issued to Unified. The D&O Policy did not provide corporate entity coverage for these types of claims, but required Twin City to reimburse Unified for any losses for which Unified had indemnified its insured directors and officers and for which the directors and officers became legally obligated to pay as a result of any covered claim made during the policy period. The Underlying Complaint alleged three claims against the insured Individual Appellants for which Unified sought coverage under this policy: breach of fiduciary duty (Count 2), aiding and abetting (Count 17), and civil conspiracy (Count 19).[4]

On June 27, 2003, Appellants filed a Complaint for Declaratory Relief seeking a judgment that Twin City was obligated to pay defense costs and reimburse Appellants for losses resulting from the Underlying Complaint. Cross-motions for summary judgment for the first phase were filed on August 30, 2004.[5] After a hearing on December 6, 2004, the district court issued an order on April 21, 2005, granting Twin City's motion for summary judgment and denying Appellants' motion for summary judgment. *See Unified W. Grocers, Inc.*

---

[4]The Underlying Complaint asserted identical claims by Value Recovery Group ("VRG"), a creditor who assumed the revolving line of credit issued by Congress Financial Services. The district court held that Appellants' complaint against Twin City did not seek reimbursement or declaratory relief with respect to claim asserted by VRG. *See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 371 F. Supp. 2d 1234, 1249 (D. Haw. 2005). Appellants have not challenged this finding on appeal.

[5]Both parties stipulated to bifurcation of cross-motions for summary judgment. The first phase of cross-motions was to determine whether or not any coverage existed for the trustee's claims, while the second phase would address allocation of any non-covered losses.

v. *Twin City Fire Ins. Co.*, 371 F. Supp. 2d 1234, 1249 (D. Haw. 2005). The district court held that coverage was properly denied based on section 533 of the California Insurance Code, which precludes indemnification or reimbursement for claims resulting from willful acts. *Id.* at 1245. The district court also held that a public policy exclusion under California law precluded indemnification because the claims only sought restitutionary relief or disgorgement of ill-gotten gains. *See id.* at 1247. Finally, the district court held that a contractual exclusion in the policy barred reimbursement for claims asserted against Appellant Bane because he was sued by a trustee of the outside entity where he was acting as an employee.[6] *Id.* at 1247.

## II

"In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits." *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 833 (9th Cir. 2006). Hawaii, which is the location of the district court in this appeal, has "moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter." *Lewis v. Lewis*, 748 P.2d 1362, 1365 (Haw. 1988) (citing *Peters v. Peters*, 634 P.2d 586 (Haw. 1981). "Primary emphasis is placed on deciding which state would have the strongest interest in seeing its laws applied to the particular case." *Id.*

The district court held that California had the most significant relationship to the parties and the subject matter. While the Underlying Litigation involved a Hawaiian bankruptcy trustee and a Hawaiian corporation, the Appellants for this

---

[6]Daniel Bane remained a director of HGS and an officer of Unified after the buy-out transaction when HGS ceased to be a subsidiary of Unified. Twin City issued an endorsement extending coverage for Bane during his service as a director for an outside entity (i.e. HGS).

appeal are predominantly from California[7] and Appellee Twin City is a large insurance company based in Indiana. The subject matter of this action involves a insurance policy negotiated and formed in California. The district court did not err in holding that California has the strongest interest in seeing its laws applied to this case and that the parties were most closely connected with California.

### III

[1] The district court held that section 533 of the California Insurance Code would preclude coverage for the claims asserted against the directors and officers in the Underlying Complaint. Section 533 states: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

The California Supreme Court has made clear: "Section 533 reflects a fundamental public policy of denying coverage for willful wrongs." *J.C. Penney Cas. Ins. Co. v. M.K.*, 804 P.2d 689, 694 n.8 (Cal. 1991) (citations omitted), *cert. denied*, 502 U.S. 902 (1991). "It is an implied exclusionary clause which, by statute, must be read into all insurance policies." *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 154 (Ct. App. 1998). Because section 533 is considered under California to be an exclusionary clause, the insurer has the "burden of proving that the requested claims are matters 'uninsurable under the law.'" *Raychem Corp. v. Fed. Ins. Co.*, 853 F. Supp. 1170, 1175 (N.D. Cal. 1994).

