# McCorriston Miller Mukai MacKinnon LLP

### ATTORNEYS AT LAW

June 23, 2004

Twin City Insurance Company
c/o The Hartford
**ATTENTION: D & O Claims**
Hartford Plaza
Hartford, CT 06115

> Re:  Value Recovery Group, L.P. vs. KPMG, et al.
> Civ. No. 04-1-0355-02 (GWBC); First Circuit Court,
> State of Hawaii (Policy No. NDA0105226)

Dear Sirs or Mesdames:

This law firm represents Unified Western Grocers, Inc., formerly known as Certified Grocers of California, Ltd., Grocers Specialty Company, Alfred A. Plamann, Charles Pilliter, Daniel T. Bane, Robert M. Ling and David A. Woodward in connection with the above matter. Notice is hereby given and tender is hereby made to Twin City Fire Insurance Company for defense, coverage and indemnification under the above-referenced Policy No. NDA0105226 (the "Policy") against any and all demands, attorneys fees, claims expenses, costs and other Loss in connection with the Claim made by Value Recovery Group, L.P., as Assignee of the Federal Deposit Insurance Corporation, Receiver of Southern Pacific Bank in the above referenced civil action filed in the Circuit Court of the First Circuit, State of Hawaii. This Claim was recently served on one or more of our clients, who are Insureds under the Policy. A copy of the complaint is enclosed. I am sending a copy of this letter to Wesley H. H. Ching and Kim West, counsel for Twin City in <u>Unified Western Grocers, Inc. et al. v. Twin City</u>, Civ. No. 03-00336 HG BMK (U.S. Dist. Ct. Hawaii), in the event either represents or will

EXHIBIT "_C_"

Twin City Insurance Company
June 23, 2004
Page 2

be representing Twin City in this matter, as well. Please feel free to contact me, or have counsel contact me, should you have any questions or require further information.

Very truly yours,

McCorriston Miller Mukai
MacKinnon LLP

Christopher J. Cole

CJC:jsa
Enclosure
cc w/enc:    Wesley H. H. Ching, Esq.
             Kim W. West, Esq.

53946/87120_2.DOC

JOHN RAPP  #1164
737 Bishop Street, Suite 2920
Honolulu, Hawaii 96813
Telephone: (808) 531-3151
Facsimile: (808) 531-6064

Attorney for Value Recovery Group, L.P.,
As Assignee of the
Federal Deposit Insurance Corporation,
Receiver of Southern Pacific Bank

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2004 FEB 24  PM 4: 02

H. CHING
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

### STATE OF HAWAII

| | |
|---|---|
| VALUE RECOVERY GROUP, L.P., AS ASSIGNEE OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, RECIEVER OF SOUTHERN PACIFIC BANK | ) CIVIL NO. 04 - 1 - 0 3 5 5 - 0 2 (*GWBC*) <br> ) Other Non Vehicle Tort <br> ) <br> ) <br> ) COMPLAINT; SUMMONS <br> ) |
| Plaintiff | ) <br> ) |
| v. | ) <br> ) |
| KPMG, UNIFIED WESTERN GROCERS, INC., CERTIFIED GROCERS OF CALIFORNIA, LTD., GROCERS SPECIALTY, ALFRED A. PLAMANN, CHARLES PILLITER, DANIEL T. BANE, ROBERT M. LING, DAVID A. WOODWARD, FLETCHER ROBBE, DOES 1-10 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants | ) <br> ) |

### COMPLAINT

Value Recovery Group, L.P., as Assignee of the Federal Deposit Insurance Corporation,

Receiver of Southern Pacific Bank, for a claim for relief against Defendants above named,

alleges and avers as follows:

### COUNT I

1.    Value Recovery Group, L.P. is the Assignee of the Federal Deposit Insurance Corporation, which is Receiver of Southern Pacific Bank including its division or subsidiary, Coast Business Credit, and is owner of the claims of Coast Business Credit against Defendants.

2.    Defendant Alfred A. Plamann was an officer and Director of Hawaiian Grocery Stores, Ltd. ("HGS").

3.    Defendant Charles Pilliter was an officer and Director of HGS.

4.    Defendant Daniel T. Bane was an officer and Director of HGS.

5.    Defendant Robert M. Ling was an officer of HGS.

6.    Defendant David A. Woodward was an officer and Director of HGS.

7.    KPMG/Peat Marwick, LLC ("KPMG"), is an international accounting firm that does business in Hawaii.

8.    At certain times relevant hereto, KPMG contracted to provide auditing services and other accounting services to HGS, including the preparation of certain tax returns of HGS.

