# ARTER & HADDEN LLP

### ATTORNEYS AT LAW

*founded 1843*

Cleveland
Columbus
Dallas
Dayton
Irvine
Los Angeles

555 California Street, Suite 3130
San Francisco, California 94104

*telephone* 415.617.2100
*facsimile* 415.912.3636

San Diego
San Francisco
Washington, D.C.
Woodland Hills
*Affiliate Office*
Geneva, Switzerland

Direct Dial: 415.617.2224
Email: Kim.West@ArterHadden.com

November 7, 2002

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Jonathan Steiner
**McCorriston Miller Mukai MacKinnon LLC**
5 Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813

|  |  |  |
|---|---|---|
| Re: | Insured: | United Western Grocers, Inc. |
|  | Policy Type: | Directors & Officers Liability |
|  | Policy No.: | NDA0105226-01 |
|  | Claim No.: | 02-287-634 |
|  | Matter: | Various |
|  | Our File No: | 51042/24856 |

Dear Mr. Steiner:

This firm has been retained to represent the interests of Twin City Fire Insurance Company ("Twin City") as coverage and monitoring counsel in with respect to Twin City's Director, Officers and Company Liability Policy No. NDA0105226-01 (the "Policy") in connection with the following matters tendered to Twin City:

1. Mark J. Yee, Trustee for the bankruptcy estate of Hawaiian Grocery Stores, Ltd. v. Unified Western Grocers, Inc., currently pending in the United States Bankruptcy Court for the District of Hawaii, as Adv. No 01-0079;

2. Mark J.C. Yee, Trustee for the bankruptcy estate of Hawaiian Grocery Stores, Ltd. v. Unified Western Grocers, Inc., currently pending in the United States District Court

SFO 121814.1
51042/24856

EXHIBIT "G1"

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 2

for the District of Hawaii, as Civil No. 02-00164 HG
BMK[1]; and

3.    Mark J.C. Yee, Trustee for the bankruptcy estate of
Hawaiian Grocery Stores, Ltd. v. Unified Western Grocers,
Inc., et al., formerly pending in the Circuit Court of the
State of Hawaii, as Civil No. 02-1-116-05, but which has
been removed to the United States Bankruptcy Court for
the District of Hawaii, as Adv. No. 02-0057 (the "State
Court Lawsuit").

## I.    INTRODUCTION

We have reviewed the provisions of the Policy in light of the allegations set forth in the
Federal and State Court Lawsuits. We recognize that the allegations set forth in the Federal and
State Court Lawsuits are unsubstantiated at this time. Nothing contained in this letter is intended
to suggest that those allegations have any factual or legal merit. Nevertheless, at this stage of the
matter, we believe it is prudent to identify coverage issues that have arisen in connection with the
Federal and State Court Lawsuits.

At set forth in detail below, Twin City has determined that there is no coverage under the
Policy for the Federal and State Court Lawsuits for the following reasons:

(1)    there is no coverage for the Federal Lawsuits because no
Directors and Officers of the Company have been named as
defendants;

(2)    pursuant to Endorsement No. 4 of the Policy, there is no
coverage for the Federal and State Court Lawsuits because
the Federal and State Court Lawsuits are "for, based upon,
arising from, [and] related to" Wrongful Acts allegedly
committed by Grocers Specialty prior to May 29, 1999;

(3)    pursuant to Exclusion F of the Policy, there is no coverage
for Claims asserted in the Federal and State Court Lawsuits
because they are "for, based upon, arising from, or in any
way related to [their] serving as a director, officer, trustee,
regent, governor or employee of any entity other than the
Company"; and

---

[1] Adv. No. 01-0079 filed in the United States Bankruptcy Court for the District of Hawaii and Civil No. 02-
00164 8G BMK filed in the United States District Court for the District of Hawaii are collectively referred to herein as
the "Federal Lawsuits."

SFO 121814.1
51042/24856

# ᴐARTER & HADDEN ʟʟᴘ

Jonathan Steiner
November 7, 2002
Page 3

> (4)   there is no coverage for non-insureds named as defendants in the Federal and State Court Lawsuits.

## II.   THE POLICY

Subject to its terms and conditions, the Policy provides primary coverage to the directors and officers of United Western Grocers for the period February 1, 2001, to February 1, 2003. The Policy contains a $10,000,000 limit of liability excess of a $250,000 retention under Insuring Agreement "B."

Pursuant to Insuring Agreement "A," the Policy provides coverage for Loss which the Directors and Officers shall become legally obligated to pay as a result of a Claim first made against them during the Policy Period or Discovery Period for a Wrongful Act which takes place during or prior to the Policy Period.

