# ARTER & HADDEN LLP
### ATTORNEYS AT LAW
*founded 1843*

Cleveland
Columbus
Dallas
Dayton
Irvine
Los Angeles

555 California Street, Suite 3130
San Francisco, California 94104

*telephone* 415.617.2100
*facsimile* 415.912.3636

San Diego
San Francisco
Washington, D.C.
Woodland Hills
*Affiliate Office*
Geneva, Switzerland

Direct Dial: 415.617.2224
Email: Kim.West@ArterHadden.com

March 11, 2003

**VIA FACSIMILE**

Andre J. Cronthall, Esq.
**Sheppard Mullin Richter & Hampton LLP**
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448

Re:  Insured:        Unified Western Grocers, Inc.
     Policy Type:    Directors & Officers Liability
     Policy No.:     NDA0105226-01
     Claim No.:      02-287-634
     Matter:         Various
     Our File No:    51042/24856

Dear Mr. Cronthall:

As you know, this firm represents the interests of Twin City Fire Insurance Company ("Twin City") as coverage and monitoring counsel in with respect to Twin City's Director, Officers and Company Liability Policy No. NDA0105226-01 (the "Policy") in connection with the above-referenced matter.

We are writing to respond to your letter dated February 18, 2003, in which you request that Twin City "reconsider its erroneous denial of coverage" and "acknowledge its obligation to indemnify for defense costs incurred in the subject litigation." We also acknowledge receipt of your letter dated February 19, 2003, in which you enclosed copies of the resignations of Alfred A. Plamann, Charles Pilliter, David A. Woodward and Robert M. Ling, Jr.

Twin City does not agree with your position that its declination of coverage in this matter "smacks of bad faith." In Twin City's letters dated November 7, 2002, January 7, 2002 and January 23, 2003, which are incorporated herein by reference, Twin City clearly explained the bases for its declination of coverage. However, to respond to your letter, Twin City will address each of your arguments in turn.

SFO 1243162
51042/24856

EXHIBIT " H "

03/11/2003 12:03 FAX                                                                 ☒003

# ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 2

I. **EXCLUSION F**

   A.  <u>Exclusion F generally precludes coverage for any "Claim" for, based upon, arising from, or in any way related to one or more directors or officers of the "Company" serving as a director, officer, trustee, regent, governor or employee of any entity other than the "Company."</u>

The obvious starting point for Twin City's coverage position is the language of Exclusion F, which provides as follows:

> The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Directors and Officers**:
>
> (F) for, based upon, arising from, or in any way related to such **Directors and Officers** serving as a director, officer, trustee, regent, governor or employee of any entity other than the **Company** even if such service is at the direction or request of the **Company**, provided that this exclusion does not apply with respect to a **Claim** for a **Wrongful Act** by a **Director** or **Officer** while serving in an **Outside Position** if such **Claim** is brought and maintained without the solicitation, assistance or participation of the entity in which the **Director** or **Officer** serves in the **Outside Position** or any director, officer, trustee, regent, governor or employee of such entity ...(Emphasis added).

In your correspondence, you state that because defendants Plamann, Pilliter, Woodward and Ling resigned as directors and officers of HGS on May 28, 1996, "the alleged wrongful acts pertaining to those individuals did not and could not be 'for, based upon, arising from, or in any way related to [their] serving as a director, officer, trustee, regent, governor or employer of any entity other than the Company'" and thereby coverage is not precluded with respect to these individuals pursuant to Exclusion F of the Policy. In making this argument, you fail to give effect to the term "Director(s) and/or Officer(s)," which is defined at Section IV.(D) of the Policy, in pertinent part, as:

> <u>one or more</u> natural persons who were, now are or shall hereafter be duly elected or appointed directors or officers of the Company, or, with respect to a Subsidiary incorporated outside the United States, their functional equivalent ... (Emphasis added).

Therefore, subject to the limited exception discussed in more detail below, Exclusion F precludes coverage for the entire "Claim" if the "Claim" is for, based upon, arising from, or in

SFO 124316.2
51042/24856

# ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 3

any way related to the service of any single director or officer of the "Company" as a director, officer, trustee, regent, governor or employee of any entity other than the "Company," unless the Outside Position exception to Exclusion F comes into play.

In this regard, if Outside Position coverage is elected for a specified individual, coverage extends to such person for "Claims" for a "Wrongful Act" while serving in such "Outside Position," but only to the extent that such "Claim" is "brought and maintained without the solicitation, assistance or participation of the entity in which the Director or Officer serves in the Outside Position or any director, officer, trustee, regent, governor or employee of such entity."

A copy of Endorsement No. 3, which sets forth the Outside Position coverage available under the Policy, is enclosed in response to your request.

