IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNIFIED WESTERN GROCERS, INC.; CERTIFIED GROCERS OF CALIFORNIA, LTD.; GROCERS SPECIALTY COMPANY; ALFRED A. PLAMANN; CHARLES PILLITER; DANIEL T. BANE; ROBERT M. LING; AND DAVID WOODWARD,<br><br>Plaintiffs,<br><br>vs.<br><br>TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation,<br><br>Defendant. | CIVIL NO. CV 03-00336 HG BMK<br><br>[Honorable Magistrate Barry Kurren]<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

I.   **INTRODUCTION**

Twin City Fire Insurance Company ("Twin City") hereby seeks leave to amend its Answer to assert two additional affirmative defenses for equitable contribution and unjust enrichment based upon newly discovery facts and evidence.

  A.   **Pertinent Facts Involving The Coverage Litigation**

This case involves an insurance coverage dispute under a D&O policy

of insurance issued by Twin City.  The dispute arises from a lawsuit filed on or about May 10, 2002, by Mark J. C. Yee, the Trustee for the bankruptcy estate of Hawaiian Grocers Stores, Ltd. (the "Trustee"), against Unified Western Grocers, Inc., Certified Grocers of California, Ltd., Grocers Specialty Company (collectively the "Uninsured Corporate Entities"), in addition to a group of its directors and officers, including Alfred Plamann, Charles Pilliter, Daniel T. Bane, Robert M. Ling and David Woodward (collectively the "Unified D&Os").  The lawsuit brought by the Trustee on or about May 10, 2002, is referred to herein as the "Individual Lawsuit" because that lawsuit involved the individual Unified D&Os in addition to the Uninsured Corporate Entities.

In addition to the Individual Lawsuit, the Trustee also filed a separate suit that very same year, this time including as defendants the Uninsured Corporate Entities, including Unified Western Grocers, Inc. ("Unified"), Certified Grocers of California, Ltd. ("Certified"), and Grocers Specialty Company ("Grocers Specialty").  This additional lawsuit is referred to herein as the "Entity Only Lawsuit" because it did not involve the individual Unified D&Os.

The reason for this distinction is hugely important.

Unified, Certified, and Grocers Specialty are not covered by the Twin City D&O policy (the "Policy"). This is because the Uninsured Corporate Entities did not purchase entity coverage. This fact is not disputed by any of the Plaintiffs in the coverage litigation. Hence, it is undisputed that there is no coverage for the Entity Only Litigation and that there is no coverage for the Uninsured Corporate Entities in the Individual Litigation.

Thus, this coverage dispute is focused solely upon whether there is coverage for any of the Claims[1] asserted against the D&Os in the Individual Litigation.

### B. Newly Discovered Facts And Evidence Upon Which This Motion Is Based

Of great consequence to this motion are new facts and evidence which were very recently discovered by Twin City. On February 23, 2007, Twin City received, for the very first time, a copy of a Settlement Agreement. The Settlement Agreement serves as the vehicle for settlement of three (3) separate lawsuits including: (1) the Individual Litigation for which coverage for the Unified D&Os is vigorously disputed; (2) the Entity Only Litigation for which there is no coverage; and (3) a third lawsuit filed by Value Recovery Bank ("VRG") on February 24, 2004, against the Uninsured Corporate Entities, the

---

[1] Claim is a term defined by the Policy. For this reason, when referring to the Policy's definition of Claim, Claim is capitalized.

Unified D&Os and others (the "VRG Litigation") (collectively the "Underlying Litigation").

The Settlement Agreement provides for payment by the Unified Defendants in the amount of $2.5 million in total to resolve all three lawsuits against the Unified Defendants, including lawsuits and claims asserted by the Trustee and VRG against the Uninsured Corporate Entities for which there is indisputably no coverage. [2]

The Settlement Agreement also serves to create an imaginary apportionment of the $2.5 million settlement payment such that $2 million (or 80%) is attributed to resolution of the claims asserted against the Unified Defendants, including the Unified D&Os, in the Individual and the VRG Litigation, while attributing a mere $500,000 to the Entity Only Litigation for which there is indisputably no coverage.

Because the crux of the coverage dispute centers on whether there is coverage for any of the counts brought by the Trustee against the Unified D&Os in the Individual Litigation, the apportionment by the Unified Defendants of $2 million to the Individual Litigation is clearly a superficial

---

[2] The crux of the coverage dispute at this juncture is whether there is coverage under California law for any of the claims asserted by the Trustee against the Unified D&Os in the Individual Litigation. Twin City argues that that there is no coverage for the Unified D&Os because Insurance Code § 533 precludes coverage for willful acts and that any loss sustained by Plaintiffs constitutes disgorgement which is uninsurable.

attempt to shift indemnity responsibility to Twin City in the unlikely event that there is an adjudication of coverage for some of the counts asserted by the Trustee against the Unified D&Os.

This imaginary apportionment created by the Unified Defendants through the Settlement Agreement is the basis for Twin City's Motion for Leave to Amend Answer.