[2] "Section 533 does not bar coverage for conduct which may be wrongful, but which is not intentional or willful from the standpoint of the insured." *Melugin v. Zurich Can.*, 57 Cal. Rptr. 2d 781, 785 (Ct. App. 1996). Preclusion under this statute requires more than negligence, recklessness or even

---

[7] One of the Appellants, David A. Woodward, is from Texas.

the "intentional doing of an act constituting ordinary negligence or the violation of a statute." *Downey*, 78 Cal. Rptr. 2d at 155. The statutory exclusion is intended to preclude indemnification for conduct that is "clearly wrongful and necessarily harmful." *Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*, 90 Cal. Rptr. 2d 721, 736 (Ct. App. 1999) (footnote omitted).

Although previous case law had required a specific intent to inflict harm, *see Clemmer v. Hartford Ins. Co.*, 587 P.2d 1098, 1110 (Cal. 1978), the California Supreme Court held in 1991 that section 533 can preclude indemnification without "a showing by the insurer of its insured's 'preconceived design to inflict harm' when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself." *J.C. Penney*, 804 P.2d at 698. A "willful act" has been further defined by California's intermediate appellate courts as "an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 832 (Ct. App. 1993). "Therefore, section 533 precludes indemnification for liability arising from deliberate conduct that the insured expected or intended to cause damage." *Id.* at 833.

[3] In determining whether an unproven claim is covered by an applicable insurance policy, we are reluctant to frame coverage based on isolated allegations in an underlying complaint. As we stated previously, "the third party complainant, who may overstate the claims against the insured, should not be the arbiter of the policy's coverage." *Gon v. First State Ins. Co.*, 871 F.2d 863, 869 (9th Cir. 1989); *see also Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 (Cal. 1966) ("Obviously, . . . the complainant in the third party action drafts his complaint in the broadest terms; he may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint that alleges intentional misconduct." (citation

omitted)).[8] The same underlying conduct that is eventually proven to be merely negligent may be asserted in the complaint as intentional and willful. Even when faced with allegations that paint a broad picture of fraudulent schemes and conspiracies, the application of section 533, made on summary judgment without evidence of the insured's actual conduct, should consider whether any asserted claim may allow for liability based on alleged conduct that has a lower degree of culpability. *See, e.g., Raychem*, 853 F. Supp. at 1180 (Because "alleged violations of § 10(b) and Rule 10b-5 . . . require only a showing of recklessness to fulfill the scienter requirement . . . summary judgment [for the insured] is appropriate, unless [the insurer] can put forth facts which show that the acts of the officers and directors were willful."); *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 9 Cal. Rptr. 2d 894, 905 (Ct. App. 1992) (holding that the underlying wrongful termination claim was precluded by section 533 because the claim created a potential for recovery only if there was proof of willful conduct).

It is clear that certain allegations in the Underlying Complaint describe willful conduct. Twin City makes repeated reference to allegations in the Underlying Complaint concerning a "scheme to withdraw the cash from HGS and give it to [Unified] for essentially worthless stock." TAC ¶ 82. Yee alleges that the "scheme by [Unified] was intended to mislead others who would rely upon the credit worthiness of HGS and be left unpaid after RHL and [Unified] drained the remaining assets out of the company for their own benefit." *Id.* ¶ 107. A claim for conspiracy asserted against the insured Appellants

---

[8]*Gon* and *Gray* involved interpretations of an insurer's duty to defend potentially covered claims and is not directly applicable to determining an insurer's duty to indemnify loss, which requires an actually covered claim. However, in granting the insurer's motion for summary judgment, the district court concluded that there were no covered claims as a matter of law in the Underlying Litigation, which is closely analogous to the question of whether there is a potentially covered claim. *See Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 18 Cal. Rptr. 2d 692, 704 (Ct. App. 1993).

alleges that the "Defendants entered into a continuing conspiracy . . . aimed at obtaining money from HGS with the view that all or much of that money would be funneled to Unified or Certified." *Id.* ¶ 254.