9.    Defendant Fletcher Robbe was an officer of HGS and a California attorney for HGS in the month of May, 1996 and thereafter until HGS went into bankruptcy on December 15, 1999.

10.    Defendant Certified Grocers of California, Ltd. ("Certified") was the controlling shareholder of HGS at various times.

11.    Defendant Unified Western Grocers, Inc. ("Unified Grocers") is a California corporation and the successor in interest to Certified.

12.    Defendant Grocers Specialty Company ("Grocers Specialty") is a former wholly owned subsidiary and alter ego of Defendant Certified and is now a subsidiary of Unified Grocers.

2

13.    Defendant Does 1-10 are individuals or entities that intentionally, recklessly, negligently, and/or otherwise who conspired and/or participated in he wrongful activities alleged below in the capacity of an officer and/or a director, of a defendant or in the capacity of an attorney, Certified Public Accountant and/or firm.

14.    The names of Does 1-10 are not known and/or the extent of their conduct is not known to the extent necessary to include such conduct in the complaint at the time of the filing of the complaint.

15.    Plaintiff has made reasonable inquiries into the identities of said persons and entities by interviewing the attorney and others associated with the bankrupt debtor, and has read the documents and records that have so far been gathered belonging to or regarding the bankrupt debtor HGS, but does not yet know the identities of all such persons and entities that participated in the wrongdoing and seeks leave to insert the true identities when they are discovered.

16.    Federal Deposit Insurance Corporation ("FDIC") has assigned all of its rights, title and interest in HGS defaulted Note to Value Recovery Group, L.P. ("VGR" or "Plaintiff").

17.    The FDIC was appointed as Receiver of the former Southern Pacific Bank ("SPB") on February 7, 2003.

18.    SPB, through its division or subsidiary, Coast Business Credit ("Coast"), extended credit to HGS.

19.    At the time of the HGS assignment by the FDIC to VRG, there remained an unpaid principal balance in the approximate amount of $2,346,270.00, plus accrued interest.

20.    The Defendants entered into a continuing conspiracy, or one or more conspiracies, aimed at obtaining money from Coast with the view that all or much of that money would be funneled to Unified or Certified, with Coast being largely or in part unpaid.

3

21.    Defendants aided and abetted each other in accomplishing said goal.

22.    Defendants had a duty to but failed to disclose to Coast their plan and that the promise being made by HGS to repay Coast would largely be unperformed.

23.    At all relevant times, Certified and Unified controlled HGS and its operations and were its de facto partner and alter ego.

24.    Certified and Unified were also the alter egos of Grocers Specialty.

25.    Certified and Unified further used Grocers Specialty and HGS as its agents and are responsible for their actions.

26.    On or about July 1, 1996 the Board of Directors of HGS agreed to retain KPMG to provide accounting services for HGS.

27.    KPMG agreed to provide auditing services to HGS of the financial statements of HGS for the seven months ended December 31, 1996 ("1996 Audit").

28.    During the auditing procedures, KPMG learned of cash losses arising out of HGS' operating activities.

29.    Since HGS was losing cash from its operating activities at an ever increasing rate, it therefore had to borrow more and more money each year to cover its mounting cash losses.

30.    The borrowing increased HGS debt by 39% in less than two years (from $3.8 million of debt on September 3, 1994 to $5.3 million of debt by June 1, 1996).

31.    KPMG further knew that in May 1996, HGS became obligated to pay two secured notes totaling $7.7 million which were comprised of the new $5.3 million fully secured note payable to Certified, and a new $2.4 million note payable to Congress Financial. HGS established a new revolving loan with Congress Financial for an amount that would not exceed $5.4 million. On December 31, 1996, this large increase in debt brought the HGS percentage of

4

debt to assets up to 58%. In 1994 the debt amounted to only 33% of its assets.

32.    KPMG also knew that HGS had to begin paying quarterly principal payments of $331,250 on its $5.3 million note on August 31, 1999, and HGS would not have the cash to make these principal payments. HGS did not have sufficient operating income to pay its interest payments.