Insuring Agreement "A" provides, however, that there is no coverage under Insuring Agreement "A" for Loss which Twin City pays pursuant to Insuring Agreement "B." In this regard, Insuring Agreement "B" provides that Twin City will pay on behalf of the Company Loss for which the Company has, to the extent permitted or required by law, indemnified the Directors and Officers, and which the Directors and Officers have become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period.

Under either Insuring Agreement "A" or Insuring Agreement "B," a prerequisite for coverage under the Policy is a Claim against a Director or Officer of the Company. There is no coverage under the Policy for claims against the Company only.

Other relevant terms, limitations, exclusions and endorsements of the Policy will be discussed in more detail below.

## III.   BACKGROUND

### A.   Factual Summary

We summarize the allegations made in the Federal and State Court Lawsuits in order to provide a context for Twin City's comments concerning coverage. This discussion is not meant to imply that the allegations in the pleadings are accurate or that they have any merit whatsoever.

As alleged in the complaints, Unified Western Grocers is a successor in interest to defendant Certified Grocers of California, Ltd. ("Certified Grocers"). Defendant Grocers Specialty Company ("Grocers Specialty") is allegedly a former subsidiary of Certified Grocers and now a subsidiary of Unified Grocers.

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 4

Allegedly, Certified Grocers, through Grocers Specialty, was a stockholder and person in control of Hawaiian Grocery Stores ("HGS"). The Common Shareholders of HGS sold their interest to Certified Grocers for the sum of $10,314,036.50 on January 16, 1990. Certified Grocers, through its wholly-owned subsidiary, Grocers Specialty, then acquired all of the equity shares of HGS in return. According to the complaint, Certified Grocers' acquisition of the all of the common stock of HGS gave Certified Grocers a 100% controlling interest in HGS.

During the next six years, Certified Grocers managed HGS as its wholly-owned subsidiary and invested more than $7,000,000 into HGS. Notwithstanding the investment by Certified Grocers, the financial condition of HGS deteriorated in 1995 and 1996 under Certified Grocers' management. Faced with the potential insolvency and liquidation unless HGS could recapitalize and expand its share of the local market, Certified Grocers, through Grocers Specialty, purportedly embarked on a series of transactions to take as much money as possible out of HGS before it collapsed. As part of this scheme, key employees and officers of Certified Grocers appointed themselves as a majority directors of HGS on or about on or about May 14, 1996, and later the directors of Certified Grocers on the HGS Board traded new financial instruments in HGS and shifted it to the control of HGS from the owners of common stock to the owners of other instruments.

In other words, it appears that Certified Grocers allegedly created new financial instruments which had the effect of shipping their equity interest in HGS to a secured position as a debtor and/or preferred stockholder.

Although the actual dates are unclear from the complaints, it appears that in May 1996, Certified Grocers relinquished its ownership interests in HGS by transferring its common stocks to RHL. Certified Grocers allegedly retained its control over all aspects of HGS' operations after the transfer.

Certified Grocers then allegedly hired Richard Loeffler as president of HGS "effective immediately after Certified [Grocers] relinquished its ownership interest in HGS." *State Court Complaint*, ¶ 33.

Then, with the assistance of Loeffler, Certified Grocers, among other things, allegedly withdrew $2,425,387 from "a financially ailing HGS." Id., at 40.

## B.    The Lawsuits

### 1.    The Federal Lawsuits

On or about December 15, 1999, Yee commenced the bankruptcy lawsuit against Unified Western Grocers and Grocers Specialty. The original complaint in the bankruptcy lawsuit asserted the following causes of action: (1) preference claims under 11 U.S.C. §§547 and 550 for

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 5

sums improperly transferred to Certified Grocers; and (2) preference claims under 11 U.S.C. §§547 and 550 based on Certified Grocers' insider relationship with HGS.

On or about March 1, 2002, the Court entered an order granting the defendants' motion to withdraw the reference of Bankruptcy Adversary Proceeding No. 01-00792 in the bankruptcy court. Consequently, the bankruptcy court litigation was closed, and the Clerk of the Court was directed to open a new case in the United States District Court for the District Court of Hawaii.

The Third Amended Complaint (the "3AC"), the operative complaint in the District Court, asserts one count consisting of a preference claim against Certified Grocers, a second count consisting of a preference claim against Certified Grocers based on an insider relationship, a third count for fraudulent transfer against Certified Grocers & Grocers Specialty, a fourth count for common-law fraud, a fifth count consisting of contract claims against KMPG, and a sixth count consisting of tort claims against KPMG.