B. **There is no coverage for the Federal or State Court Lawsuits[1] pursuant to Exclusion F because the Lawsuits are "for, based upon, arising from, or in any way related to" Bane's service as a director of "post-transaction" HGS.**

For purposes of Exclusion F, the resignations of defendants Plamann, Pilliter, Woodward and Ling are not dispositive because defendant Bane's service as a "post-transaction"[2] director and/or officer of HGS supports the application of Exclusion F to the Federal and State Court Lawsuits.

As stated above, Exclusion F applies to preclude coverage for "Claims" which are for, based upon, arising from, or in any way related to any single "Director's" or "Officer's" service on behalf of any entity other than the "Company."

We have confirmed from publicly filed documents that Bane, who was an officer of "pre-transaction" HGS, continued to serve as a director and/or officer of "post-transaction" HGS. Furthermore, the Federal and State Court Lawsuits are "based upon, arising from [and] related to" Bane's service on behalf of post-transaction HGS, an entity other than the "Company." *See, Third Amended Complaint* filed in the Federal Lawsuit, ¶¶ 34, 39, 49, 51, 52, 69, 70, 71, 73, 83, 86, 100, 107; *see also, Amended Complaint* filed in the State Court Lawsuit, ¶¶ 54, 56, 57, 69, 70, 71.

Accordingly, because defendant Bane was a director of both "pre-transaction" and "post-transaction" HGS, and because the Federal and State Court Lawsuits arise from and relate to Bane's service in his capacity as a director and/or employee of "post-transaction" HGS,

---

[1] In our letter dated November 7, 2002, Twin City declined coverage for the Federal Lawsuit under the Policy because no "Directors and/or Officers" were named as defendants. You have not contested this position.

[2] The term "pre-transaction" is used in this letter to refer to the time period before HGS ceased being a subsidiary of Certified Grocers, and the term "post-transaction" is used to refer to the time period after HGS ceased being a subsidiary of Certified Grocers.

SPO 124316.2
51042/24856

# ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 4

Exclusion F, on its face, precludes coverage for the entirety of the Federal and State Court Lawsuits.

Twin City recognizes that Exclusion F provides an exception for Claims against a Director or Officer while serving in an Outside Position, and that Endorsement No. 3 specifically provides coverage for Bane in his Outside Position capacity as a director of HGS. As Twin City has previously explained, however, the Outside Position exception to Exclusion F for Bane does not apply here because the Claims are being brought by Yee, who is a trustee of HGS. Accordingly, Exclusion F still precludes coverage for Bane.

Furthermore, it is still unclear whether defendants Plamann, Pilliter, Woodward and Ling held positions at "post-transaction" HGS. Although you have provided our office with copies of the May 28, 1996 resignations of defendants Plamann, Pilliter, Woodward and Ling, there are additional documents that suggest that these individuals possibly could have been appointed as directors of HGS sometime after their resignation. In particular, in Exhibit 2 of the Amended Complaint in the State Court Lawsuit, a document entitled "Sale of Common Stock of HGS" states that:

> each of the officers of the Corporation be, and hereby is,
> authorized, empowered and directed to execute ... (a) the removal
> without cause of all existing HGS directors, (b) the appointment of
> five new directors for HGS, consisting of Alfred A. Plamann,
> Charles Pilliter, Daniel T. Bane, David A. Woodward, and Paula
> Ann K. Lyman ...(Emphasis added).

Moreover, as set forth above, paragraph 69 of the Amended Complaint alleges that:

> Subsequent to their actions as directors on or about May 13, 1996,
> the Defendant officers and directors took further actions and aided
> and abetted in further actions during the month of May and
> thereafter, that implemented the corporate resolutions adopted by
> the directors.

We would appreciate your providing us with corporate documentation for the period from May 28, 1996, to March 31, 1997, which establishes that defendants Plamann, Pilliter and Woodward did not become directors, officers or employees of "post-transaction" HGS.

Assuming, however, that defendants Plamann, Pilliter, Woodward and Ling were not employees, directors or officers of "post-transaction" HGS, there still is no coverage for the Federal and State Court Lawsuits pursuant to Exclusion F because, as set forth above, the Federal and State Court Lawsuits arise from and are related to Bane's service as a director and/or officer of HGS after it ceased being a subsidiary of Certified Grocers.

SFO 1243162
51042/24856

# ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 5

Finally, in your February 18 letter, you state that "Twin City's main argument in support of its denial of coverage is that Exclusion F precludes coverage because ... the individual directors and officers allegedly committed 'wrongful acts' in their capacity as directors and/or officers of HGS when that entity was not a subsidiary of Certified." Even a cursory reading of Twin City's January 23 letter, however, would have revealed that this is not "Twin City's main argument." In fact, Twin City's position is quite the opposite. As you will recall, Twin City specifically advised you in its January 23 letter that Exclusion F precludes coverage for "any Claim made against the Directors and Officers that is in any way related to the Directors and Officers service as a director or officer of any entity other than the Company, not their Wrongful Acts." (Emphasis added).