After receiving the Settlement Agreement just six (6) weeks ago, Twin City wishes to amend its Answer to seek equitable contribution and restitution based upon principles of unjust enrichment from the Uninsured Corporate Entities so as to make Twin City whole should Twin City be required to indemnify Plaintiffs for any part of the $2 million settlement payment in the Individual and the VRG Litigation.

Under the circumstances of this case, equitable contribution and unjust enrichment affirmative defenses are viable affirmative defenses. Because this motion was brought promptly, in good faith and not for dilatory motives, and because Plaintiffs will suffer no prejudice if Twin City is granted leave to amend, Twin City's motion should be granted.

## II.     LEGAL ARGUMENT

### A.     The Standard For Leave Of Court To Amend An Answer

Rule 15(a) of the Federal Rules of Civil Procedure provides for the

amendment of pleadings by leave of Court and specifically notes that such leave is to be "freely given." FED. R. CIV. PROC. 15(a). In fact, the Ninth Circuit Court of Appeals has held that the Rule 15 policy of permitting amendments should be applied with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Moreover, the determination of whether to grant leave to amend should be made with all inferences drawn in favor of granting the motion, with the burden falling on the party opposing the motion to demonstrate why leave should not be granted. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877 (9th Cir. 1999); *See also*, *DCD Programs*, *supra*, 833 F.2d 133; *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989).

### B.     The Factors To Be Evaluated Tip Completely In Favor Of Granting Leave To Amend.

The Ninth Circuit has identified four factors to be evaluated by the District Court when ruling on a motion to amend. These four factors include: (1) whether there has been undue delay in seeking the amendment; (2) prejudice to the opposing party if an amendment is allowed [3]; (3) futility of the proposed amendment; and (4) whether the amendment is sought in bad faith or as a dilatory motive. *Barker v. County of Humboldt*, 1999 WL 13717,

---

[3] These factors are not to be applied equally. Rather, prejudice to the opposing party is the most important factor. *Genentech*, 127 F.R.D. at 530.

*1 (N.D. Cal. Jan. 11, 1999) (quoting *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).)

### 1. There Has Not Been Undue Delay Because Twin City Very Recently Learned Of The Facts Supporting The Need For The Amendment.

Twin City, through its counsel of record, received a copy of the Settlement Agreement in the Underlying Litigation from Plaintiffs' counsel just six (6) weeks ago on or about February 23, 2007. *See*, Ball Declaration at Paragraph 5. The Settlement Agreement forms the basis for the equitable contribution and unjust enrichment affirmative defenses for which Twin City seeks leave to amend its Answer.

Because only six (6) weeks have passed since Twin City first learned of the facts and evidence supporting the need for the amendment to the pleadings, undue delay does not exist. During these six (6) weeks, Twin City has moved as quickly as possible, almost at stealth speed, to analyze the Settlement Agreement, conduct legal research, communicate with Plaintiffs' counsel regarding whether Plaintiffs would stipulate to allow Twin City to amend its Answer, and to prepare this motion, in addition to participating in a significant amount of other activity in this matter.[4]

---

[4] Along with the Settlement Agreement, Twin City also received and has reviewed a package of documents from Plaintiffs' counsel in this action

Under no circumstances, especially those set forth herein, does six (6) weeks constitute undue delay.

### 2. No Prejudice To Plaintiffs Will Occur If Twin City Is Granted Leave To Amend.

As indicated in *Genentech* above, the most important factor in determining whether leave to amend a pleading should be granted is the factor of prejudice to the opposing party.

Here, Plaintiffs have known of the facts giving rise to the proposed amendment to the Answer for years because Plaintiffs themselves, through their lawyers, were involved in negotiating, drafting and/or revising the Settlement Agreement in early 2005 and perhaps earlier than that.  so Plaintiffs themselves were involved in the apportionment of the settlement payment and the shifting of 80% of the settlement payment to the Individual Litigation in a superficial effort to inflate their indemnity arguments in the coverage litigation. *Slottow v. American Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1359 (9th Cir. 1993) ("where the parties have purported to settle an

---

consisting of redacted fee invoices.  During the last month, Twin City's counsel has spent a significant amount of time reviewing the materials provided by Plaintiffs' counsel and meeting and conferring with Plaintiffs' counsel regarding discovery issues pertaining to formal production of the Settlement Agreement and production of unredacted fee invoices.

imaginary dispute over allocation, that allocation should be given no special treatment in an indemnity action.")

Of significant import, Twin City's counsel began asking Plaintiffs' counsel for a copy of the Settlement Agreement as early as 2005 when the coverage litigation was on appeal. *See*, Ball Declaration at Paragraph 4. Twin City's counsel has repeatedly asked for a copy of the Settlement Agreement since early 2005. *See*, Ball Declaration at Paragraph 4. Yet Plaintiffs delayed providing Twin City with a copy of the Settlement Agreement for 2 years! If any party has been prejudiced, it is Twin City.