[4] Although the conspiracy claim contains allegations of willful conduct, another claim asserted against the Individual Appellants does not necessarily require such a high degree of culpability. Count 2 of the Underlying Complaint asserts that the directors, officers, and other participants in the May 1996 transaction breached their fiduciary duties owed to HGS and its creditors. This claim alleges that the Individual Appellants had a conflict of interest from acting as officers and/or directors of both Unified and HGS at the same time during this transaction and that the transaction was against the best interest of HGS and its creditors. *See id.* ¶ 137, 142-44. Yee alleges that the Individual Appellants "knew or should have known, that taking these actions was improper and a breach of their respective duties as employees, officers, directors, and/or fiduciaries." *Id.* ¶ 144.

Although these allegations are similar to the conspiracy claims described above, the trustee did not hinge liability on a fraud or deceit on the corporation or its creditors, but on a conflict of interest by the Individual Appellants while they acted as officers and/or directors of HGS. As alleged in the Underlying Complaint, a claim for breach of fiduciary duty could allow for liability if the Appellants should have known that their actions were against the interests of HGS and its creditors, but did not take the necessary precautions to protect these interests. *See Lippi v. City Bank*, 955 F.2d 599, 612 (9th Cir. 1992) ("[W]here there is evidence that the parties knew or should have known that the transaction would deplete the assets of the company, the court will look beyond [the leveraged buy-out's] formal structure" in determining fraudulent transfer liability.); *see also* William Meade Fletcher, 3 *Fletcher Cyclopedia of the Law of Private Corporations* § 837.60 (2005) ("If, for example, an officer neglects the sub-

UNIFIED WESTERN GROCERS v. TWIN CITY FIRE    9555

stantial interests of his or her corporate principal by preferring another in a matter of importance, the officer may well offend his or her duty of loyalty though his or her heart is pure."). "As a fiduciary, [the director's] duties to the corporation include undivided, unselfish and unqualified loyalty, unceasing effort never to profit personally at corporate expense, and unbending disavowal of any opportunity which would permit the director's private interests to clash with those of his corporation." *Lussier v. Mau-Van Dev., Inc.*, 667 P.2d 804, 819-20 (Haw. 1983) (internal quotations and citation omitted). Breach of this fiduciary duty, which may occur without any intent or expectation to cause harm, is not necessarily a willful act because it does not require a "knowing, intentional and purposeful act that is clearly wrongful and necessarily harmful." *See Mez Indus.*, 90 Cal. Rptr. 2d at 736 (footnote omitted).

Twin City argues that any negligent or non-willful conduct that may allow for liability in the breach of fiduciary duty claim is inseparably intertwined with the willful conduct alleged as part of the Appellants' conspiracy. California case law does not allow the underlying complaint to expand the scope of coverage for the insured by including claims of negligence when the underlying factual allegations against the insureds are exclusively intentional or willful. *See Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 18 Cal. Rptr. 2d 692, 701-02 (Ct. App. 1993) (rejecting any duty to defend or indemnify for noncriminal sexual harassment based on section 533, regardless of any potential negligence claim which could have been asserted on the underlying facts). The court in *Coit* held: "We are required to interpret section 533 so as to give effect and meaning to all its provisions; just as we cannot allow insurers to recharacterize negligent conduct as intentional, we cannot allow the insured to recast intentional conduct as merely negligent." *Id.* at 702. Allegations of negligence do not give rise to an insurer's duty to indemnify if the harm is alleged to result from negligent conduct which is "so intertwined with intentional and willful wrongdoing as to be

inseparable from the wrongdoing." *Marie Y. v. Gen. Star Indem. Co.*, 2 Cal. Rptr. 3d 135, 157 (Ct. App. 2003) (internal citation, quotation and alteration omitted).

[5] Based on the current record, we conclude that the allegations of negligent conduct are not inseparably intertwined with the allegations of willful conduct. The damages alleged in the Underlying Complaint do not unavoidably originate from intentional and willful conduct by the insured. *See Uhrich v. State Farm Fire & Cas. Co.*, 135 Cal. Rptr. 2d 131, 144 (Ct. App. 2003) ("The defamations shown *by the evidence* were embraced by Lindseth's campaign. Uhrich cannot manufacture coverage from conjecture about potential claims concerning unspecified, yet hypothetically 'different,' defamations." (citation omitted)). Also, the alleged non-willful conduct is not "part and parcel" with the willful conduct alleged as a scheme to defraud. *See Marie Y.*, 2 Cal. Rptr. 3d at 157. The insureds may be subject to liability solely for their negligence in holding conflicting positions and approving a transaction which allegedly caused the bankruptcy of HGS.