33.    At the end of 1996, there was substantial doubt about the ability of HGS to continue as a going concern during 1997, since HGS could not afford its continued borrowing to pay its larger and larger cash deficiencies from its operating activities.

34.    KPMG also provided auditing services to HGS of the financial statements for the year ending December 31, 1997 ("1997 Audit").

35.    While KPMG conducted the 1997 audit procedures, not only did it have available all the information from the 1996 audit, but also the new fact that HGS lost the Times Supermarket account, a principal customer of HGS, which caused a predictable sales decrease by 16% in the following year, 1998.

36.    During 1997, the debt ratio of HGS further worsened since HGS was living on borrowed money and could not pay all of its operating expenses and its increasing debt load.

37.    Despite the above and other unfavorable information, KPMG issued a clean opinion in its audit report for the year ended December 31, 1997, and did not disclose in its audit report that there was substantial doubt about the ability of HGS to continue as a going concern during 1998.

38.    The financial statements of December 31, 1996 and 1997 also overstated the value of HGS through the use of "push down" accounting.

39.    These financial statements erroneously report that HGS had goodwill of $642,000

5

in 1996, which was adjusted upward in 1997.

40.    There was no value in the HGS common stock when Certified transferred the shares to RHL, Inc.

41.    If there was no sale of stock to RHL, Inc., KPMG would not be able to apply the push down accounting to the transaction.

42.    There was no resulting goodwill, and no goodwill should have been shown in the audited financial statements.

43.    The financial statements of HGS, for the years ended December 31, 1996 and 1997, erroneously stated the amount of the bank overdraft.

44.    KPMG failed in its audits accurately to report the bank overdraft account and associated outstanding checks.  HGS printed and withheld a material amount of "outstanding checks."

45.    HGS posted the printed checks as payments of accounts payable, but kept the checks on the controller's desk and did not mail them.  It included these checks in its list of outstanding checks and KPMG included these checks in the bank overdraft account.  As a result, its financial statements incorrectly reported the amount of account payable.  This misled Coast, which relied on KPMG's audit report, and violated the Coast's loan covenant that required HGS to be current on its accounts payable.

46.    Said audit reports claimed that the HGS financial statements fairly represented the financial condition of HGS when they did not.  As a result of the negligence, recklessness and or intentional deceit of Defendant, the reports were false and materially misleading and misled Coast, which reasonably relied on them.  Among other matters, the reports did not disclose that there was substantial doubt about the ability of HGS to continue as a going concern.  The 1996

6

and 1997 audits do not conform to Generally Accepted Accounting Principles and the work was not done in conformity with Generally Accepted Accounting Standards.

47.    KPMG also had an undisclosed conflict of interest that prevented KPMG from objectively opining on the 1997 audited financial statements.

48.    KPMG had an agreement with a company to receive a contingent fee plus other monies in connection with a sale of a wholesaling business to HGS.

49.    This transaction would not have become available unless KPMG provided a clean audit for 1997.

50.    KPMG would receive a contingent fee if HGS were able to borrow and pay the Hawaii company $2.5 million for an investment into that company.  HGS needed a strong financial statement to support this $2.5 million loan.

51.    During this period, KPMG changed the HGS net loss of $191,058 to a profit of $10,046.

52.    If the audit had been properly prepared, HGS would not have been able to continue operating and losing unnecessary amounts of money.

53.    KPMG's preparation of the audits, as alleged above, was negligent, materially misleading, and caused injury to Coast by allowing HGS to continue to borrow money from Coast which reasonably relied on the reports.

54.    These events eventually ended up resulting in substantial losses to Coast and damages in such amounts as shall be shown a trial.

55.    At all relevant times, the following individual defendants were officers of Defendant Certified, and/or its wholly owned subsidiary, Grocers Specialty:

      a.    Defendant Alfred A. Plamann (Chairman of the Board of Certified);

    b.    Charles Pilliter (Senior Vice President of Certified);

    c.    Daniel T. Bane (Senior Vice President of Certified and Chief Financial Officer of Certified); (Senior Vice President and Chief Financial Officer of Grocers Specialty);

    d.    Robert M. Ling, Jr. (General Counsel Certified);

    e.    David A. Woodward (Treasurer and Assistant Secretary of Certified and Secretary Treasurer of Grocers Specialty).