The 3AC seeks the following forms of relief: (1) a judgment in favor of plaintiff and against defendants avoiding the preference transfers and ordering defendants to pay plaintiff the sum of $13.5 million, plus interest, "for injuries sustained by keeping HGS operating at continued losses while Certified [Grocers] drained the remaining assets of HGS from 1996 to 1999 when it went into Bankruptcy"; (2) punitive damages against Certified Grocers in the amount of $10 million; (3) other damages to be determined at trial; and (4) attorneys' fees and costs.

No Directors or Officers of the Company are named as defendants in the Federal Lawsuits.

## 2.    The State Court Lawsuit

The State Court Lawsuit is premised on the same transactions described on the factual background section above. The complaint in the State Court Lawsuit names Unified Western Grocers, Certified Grocers, Grocers Specialty, and RHL as defendants. Additionally, the complaint names the following individuals as defendants: Alfred E. Plamann, a director and officer of HGS; Charles Pilliter, a director and officer of HGS; Daniel T. Bane, a director and officer of HGS; Robert M. Ling, Jr., an officer of HGS; David A. Woodward, an officer and director of HGS; Richard H. Loeffler, an officer and director of HGS from May 1996; Fletcher Robbe, an attorney for HGS; and the lawfirm of Goodsill Anderson Quinn & Stifel ("Goodsill"), the attorneys for HGS.

Count One alleges that the directors and officers of HGS breached their fiduciary duties. Count Two alleges that Grocers Specialty, a wholly-owned subsidiary of Certified Grocers, controlled the actions of HGS and breached its fiduciary duties as controlling shareholder. Count Three alleges breach of fiduciary duties by Goodsill. Count Four alleges breach of fiduciary duties by Loeffler and RHL. Count five alleges breach of fiduciary duties by Robbe.

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 6

By his complaint, plaintiff Yee seeks the following forms of relief: (1) a judgment in favor of plaintiff and against defendants ordering defendants to pay plaintiff a sum to be determined at trial, plus interest, representing the "injury for keeping HGS operating at continued losses while Defendants Certified [Grocers] and Grocers Specialty drained money out of it until it went into Bankruptcy"; (2) punitive damages; (3) declaratory relief and a temporary and permanent injunction against defendant Goodsill; and (4) attorneys' fees and costs.

## IV.    COVERAGE ANALYSIS

### A.    Coverage Defenses Applicable To The Federal Lawsuits

#### 1.    Declination Of Coverage For The Federal Lawsuits Because No Directors And Officers Of The Company Are Named As Defendants

As described above, a prerequisite for coverage under the Policy is a Claim against the Directors and Officers of the Company. In the Federal Lawsuits, no Directors and Officers of the Company are named as defendants. Therefore, there is no coverage under the Policy for the Federal Lawsuits.

### B.    Coverage Defenses Applicable To Both The Federal And State Court Lawsuits

#### 1.    Endorsement No. 4 Precludes Coverage For The Federal And State Court Lawsuits

In this matter, the complaints allege, among other things, that "[d]efendant Certified through Grocers Specialty ... embarked on a series of transactions to take as much money as possible out of HGS before it collapsed." *State Court Complaint*, ¶22, *3AC*, ¶15. The complaint in the State Court Lawsuit further alleges that "[o]n or about May 14, 1996, Grocers Specialty, through its Board of Directors, took the actions necessary to implement the above-cited actions that approximately caused the $13.5 million in losses to HGS." *State Court Complaint*, ¶74. Additionally, the 3AC alleges that "Grocers Specialty ... began a pattern of misrepresentations on or about May 13, 1996, where said defendants intended to misrepresent, conceal, and fail to disclose facts about the financial health of HGS, with the intent to induce others ... into believing that HGS was in a better financial condition than it was." *3AC*, ¶103.

Accordingly, there is no coverage for any Loss arising from the Federal and State Court Lawsuits pursuant to Endorsement No. 4 of the Policy, which provides that Twin City shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers:

> for, based upon, arising from, or in any way related to any act(s) or omission(s) actually or allegedly committed or attempted by

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 7

[Grocers Specialty] and/or its Directors and Officers prior to
5/29/99.