In its January 23 letter, Twin City described the nature of the relationship between Yee's claims and the individual defendants' service as a "Director" or "Officer" of "post-transaction" HGS. Specifically, this relationship was clearly set forth, in part, in paragraphs 69 and 70 of the Amended Complaint, which allege:

> 69. Subsequent to their actions as directors on or about May 13, 1996, the Defendant officers and directors took further actions and aided and abetted in further actions during the month of May and thereafter, that implemented the corporate resolutions adopted by the directors. (Emphasis added).
>
> 70. These actions included, but are not limited to, HGS borrowing large amounts of money to fund the leveraged buyout of HGS shares from Grocers Specialty that had no value, funding above market rental payments on the sublease to Grocers Specialty, and funding payments on the $5.3 million promissory note.

Furthermore, although not required under the plain language of Exclusion F, Twin City took the additional step of detailing the nature of the relationship between Yee's claims and the alleged "post-transaction" wrongful conduct of the individual defendants. In this regard, although recognizing that defendants' "scheme" is alleged to have occurred "pre-transaction," Twin City explained that the Lawsuits primarily arise out of allegations regarding certain "post-transaction" transfers of payment to Certified Grocers. See, ¶¶ 34, 39, 49, 51, 52, 69, 70, 71, 73, 83, 86, and 107 of the Third Amended Complaint in the Federal Lawsuit and ¶¶ 54, 56, 57, 59, 69, 70, and 71 of the Amended Complaint in the State Lawsuit.

Accordingly, for the reasons set forth above, Exclusion F precludes coverage for both the Federal and State Court Lawsuits because: (1) the Federal and State Court Lawsuits arise out of Bane's service in his capacity as a director and/or employee of "post-transaction" HGS and therefore are excluded from coverage pursuant to Exclusion F; and (2) the Outside Position

## ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 6

exception to Exclusion F does not apply because the Federal and State Court Lawsuits are being brought by Yee, a trustee of HGS.

## II.  DEFINITION OF "LOSS"

As Twin City explained in its January 23 letter, Yee's claims and requested relief in the State Court Lawsuit result from the $13.5 million in improper transfers allegedly made to Certified Grocers. In your February 18 letter, you objected to Twin City's position, asserting that "[n]o language from the complaints is quoted to support this suggestion," and that "[o]nly about $5 million of the $13.5 million is claimed to be a preference." Thereafter, in your February 19 letter, you state that the "actual amount that potentially could be considered a preference is much less than $500,000."

Twin City recognizes that the first two causes of action for "preference claims" in the Third Amended Complaint in the Federal Lawsuit ("3AC") seek sums of approximately $5.1 million. Notwithstanding this demand, the total relief requested by Yee based on the improper transfers allegedly made by defendants is $13.5 million. In this regard, Yee's third cause of action in the Federal Lawsuit entitled "Fraudulent Transfer Claim Against Certified Grocers, and Grocers Specialty," Yee alleges that the fraudulent transfers resulted in damages in the amount of $13.5 million. Furthermore, in Yee's prayer for relief in the 3AC, Yee requests "a Judgment in favor of Plaintiff and against Defendants in avoiding the above preferential transfers and ordering Defendants to pay over to Plaintiff the sum of $13.5 million, plus interest, for injuries sustained by keeping HGS operating at continued losses while Certified drained the remaining assets out of HGS from 1996 to 1999 when it went into Bankruptcy."

It is clear that the amounts sought by Yee in the State Court Lawsuit are based on these same allegedly improper transfers. In this regard, Yee is also seeking damages in the same amount of $13.5 million, asserting that the individual defendants' breaches "proximately caused the irreversible insolvency of HGS to begin and accelerate into the sum of $13.5 million of losses." *Amended Complaint,* ¶ 71. Indeed, Unified Western Grocers admitted in its Form 10-K for the fiscal year ended September 28, 2002, that the State Court Lawsuit arises from the "same transactions that are the subject of the [Federal Lawsuit]."

These improper transfers are alleged to have resulted in "ill-gotten" gains to Certified Grocers. As Twin City has already advised you in its letter dated January 23, 2002, the Amended Complaint in the State Court Lawsuit makes this clear. Because it appears you may have overlooked some of the pertinent allegations in the Amended Complaint, Twin City repeats them here for your reference:

- "Certified secured a line of credit for HGS with Congress Financial Corporation (Western). On May 28, 1996, Congress Financial agreed to provide a revolving loan to HGS of $4,500,000 for a term of two years (until May 1998). Certified

SFO 124316.2
51042/24856

# ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 7

> obtained the approval of Congress Financial to use this loan to pay Certified $2,425,387 for what Certified labeled as a 'sale-of-stock transaction." *Amended Complaint*, ¶32;