Plaintiffs do not need to conduct discovery regarding their own negotiations involving the Settlement Agreement or their own preparation and drafting of the Settlement Agreement. It is Twin City who must conduct such discovery.

For all of these reasons, prejudice to Plaintiffs will not result if Twin City is granted leave to amend its Answer.

### 3.    The Two Additional Affirmative Defenses Proposed By Twin City Are Viable, Not Futile.

As set forth herein, Twin City seeks to amend its Answer to include two additional affirmative defenses against the Uninsured Corporate Entities: (1) equitable contribution; and (2) unjust enrichment. Both of these affirmative

defenses are viable in light of the new facts and evidence recently learned of by Twin City in the form of the Settlement Agreement in the Underlying Litigation.

Equitable contribution is a principle rooted in equity and is utilized to apportion a loss to multiple parties to achieve substantial justice based upon equitable considerations of the nature of the claim, the relation of the insured to the insurers, the particulars of each policy, and other equitable considerations. *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 974 (2000), *quoting*, *Fire Ins. Exch. v. American States Ins. Co.*, 39 Cal. App. 4th 653, 664 (1995).

In the insurance context, equitable contribution permits reimbursement to an insurer that pays on a loss in an amount in excess of its proportionate share of the obligation on the theory that the debt the insurer paid was equally and concurrently owed by other obligators and should be shared by them. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998).

An insurer's right to equitable contribution is not dependent upon the rights of the insured, but is rather based upon an insurer's own rights against another obligator, such as the Uninsured Corporate Entities herein. *Fireman's Fund*, 65 Cal. App. 4th at 1294 ("[The] right of equitable contribution belongs

to each insurer individually.").

Here, the Unified D&Os and the Uninsured Corporate Entities settled all of the claims against them in three (3) separate lawsuits through one Settlement Agreement. The Settlement Agreement serves to shift 80% of the $2.5 million settlement payment in the Underlying Litigation to the lawsuit involving the Unified D&Os, while apportioning a mere 20% (or $500,000 dollars) to the action for which there undisputedly is no coverage. Hence, under the principle of equitable contribution, Twin City may seek reimbursement and may recoup from the Uninsured Corporate Entities any portion of the $2 million which it might be required to indemnify Plaintiffs in excess of and over its proportionate share of the obligation.[5] Accordingly, the equitable contribution affirmative defense in Twin City's Amended Answer is not futile.

Twin City also seeks leave to amend its Answer to include unjust enrichment as an affirmative defense. Unjust enrichment is premised upon the principle that the receipt of a benefit and unjust retention of a benefit by one at the expense of another requires the benefiting party to make restitution to the other. *Enterprise Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 748

---

[5] Although Twin City asserts that it has no indemnity obligations, Twin City wishes to reserve its right to argue equitable contribution via an equitable contribution affirmative defense.

(1991); *See also*, *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). Hence, a transferee with knowledge of the circumstances giving rise to an unjust enrichment claim, such as the Uninsured Corporate Entities herein, may be obligated to make restitution.

Here, if Twin City were to be required to indemnify Plaintiffs for any part of the $2 million settlement payment in the Individual Litigation, the Uninsured Corporate Entities would be unjustly enriched and would receive a windfall because the Uninsured Corporate Entities would thus get away with shifting liability for their acts in the Entity Only Litigation (for which there is indisputedly no coverage) to Twin City.

Consequently, unjust enrichment is a viable affirmative defense and is certainly not futile.

### 4. **The Proposed Amendment Is Not Sought In Bad Faith Or As A Dilatory Move.**

Twin City is seeking to amend its Answer to protect its rights under the law. Twin City moved quickly to seek leave to amend once Twin City's counsel received the Settlement Agreement which forms the basis for the proposed amendment to Twin City's Answer. Twin City is certainly not engaging in bad faith or dilatory motives, nor have Plaintiffs suggested this.

## III. CONCLUSION

Because all four factors enunciated by the Ninth Circuit tip completely in favor of Twin City, and due to the extremely liberal policy in favor of granting leave to amend pleadings, Twin City respectfully requests that its Motion for Leave to Amend Answer be granted and that Twin City's Amended Answer, attached hereto as Exhibit "A," be deemed filed on the date of this Honorable Court's Order.

DATED: Honolulu, Hawai`i, April 5, 2007.

FUKUNAGA MATAYOSHI
HERSHEY & CHING LLP      __/s/_ Sheree Kon-Herrera_____
                                          WESLEY H. H. CHING
                                          SHEREE KON-HERRERA

DATED: Los Angeles, California, April 5, 2007.

TUCKER ELLS &WEST LLP    __/s/ Samantha M. Ball_____
                                          KIM W. WEST (*Admitted Pro Hac Vice*)
                                          SAMANTHA BALL (*Admitted Pro Hac Vice*)
                                          Attorneys for Defendant TWIN CITY
                                          FIRE INSURANCE COMPANY