[6] The presence of allegations in the Underlying Complaint that assert a broader scheme to defraud creditors does not automatically subsume all allegations of a negligent character into the sphere of willful conduct. It is commonplace under liberal pleading rules for complaints to assert alternative theories of liability. The Underlying Complaint did not simply recast claims involving willful conduct into smaller acts of negligence in order to allow for coverage. Instead, it alleged a variety of claims against the insured Appellants, some of which asserted negligence and others of which required willfulness. Because the alleged breach of fiduciary duty in the complaint may be satisfied by proof of negligent conduct without any evidence of or logical correlation to a willful scheme to defraud, the district court erred in finding no genuine issue as to whether there was a covered claim that was not inseparable from allegations of willful conduct.

## IV

The district court also denied indemnification for Unified's reimbursement of the insured Appellant's losses because the Underlying Complaint sought only restitution of an ill-gotten gain. The district court held that the trustee's litigation "seeks relief that is restitutionary in character; namely, the return by all Plaintiffs of the monies improperly funneled to the Corporate Defendants as a result of and flowing from the Corporate and Individual Plaintiffs' conspiracy and scheme to loot HGS and strip it of all of its assets." *See Unified W. Grocers*, 371 F. Supp. 2d at 1246. Appellants argue that the Underlying Complaint not only sought restitution, but also sought compensation for monetary loss that was proximately caused by Appellants' wrongful actions but was not actually taken by the Appellants.

[7] California case law precludes indemnification and reimbursement of claims that seek the restitution of an ill-gotten gain. *See Bank of the West v. Superior Court*, 833 P.2d 545, 553 (Cal. 1992). This public policy exclusion for restitutionary relief applies in limited circumstances. "Although the concept of 'restitution' may have a broader meaning in other contexts, we limit our reference to it here to situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired." *Id.* at 554 (citing *Jaffe v. Cranford Ins. Co.*, 214 Cal. Rptr. 567, 570-71 (Ct. App. 1985). "The defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct." *Id.*

The label of "restitution" or "damages" does not dictate whether a loss is insurable. *See id.* at 548 ("[I]nsurable 'damages' include monetary awards that represent compensation for harm to third parties, even if such awards bear the label 'restitution.' "); *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 911 (7th Cir. 2001) ("How the claim or judgment order or settlement is worded is irrelevant."). The fundamen-

tal distinction is not whether the insured received "some benefit" from a wrongful act, but whether the claim seeks to recover only the money or property that the insured wrongfully acquired. *See Bank of the West*, 833 P.2d at 556 ("To emphasize the distinction between what is insurable and what is not, we noted that *Jaffe* bars coverage only in situations in which *the defendant is required to restore to the plaintiff that which was wrongfully acquired*." (emphasis in original) (internal quotation marks omitted)).

[8] Here, the allegations and asserted claims in the Underlying Complaint do not necessarily restrict all potential recovery to restitution. The Underlying Complaint alleges that the wrongful actions of the Appellants "proximately caused the irreversible insolvency of HGS to begin and accelerate into some $13.5 million of losses." TAC ¶ 147. This calculation of total damages was not based on the amount wrongfully acquired by the Corporate Defendants, but on the amount of unpaid debt eventually accumulated by HGS before its bankruptcy. Only a portion of the outstanding debt was apparently taken by the Corporate Defendants after the May 1996 transaction. Although the complaint sought $13.5 million in damages, only $8.5 million were alleged to have been received by Appellants. *See* Entity Litig., 4th Am. Compl. ¶ 158.