55.    At some point unknown, Certified determined that its $2.4 million investment in HGS had become worthless and that the long term outlook for HGS was bleak.

56.    Certified and its wholly owned subsidiary, Grocers Specialty, desired the following actions be taken:

    a.    Grocers Specialty sell 10,000 shares of worthless HGS stock for $2.4 million.

    b.    Grocers Specialty obtained a sublessee for its lease of a Hawaii warehouse for the amount of the lease payments that was above the current market value at the time.

    c.    Grocers Specialty obtain a $5.3 million secured note from HGS.

57.    The above desired actions were against the best interests of creditors of HGS.

58.    Each of the Defendants owed a duty of due care to Plaintiff and HGS and negligently breached that duty.

59.    At the time the Defendant officers and directors took the above described actions, they all had a conflict of interest between their duties as officers and directors of HGS and officers and directors of Certified and Grocers Specialty, which they failed to disclose to Coast.

60.    At the time the Defendant officers and directors took the above described actions, they knew or should have known they had a conflict of interest.

8

61.    At the time the Defendant officers and directors took the above described actions, they knew or should have known that taking these actions were improper and a breach of fiduciary duty, which was owed to the creditors of HGS because it was rendered insolvent as a result of the transactions.

62.    The Defendant officers and directors took various actions and aided and abetted each other in continuing further actions that implemented their plans.

63.    As the controlling shareholder or controlling entity of HGS, Defendants Certified, Unified and Grocers Specialty owed a fiduciary duty to HGS' creditors.

64.    As a result of the actions of Defendants, Coast was induced to loan substantial sums to HGS, which loans are in part unpaid, and has been damaged in an amount to be shown.

65.    Defendants have been unjustly enriched and the Court should order restitution.

<u>COUNT II</u>

66.    Plaintiff repeats and realleges each of the above allegations.

67.    The actions of Defendants were done in a grossly negligent manner, willfully, recklessly, and in conscious disregard for the rights of Plaintiff, warranting the imposition of exemplary or punitive damages in such amounts as shall be shown at trial.

WHEREFORE, Plaintiff prays that:

A.    The Court enter a Judgment in favor of Plaintiff against Defendants for damages to be determined at trial, plus interest.

B.    The Count enter Judgment in favor of Plaintiff and against Defendants for punitive damages in an amount to be proven a trial.

C.    The Court award to Plaintiff its reasonable attorney's fees and costs.

D.    The Court afford Plaintiff such other and further relief as is just and proper.

9

DATED: Honolulu, Hawaii, _____Feb. 24_____, 2004

_____
John Rapp
Attorney for Plaintiff

10

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| VALUE RECOVERY GROUP, L.P., | ) | CIVIL NO. |
| AS ASSIGNEE OF THE FEDERAL DEPOSIT | ) | Non-Motor Vehicle Tort |
| INSURANCE CORPORATION, RECIEVER | ) | |
| OF SOUTHERN PACIFIC BANK | ) | |
| | ) | SUMMONS |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| KPMG, UNIFIED WESTERN GROCERS, | ) | |
| INC., CERTIFIED GROCERS OF | ) | |
| CALIFORNIA, LTD., GROCERS | ) | |
| SPECIALTY, ALFRED A. PLAMANN, | ) | |
| CHARLES PILLITER, DANIEL T. BANE, | ) | |
| ROBERT M. LING, DAVID A. | ) | |
| WOODWARD, FLETCHER ROBBE, DOES | ) | |
| 1-10 | ) | |
| Defendants | ) | |
| | ) | |

SUMMONS

STATE OF HAWAII

To the above-named Defendants:

You are hereby summoned and required to serve upon John Rapp, Plaintiff's attorney, at 737 Bishop Street, Suite 2920, Honolulu, Hawaii, 96813, an answer to the Complaint which is herewith served upon you. This action must be taken within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Pursuant to Rule 4(b) of the Hawai'i Rules of Civil Procedure, this summons shall not be delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the District or Circuit Courts permits, in writing on the summons, personal delivery during those hours.

DATED: Honolulu, Hawaii _____ FEB 2 4 2004 _____

_____
CLERK OF THE ABOVE-ENTITLED COURT