2.    **Exclusion F Also Precludes Coverage For the Federal And State Court**
**Lawsuits**

Because HGS was formerly a Subsidiary of Certified Grocers, coverage is potentially available for Wrongful Acts of the Directors and Officers of HGS which occurred before HGS ceased being a Subsidiary of Certified Grocers. In this regard, Section IX.(H)(3) of the Policy provides as follows:

> If before or during the Policy Period a corporation ceases to be a
> Subsidiary, coverage with respect to such Subsidiary and its
> Directors and Officers shall continue until termination of this
> Policy but only with respect to Claims for Wrongful Acts taking
> place prior to the date such corporation ceases to be a Subsidiary.

Conversely, Section IX.(H)(3) of the Policy excludes coverage for Wrongful Acts alleged to have occurred after HGS ceased to be a Subsidiary of Certified Grocers. Therefore, there is no coverage for Claims made against any of the Directors and Officers of HGS for Wrongful Acts occurring after HGS ceased being a Subsidiary of Certified Grocers.

Moreover, Section V.(F) of the Policy provides that there is no coverage for any Claim made against any of the individual defendants insofar as the Claim is "for, based upon, arising from, or in any way related to [their] serving as a director, officer, trustee, regent, governor or employee of any entity other than the Company." Specifically, Section V.(F) excludes coverage for Loss in connection with any Claim made against the Directors and Officers:

> for, based upon, arising from, or in any way related to such
> Directors and Officers serving as a director, officer, trustee, regent,
> governor or employee of any entity other than the Company even
> if such service is at the direction or request of the Company,
> provided that this exclusion does not apply with respect to a Claim
> for a Wrongful Act by a Director or Officer while serving in an
> Outside Position if such Claim is brought and maintained without
> the solicitation, assistance or participation of the entity in which
> the Director or Officer serves in the Outside Position or any
> director, officer, trustee, regent, governor or employee of such
> entity ...

The Federal and State Court Lawsuits involve certain Claims that are "for, based upon, arising from, or in any way related to" the Directors' and Officers' serving "as a director, officer, trustee, regent, governor or employee" of an entity other than the Company namely, HGS after it

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 8

ceased being a Subsidiary. For example, see 22, 30-34, 52-56, 58, 63, 64, and 69-71 in the State Court complaint. Therefore, Section V.(F) precludes coverage for these Claims, unless the exception to the exclusion applies.

Specifically, the exception applies to Claims for a Wrongful Act by a Director or Officer while serving in an Outside Position if the Claim is "brought and maintained without the solicitation, assistance or participation of the entity in which the Director or Officer serves in the Outside Position or any director, officer, trustee, regent, governor or employee of such entity."

Here, the complaints in the Federal and State Court Lawsuits are being brought by Yee, the trustee for the bankruptcy estate of HGS. Accordingly, Twin City additionally declines coverage for any Claims falling within the ambit of Section V.(F) of the Policy.

## 3.    Declination Of Coverage For Non-Insureds

Under Insuring Agreements "A" and "B," a prerequisite for coverage under the Policy is a Claim against a Director or Officer of the Company. Accordingly, Twin City declines coverage for any Loss arising from Claims made against the Company only.

Additionally, because KPMG, Goodsill, Anderson, Quinn and Stifle ("Goodsill"), Fletcher Robbe and RHL are not Directors or Officers of the Company, there is no coverage under the Policy for these individuals or entities.

Furthermore, because Richard Loeffler did not become an officer of HGS until after HGS ceased being a Subsidiary of Certified Grocers, and because all of the Wrongful Acts allegedly committed by Loeffler were committed in his capacity as a director and/or officer of RHL, which is not an Insured under the Policy, there is no coverage for Loeffler under the Policy.

## C.    Additional Reservation of Rights

Notwithstanding the fact that coverage is completely precluded under the Policy for both the Federal and State Court Lawsuits, Twin City also wishes to bring to your attention other provisions of the Policy that could limit or otherwise preclude coverage for the Federal and State Court Lawsuits.

First, Section VI.(D) of the Policy provides as follows:

> All Claims arising out of the same Wrongful Act or Interrelated Wrongful Acts of one or more of the Insureds shall be considered a single Claim. Such Claims shall be deemed to be first made on the date the first such Claim is made or deemed to be made pursuant to Section VIII.(A) of this Policy, regardless of whether such date is before or during the Policy Period.

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 9

Section IV.(I) of the Policy defines the term "Interrelated Wrongful Acts" as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."

Here, the Federal and State Court Lawsuits are founded upon an almost indistinguishable set of facts, circumstances, situations, events, transactions or causes. Although the Federal Lawsuits do not constitute a Claim under the Policy because no Directors and Officers have been named as defendants, in the event the complaints are amended to include the Directors and Officers, or in the event that the Federal and State Lawsuits are consolidated , Twin City reserves the right to treat the Federal Lawsuits and the State Court Lawsuit as a single Claim, subject to one retention of $250,000 And One Limit Of Liability.