- "Cash was directly taken from HGS with no value being given back to HGS." *Id.*, ¶39;

- "[Certified Grocers] withdrew $2,425,387 from a financially ailing HGS...Certified's Plan involved several devices. First, a leveraged buy out in which HGS would pledge its assets to secure a line of credit that HGS drew down on to pay $2.4 million to Certified. The plan called for HGS passing the money through a company of its new president, RHL Management Group, which, in turn, passed it to Certified. The result of this transaction was that HGS now had a new $2.4 million secured debt in its books, Mr. Loeffler received 10,000 shares of common stock of HGS, and Certified received $2.4 million." *Id.*, ¶40;

As a result, based on the reasons set forth in Twin City's January 23 letter, and in light of the rulings set forth in *Bank of the West v. Superior Court* 3 Cal.4th 1254 (1992) and other recent California decisions, there is no coverage for any "ill-gotten" gains allegedly received by Certified Grocers, or restitutionary relief awarded to Yee, because indemnification is expressly prohibited by California law.

Moreover, it does not matter that alleged misappropriation of funds may have been merely negligent or inadvertent. For instance, in *Nortex Oil & Gas Corporation v. Harbor Insurance Company*, 456 S.W.2d 489 (Tex. App. 1970), the court found that the settlement of claims arising from Nortex's alleged wrongful appropriation of oil could not constitute a loss under the policy because an insured "does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired." *Id.* at 494. The court went on to note "[t]he insurer did not contract to indemnify the insured for disgorging that to which it was not entitled to in the first place." *Id.*

Here, if Yee were to be awarded the $13.5 million he seeks against the Insureds in the State Court Lawsuit, then such award would be a refund of money the Insureds unlawfully collected and were not entitled to in the first place. Moreover, if HGS were then permitted to collect the amount of the refund from Twin City, it would realize a windfall.

Your assertion that Twin City would nonetheless be obligated to reimburse the Insureds for defense costs arising out of the State Court Lawsuit is in direct contravention of existing case law. Courts have consistently found that, in actions in which restitution or disgorgement is a remedy, an insurer is <u>not liable to defend the case</u> or indemnify the insured. See, e.g., *Bank of the West v. Superior Court*, supra; *Haines v. St. Paul Fire & Mar. Ins. Co.*, 428 F. Supp. 435 (D. Md.

SFO 124316.2
51042/24856

# ARTER & HADDEN LLP

Andre Cronthall
March 11, 2003
Page 8

1977) (insurer is not obliged to defend where restitution, rather than an award of money damages, could have been entered against the insureds); *Seaboard Sur. Co. v. Ralph Williams Northwest Chrysler Plymouth, Inc.*, 504 P.2d 1139 (Wash. 1973) (insurer is not obliged to defend suit for injunction, statutory penalties or incidental relief because they are not "damages" under the policy); *O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170 (Alaska 1981) (restoration of money acquired through unfair collection practices does not constitute "damages" under the policy).

## III. CONCLUSION

Notwithstanding that Twin City continues to decline coverage for the Federal and State Court Lawsuits, it is essential that defense counsel continue to apprise it of any developments in the litigation. Any additional information, including but not limited to, newly filed pleadings and the court's ruling on defendants' motions to dismiss, should be forwarded to this office so that coverage issues can be reexamined.

Twin City continues to reserve all rights available under the Policy and available at law and equity, and the right to raise additional policy terms, conditions, and defenses as additional facts come to our attention. Nothing herein shall be construed as a waiver of any rights or defenses that Twin City now has or hereafter may have under the Policy or at law or equity.

Once you have had an opportunity to review this letter, please feel free to contact me with any questions or comments that you might have.

Very truly yours,

Kim W. West

KWW/juc/lah
Enclosures

SFO 124316.2
51042/24856

ENDORSEMENT NO: 3

This endorsement, effective 12:01 am, 2/01/01
of policy number NDA0105226-01                                    forms part

issued to:    UNIFIED WESTERN GROCERS, INC.

by:           TWIN CITY FIRE INSURANCE CO.


## OUTSIDE FOR-PROFIT POSITION EXTENSION - DOUBLE EXCESS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed the term "Outside Position", as defined in Section II.(D), OUTSIDE POSITION LIABILITY EXTENSION, shall include the position of director, officer, trustee, or other equivalent executive position held by a Director or Officer in the following entities if service in such position is with the knowledge and consent or at the request of the Company:

| Director and/or Officer | Outside Organization(s) | Capacity(ies) |
|---|---|---|
| AL PLAMANN | K.V. MART, INC. | |
| DAN BANE | HAWAIIAN GROCERY STORES, INC | |
| DAVE WOODWARD | MAJOR MARKET, INC. | |

All other terms and conditions of this Policy remain unchanged.

DO CO R325 00 0696