[9] When an underlying complaint contains a mixture of covered and uncovered loss, the insurer is obligated to allocate the reimbursement of funds between the two types. *See* D&O Policy § VII (requiring Twin City to "fairly and reasonably allocate such amount between covered Loss and uncovered loss"). While the complaint alleges the wrongful receipt of funds from HGS, other allegations seek damages proximately caused by the Defendants' actions in an amount greater than the amount of money actually alleged to have been taken by the Defendants. A genuine issue of material

fact remains as to the extent that the Underlying Complaint sought restitution of money wrongfully acquired by Unified.[9]

V

The district court held that Exclusion (F) of the Twin City policy precluded coverage for claims relating to Defendant Bane. An endorsement issued by Twin City extended coverage for Bane as serving in an Outside Position while he continued to act as a director of HGS after it ceased to be a subsidiary for Unified. Exclusion (F) precludes coverage for a person in an Outside Position for claims brought by or with "the solicitation, assistance or participation of the entity in which the Director or Officer serves in the Outside Position or any director, officer, trustee, regent, governor or employee of such entity." *See* D&O Policy § V(F). Appellants argue that the phrase "any trustee of the outside entity" in Exclusion (F) should not include a bankruptcy trustee because a bankruptcy trustee represents the bankruptcy estate and not the pre-bankrupt entity.

When interpreting ambiguous terms in a contract, we have long held:

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a tech-

---

[9]Because we find that the allegations in the pleadings are sufficient to raise a genuine issue as to the existence of a covered claim, we do not decide whether the expert reports supplied by Appellants in their motion for reconsideration were properly included within the record on summary judgment.

> nical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.

*AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990).

[10] "[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." *Bank of the West*, 833 P.2d at 552. The "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Id.* (alteration and emphasis omitted). If ambiguities remain in the policy, then these ambiguous terms are construed against the insurer and in favor of coverage. *AIU Ins.*, 799 P.2d at 1264.

The word "trustee" is not defined in the insurance policy and appears to be used to refer both to bankruptcy trustees and other types of trustees who act within corporate management. In some sections of the policy, the word "trustee" is used to describe an executive position within the company, *see* D&O Policy § II(D) (defining "Outside Position" as "the position of director, officer, *trustee*, or other equivalent executive position held by a Director or Officer" in any other entity (emphasis added)), while in other contexts it is clearly intended to refer to bankruptcy trustees. *See id.* § IV(G) (defining "Financial Insolvency" as the status of the Company after "appointment of any receiver, conservator, liquidator, *trustee*, rehabilitator or similar official to control, supervise, manage or liquidate the Company, or the Company becoming a debtor in possession" (emphasis added)).

UNIFIED WESTERN GROCERS v. TWIN CITY FIRE            9561

[11] Although the "ordinary and popular sense" of the phrase "any trustee" may reasonably be viewed in the abstract as including bankruptcy trustees, the surrounding language of the policy exclusion at issue raises an ambiguity.[10] The list in Exclusion (F) of "any director, officer, trustee, regent, governor or employee of the entity" implies that a "trustee" is viewed as a type of executive position in the company and not as a bankruptcy trustee or other representative of the estate. When the policy intended to refer to a bankruptcy trustee, it did not imply that the bankruptcy trustee was a member of the company. A layperson would not likely view a bankruptcy trustee as a trustee of HGS, the corporate entity, but as a trustee of the bankruptcy estate of HGS. *See In re Swift Aire Lines, Inc.*, 30 B.R. 490, 495 (9th Cir. B.A.P. 1983) ("The bankruptcy estate of Swift is, represented by the trustee, a new legal entity distinct from the debtor Swift Aire Lines, Inc." (citing 11 U.S.C. §§ 323, 363, 541, 704, and 721)).

[12] The insured's objectively reasonable interpretation of this phrase would not necessarily include a bankruptcy trustee. Because the contractual exclusion is ambiguous in this context, its application should be construed against the insurer in a manner that affords coverage for Defendant Bane. The district court erred in holding that this exclusion precludes coverage for Defendant Bane.

## VI

The district court's grant of summary judgment to Twin City is REVERSED.[11] We REMAND for further proceedings consistent with this opinion.

---

[10]"Our construction of that phrase is informed by the doctrine of *ejusdem generis* under which a term is interpreted by reference to the surrounding language." *Mez Indus.*, 90 Cal. Rptr. 2d at 733.

[11]Because we reverse the district court's grant of summary judgment, we need not consider the appeal of Appellants' motion for reconsideration.

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

NOV 0 6 2006

by / Deputy Clerk