Second, Section IV.(J) of the Policy defines "Loss," in pertinent part, as follows:

> sums which the Directors and Officers ... are legally liable to pay solely as a result of any Claim insured by this Policy, including Claims Expenses, compensatory damages, settlement amounts and legal fees and costs awarded pursuant to judgments, but excluding finds, penalties, taxes, any amount allocated to uncovered Loss pursuant to Section VII. Of this Policy, or matters uninsurable pursuant to any applicable law, provided this definition does not exclude punitive or exemplary damage or the multiple portion of any multiplied damage award unless such damages are uninsurable pursuant to applicable law.

Accordingly, Twin City reserves the right to decline coverage for any award of punitive and exemplary damages because they are uninsurable under California law and therefore would not be covered under the Policy. Twin City also reserves the right to decline coverage for any other awards that do not fall within the definition of Loss.

Third, California law specifically precludes indemnity for compensatory damages arising out of an insured's intentional acts (CAL. INS. CODE § 533) and/or fraud (CAL. CIVIL CODE § 1668). Accordingly, Twin City reserves the right to decline coverage with respect to the Federal and State Court Lawsuits in the event a trier of fact determines that defendants intentionally, willfully or deliberately committed the acts alleged in the Federal and State Court Lawsuits.

Fourth, Section V.(J) of the Policy precludes coverage for Loss in connection with any Claim made against the Directors and Officers "for, based upon, arising from, or in any way related to any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by such Insured if a judgment or other final adjudication adverse to the Insured establishes such an act, omission or willful violation." Because the Federal and State Court Lawsuits assert allegations which could potentially fall within the ambit of this exclusion, Twin

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 10

City reserves the right to assert this exclusion precludes coverage for the Federal and State Court Lawsuits.

Fifth, Section V.(I) of the Policy precludes coverage for Loss in connection with any Claim made against the Directors and Officers "for, based upon, arising from, or in any way related to their gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled." Twin City reserves the right to assert that this exclusion applies to preclude coverage for any award of restitution in connection with the allegations asserted in the Federal and State Court Lawsuits.

Sixth, Section IX.(E) of the Policy provides that as follows:

> If any Loss arising from any Claim is insured by another valid policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to this Policy's Policy Number.

Accordingly, Twin City reserves the right to assert that any coverage obligations that it might otherwise have are reduced or eliminated by other insurance available to any Insured.

## D.    Defense

Section III of the Policy provides that it shall be the duty of the Insureds, not Twin City, to defend any Claim, provided that:

> No Claims Expenses shall be incurred or settlements made, contractual obligations assumed or liability admitted with respect to any Claim without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any Claims Expenses, settlement, assumed obligation or admission to which it has not consented.

At this time, there is no potential for coverage to the Company based on the allegations in the Federal and State Court Lawsuits. Therefore, Twin City has no obligation to reimburse the Company for defense costs incurred in connection with the Federal and State Court Lawsuits.

SFO 121814.1
51042/24856

# ARTER & HADDEN LLP

Jonathan Steiner
November 7, 2002
Page 11

### E.    Allocation

Section VII of the Policy provides, in pertinent part, as follows:

> If both Loss covered under this Policy and loss not covered under
> this Policy are incurred, either because a Claim against an Insured
> includes both covered and uncovered matters ... the Insureds and
> the Insurer shall fairly and reasonably allocate such amount
> between covered Loss and uncovered Loss.

In the event that coverage is ultimately afforded for the Federal and State Court Lawsuits under
the Policy, Twin City reserves the right to assert that an allocation be made between covered and
uncovered Claims.

## V.    CONCLUSION

Twin City invites any questions or comments that the Insureds may have in connection
with this coverage position. Any additional information, including but not limited to, amended
pleadings, should be forwarded to this office so that coverage issues can be reexamined. In the
interim, however, Twin City continues to reserve all rights available under the Policy and
available at law and equity, and the right to raise additional policy terms, conditions, and
defenses as additional facts come to our attention. Nothing herein shall be construed as a waiver
of any rights or defenses that Twin City now has or hereafter may have under the Policy or at law
or equity.

Once you have had an opportunity to review this letter, please feel free to contact me with
any questions or comments that you might have.

Very truly yours,

Kim W. West

KWW/juc

SFO 121814.1
51042/24856