Of Counsel:
FUKUNAGA MATAYOSHI HERSHEY & CHING, LLP

WESLEY H. H. CHING          2896
SHEREE KON-HERRERA          6927
841 Bishop Street, Suite 1200
Honolulu, Hawai`i 96813
Telephone: (808) 533-4300

KIM WEST          Pro Hac Vice
TUCKER ELLIS & WEST LLP
555 California Street, Suite 3130
San Francisco, California 94104
Telephone: (415) 617-2400
Facsimile: (415) 617-2409

SAMANTHA BALL          Pro Hac Vice
TUCKER ELLIS & WEST LLP
1000 Wilshire Boulevard, Suite 1800
Los Angeles, California 90017-2475
Telephone: (213) 430-3400
Facsimile: (213) 430-3409
Attorneys for Defendant
TWIN CITY FIRE INSURANCE COMPANY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 5 2004

at __ o'clock and _15_ min. P M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| UNIFIED WESTERN GROCERS, INC.; CERTIFIED GROCERS OF CALIFORNIA, LTD.; GROCERS SPECIALTY COMPANY; ALFRED A. PLAMANN; CHARLES PILLITER; DANIEL T. BANE; ROBERT M. LING; AND DAVID A. WOODWARD, | ) ) ) ) ) ) ) ) ) ) | CIVIL NO. CV 03-00336 HG BMK<br><br>STIPULATION REGARDING AUTHENTICITY OF INSURANCE POLICY; EXHIBIT "A" |

G:\Unified\Unified Plead\15-Stip Docs.wpd

|  |  |
|---|---|
| Plaintiffs, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| TWIN CITY FIRE INSURANCE | ) |
| COMPANY, an Indiana Corporation, | ) |
|  | ) |
| Defendant. | ) |
| _____ | ) |

## STIPULATION REGARDING AUTHENTICITY OF INSURANCE POLICY

WHEREAS Plaintiffs UNIFIED WESTERN GROCERS, INC.,

CERTIFIED GROCERS OF CALIFORNIA, LTD., GROCERS SPECIALTY

COMPANY, ALFRED A. PLAMANN, CHARLES PILLITER, DANIEL T.

BANE, ROBERT M. LING, and DAVID A. WOODWARD (collectively,

"Plaintiffs") and Defendant TWIN CITY FIRE INSURANCE COMPANY ("Twin

City") (collectively, the "Parties") intend to file cross-motions for summary

judgment with the Court to address disputed insurance coverage matters between

the Parties;

WHEREAS the cross-motions for summary judgment will require the

Court to review and consider Twin City Directors, Officers and Company Liability

Policy No. NDA0105226-01, issued to Unified Western Grocers, Inc. for the

policy period effective February 1, 2001 to February 1, 2003 ("Policy"); and

WHEREAS the Parties have reviewed the attached Exhibit "A";

2

IT IS HEREBY STIPULATED by and between the Parties hereto

through their respective counsel that the attached Exhibit "A" is a true and correct

copy of the Policy and may be used by the Parties for the cross-motions for

summary judgment to be filed with the Court.

AUG 2 5 2004

DATED:    Honolulu, Hawaii, _____.

WILIAM C. McCORRISTON, ESQ.
CHRISTOPHER J. COLE, ESQ.
JONATHAN H. STEINER, ESQ.
Attorneys for Plaintiffs
UNIFIED WESTERN GROCERS, INC.,
CERTIFIED GROCERS OF CALIFORNIA, LTD.,
GROCERS SPECIALTY COMPANY, ALFRED A.
PLAMANN, CHARLES PILLITER, DANIEL
BANE, ROBERT M. LING, and DAVID A. WOODWARD

WESLEY H. H. CHING
SHEREE KON-HERRERA
KIM WEST
SAMANTHA BALL
Attorneys for Defendant
TWIN CITY FIRE INSURANCE COMPANY

Unified Western Grocers, Inc., et al. v. Twin City Fire Insurance Company, et al.,
Civil No. CV 03-00336 HG BMK, STIPULATION REGARDING
AUTHENTICITY OF INSURANCE POLICY

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

POLICY NUMBER  NDA0105226-01

TWIN CITY FIRE INSURANCE COMPANY
Indianapolis, Indiana

THE
HARTFORD

**NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR WRONGFUL ACTS FOR WHICH CLAIMS ARE FIRST MADE WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE INSURER NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THE POLICY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE AND OTHER CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE AND OTHER CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION AMOUNT.**

**THE POLICY DOES NOT PROVIDE FOR ANY DUTY OR OBLIGATION ON THE PART OF THE INSURER TO DEFEND THE DIRECTORS AND OFFICERS AND THE COMPANY.**

• Agency Code, Name and Address

**DECLARATIONS**

ITEM A  Name of Company and Address:

UNIFIED WESTERN GROCERS, INC.
2601 S. EASTERN AVENUE
COMMERCE, CA 90040

80304
AON RISK SERVICES
707 WILSHIRE BLVD. SUITE 6000
P.O. BOX 54670
LOS ANGELES, CA 90017

ITEM B  Policy Period: From 12:01 a.m. on   2/01/01   To 12:01 a.m. on   2/01/03

**ITEM C**

| | | |
|---|---|---|
| LIMIT OF LIABILITY | $ 10,000,000 | in the aggregate each **Policy Period**, including Claims Expenses |

**ITEM D**

| | | | |
|---|---|---|---|
| RETENTION | INSURING AGREEMENT A | $ 0 | each **Director and Officer**, each **Claim**, including **Claims Expenses**, but in no event exceeding |
| | | $ 0 | in the aggregate each **Claim**, including **Claims Expenses**, with respect to all **Directors and Officers**. |
| | INSURING AGREEMENT B | $ 250,000 | in the aggregate each **Claim**, including **Claims Expenses**, with respect to **Company** Reimbursement. |
| | INSURING AGREEMENT C | $ N/A | in the aggregate each **Securities Claim**, including **Claims Expenses**. |

**ITEM E   SECURITIES CLAIM COINSURANCE:**

CLAIMS EXPENSES  N/A  %       ALL OTHER LOSS  N/A  %

**ITEM F  INSURING AGREEMENT C COVERAGE GRANTED?**  ☐ Yes  ☒ No

**ITEM G**

| | |
|---|---|
| DISCOVERY PERIOD PREMIUM | $ 75,000 |
| DISCOVERY PERIOD DURATION | TWELVE (12) months |

**ITEM H   PRIOR LITIGATION DATE**

INSURING AGREEMENTS A AND B:  9/22/92       INSURING AGREEMENT C:  0/00/00

**ITEM I   NON-PROFIT OUTSIDE POSITION COVERAGE GRANTED?**  ☒ Yes  ☐ No

**ITEM J   PREMIUM:**   $ 200,000.00

**ITEM K  FORM NUMBER OF ENDORSEMENTS ATTACHED AT ISSUANCE:**
SEE FORM GU207 (SCHEDULE OF ENDORSEMENTS)

This Declarations Page, together with the completed and signed Proposal, including all attachments and exhibits, and the attached Directors, Officers and Company Liability Policy form and all endorsements thereto, shall constitute the Contract between (1) the Directors and Officers and the Company and (2) the Insurer.

DO 00 R291 00 0696   Date: _____   Authorized Representative: _____


EXHIBIT ___"A"___

AUG. 9. 2004 11:59AM    GMIS FINANCIAL SERVICES    21NO. 8086574P. 3P. 02/49

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT

This endorsement, effective on    2/01/01    at 12:01 A.M. standard time, forms a part of

Policy No.   NDA0105226-01    of the    TWIN CITY FIRE INSURANCE CO.

Issued to   UNIFIED WESTERN GROCERS, INC.

_Ramani Ayer_
Authorized Representative

### SCHEDULE

| | | |
|---|---|---|
| RN00N02600 | 5/93 | IN WITNESS PAGE |
| 1  DO00R30400 | 6/96 | PROFESSIONAL ERRORS AND OMISSIONS EXCLUSION |
| 2  DO00R30700 | 6/96 | PAYMENTS AND GRATUITIES EXCLUSION |
| 3  DO00R32500 | 6/96 | OUTSIDE FOR-PROFIT POSITION EXTENSION - DOUBLE EXCESS |
| 4  DO00R33400 | 6/96 | ADD SUBSIDIARY WITH PENDING OR PRIOR LITIGATION |
| 5  DO00R47600 | 5/98 | AMEND DEFINITION OF DIRECTOR(S) AND/OR OFFICER(S) - INDIVIDUALS |
| 6  DO00R48900 | 5/98 | DELETE CONSENT TO SETTLEMENT CLAUSE |
| 7  DO00R50000 | 5/98 | INVESTIGATIVE COSTS COVERAGE ENDORSEMENT |
| 8  DO00R50400 | 5/98 | ORDER OF PAYMENT ENDORSEMENT |
| 9  GU207 | 6/78 | ADD SUBSIDIARY WITH PENDING OR PRIOR LITIGATION AND PRIOR ACTS EXCLUSIONS |
| 10  GU207 | 6/78 | ENDORSEMENT # 10 |
| 11  GU207 | 6/78 | REINSTATEMENT OF LIMIT OF LIABILITY |
| 11  GU207 | 6/78 | REINSTATEMENT OF LIMIT OF LIABILITY (CONT'D) |
| 12  GU207 | 6/78 | ENDORSEMENT # 12 |
| 13  DO04R29301 | 5/97 | CANCELLATION ENDORSEMENT - CALIFORNIA |
| EL04R11100 | 4/93 | IMPORTANT INFORMATION TO POLICYHOLDERS |
| UG128 | 11/94 | IMPORTANT INFORMATION |

COPY

GU207 (6-78)

# THE HARTFORD

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of, and subject to, the payment of the premium, and in reliance upon the particulars, statements, attachments and exhibits contained in and submitted with the Proposal and which shall be the basis of this Policy and shall be deemed to be incorporated herein, and subject to all the terms and conditions of this Policy, the Insurer and the Insureds agree as follows:

I.   INSURING AGREEMENTS

   This Policy affords the following coverages:

   (A)   DIRECTORS' AND OFFICERS' LIABILITY

      Except for Loss which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay on behalf of the Directors and Officers Loss which the Directors and Officers shall become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period;

   (B)   COMPANY REIMBURSEMENT

      The Insurer will pay on behalf of the Company Loss for which the Company has, to the extent permitted or required by law, indemnified the Directors and Officers, and which the Directors and Officers have become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period;

   (C)   COMPANY SECURITIES CLAIM LIABILITY

      If Insuring Agreement (C) coverage is granted pursuant to Item F of the Declarations, the Insurer will pay on behalf of the Company Loss which the Company shall become legally obligated to pay as a result of a Securities Claim first made during the Policy Period or Discovery Period, if applicable, against the Company for a Wrongful Act which takes place during or prior to the Policy Period;

   provided, however, as a condition precedent to any such coverage, the Insureds shall report such Claim (including such Securities Claim) to the Insurer as soon as practicable but in no event later than sixty (60) days after the termination of the Policy Period or Discovery Period, if applicable.

II.   EXTENSIONS

   (A)   DEATH, INCAPACITY OR BANKRUPTCY

      In the event of the death, incapacity or bankruptcy of a Director or Officer, any Claim made against the estate, legal representatives, heirs or the assigns of such Director or Officer for a Wrongful Act of such Director or Officer shall be deemed to be a Claim against such Director or Officer.

   (B)   DISCOVERY PERIOD

      If the Insurer or the Parent Company fails or refuses to renew this Policy or if the Parent Company cancels this Policy, any Insured shall have the right, upon payment of the Discovery Period Premium set forth in Item G of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item G of the Declarations following the effective date of such cancellation or non-renewal but only with respect to any

DO 00 R292 00 0696
   NDA0105226-01    2/01/01

**Wrongful Act** taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium shall be deemed to be fully earned as of such date. This extension shall not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

(C) SPOUSAL EXTENSION

If a **Claim** against a **Director** or **Officer** includes a claim against the lawful spouse of such **Director** or **Officer** solely by reason of (a) such spousal status, or (b) such spouse's ownership interest in property or assets that are sought as recovery for **Wrongful Acts**, any loss for which such spouse becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which such **Director** or **Officer** of the spouse becomes legally obligated to pay as a result of such **Claim**.

All terms and conditions of this Policy, including the Retention, applicable to **Loss** sustained by such **Director** or **Officer** in the **Claim** shall also apply to such spousal loss.

The extension of coverage afforded by this Section II.(C) shall not apply to the extent the **Claim** alleges any wrongful act or omission by such spouse.

(D) OUTSIDE POSITION LIABILITY EXTENSION

Subject to all of its terms and conditions, this Policy covers any **Director** or **Officer** serving in an **Outside Position**, but such coverage shall be specifically excess of any indemnity or insurance available from or provided by the entity in which the **Director** or **Officer** serves in such **Outside Position**.

Payment by the Insurer or any member company of The Hartford Group of Insurance Companies under another policy as a result of a **Claim** against a **Director** or **Officer** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Policy with respect to such **Claim**.

"**Outside Position**" means the position of director, officer, trustee, or other equivalent executive position held by a **Director** or **Officer** in:

(i)   any **Non-Profit Entity**, provided Non-Profit Outside Position coverage is granted pursuant to Item I of the Declarations, or

(ii)  any other entity, provided such coverage is specifically granted by endorsement to this Policy,

if service in such position is with the knowledge and consent or at the request of the **Company**.

"**Non-Profit Entity**" means any non-profit corporation, community chest, fund or foundation that (i) is not included in the definition of **Company**, and (ii) is exempt from federal income tax as an organization described in Section 501(c) (3) of the Internal Revenue Code of 1986, as amended.

## III.  CLAIMS EXPENSES, SETTLEMENTS AND COOPERATION

(A)  No **Claims Expenses** shall be incurred or settlements made, contractual obligations assumed or liability admitted with respect to any **Claim** without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any **Claims Expenses**, settlement, assumed obligation or admission to which it has not consented.

(B)  The Insurer shall have the right to associate itself in the defense and settlement of any **Claim** that appears reasonably likely to involve this Policy. The Insurer may make any investigation it deems appropriate. However, it shall be the duty of the **Insureds**, not the Insurer, to defend any **Claim**.

(C) Subject to Section VII. of this Policy, the Insurer shall advance on behalf of the **Insureds Claims Expenses** which **Directors** and **Officers** or, solely with respect to Insuring Agreement (C), the **Company**, have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**, provided always that to the extent it is finally established that any such **Claims Expenses** are not covered under this Policy, the **Insureds**, as appropriate, agree to repay the Insurer such non-covered **Claims Expenses**.

(D) The Insurer may, with the written consent of the **Insured**, settle any **Securities Claim** for solely a monetary amount which the Insurer deems reasonable. If the **Insured** withholds consent to such settlement, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the Insurer could have settled such **Claim** plus **Claims Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**.

(E) The **Insureds** shall, as a condition precedent to their rights under this Policy, give to the Insurer all information and cooperation as the Insurer may reasonably require and shall do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

## IV. DEFINITIONS

(A) "**Claim**" means:

    (1) a written demand for civil damages or other civil relief commenced by the **Insureds'** receipt of such demand,

    (2) a civil proceeding commenced by the service of a complaint or similar pleading, or

    (3) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against **Directors** or **Officers** or, with respect to Insuring Agreement (C), the **Company**, for a **Wrongful Act**, including any appeal therefrom.

(B) "**Claims Expenses**" means that portion of **Loss** consisting of reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense or appeal of a **Claim**, but shall not include the wages, salaries, benefits or expenses of any **Directors**, **Officers** or employees of the **Company**.

(C) "**Company**" means any company named in Item A of the Declarations and any **Subsidiary**.

(D) "**Director(s)**" and/or "**Officer(s)**" means:

    (1) one or more natural persons who were, now are or shall hereafter be duly elected or appointed directors or officers of the **Company**, or, with respect to a **Subsidiary** incorporated outside the United States, their functional equivalent; and

    (2) with respect to a **Securities Claim** only, any other natural persons who were, now are or shall hereafter be employees of the **Company**.

(E) "**Discovery Period**" means the period set forth in Item G of the Declarations.

(F) "**Executive Officer**" means the president, chief executive officer, chief operating officer, chief financial officer, in-house general counsel, managing director, any executive vice president and any equivalent executive officer of the **Company**.

(G) "**Financial Insolvency**" means the status of the **Company** as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

DO 00-R292 00 0696
NDA0105226-01     2/01/01

(H) **"Insured(s)"** means one or more **Directors** or **Officers** and, solely with respect to Insuring Agreements (B) and (C), the **Company**.

(I) **"Interrelated Wrongful Acts"** means Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

(J) **"Loss"** means sums which the **Directors and Officers** or, with respect to Insuring Agreement (C), the **Company**, are legally liable to pay solely as a result of any **Claim** insured by this Policy, including **Claims Expenses**, compensatory damages, settlement amounts and legal fees and costs awarded pursuant to judgments, but excluding fines, penalties, taxes, any amount allocated to uncovered Loss pursuant to Section VII. of this Policy, or matters uninsurable pursuant to any applicable law, provided this definition does not exclude punitive or exemplary damages or the multiple portion of any multiplied damage award unless such damages are uninsurable pursuant to applicable law.

(K) **"Parent Company"** means the **Company** first named in Item A of the Declarations.

(L) **"Policy Period"** means the period set forth in Item B of the Declarations, subject to prior termination pursuant to Section IX.(B).

(M) **"Securities Claim"** means any **Claim** brought by a Securities holder of the **Company** against the **Directors and Officers** or, with respect to Insuring Agreement (C), the **Company**, if such **Claim**:

  (1) alleges a violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any similar state statute or similar common law, or any rules or regulations promulgated thereunder; or

  (2) arises from the purchase or sale of, or offer to purchase or sell, any Securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(N) **"Subsidiary"** means any corporation in which more than fifty percent (50%) of the outstanding Securities or voting rights representing the present right to vote for election of **Directors** or equivalent position is owned, in any combination, by one or more **Companies.**

(O) **"Wrongful Act"** means:

  (1) any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by the **Directors and Officers**, in their capacity as such, or in an **Outside Position**, or, with respect to Insuring Agreement (C), by the **Company**, or

  (2) any matter claimed against the **Directors and Officers** solely by reason of their serving in such capacity or in an **Outside Position**.

## V.  EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Directors and Officers** or, with respect to Insuring Agreement (C), the **Company**:

(A) for bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation, death, false arrest or imprisonment, abuse of process, malicious prosecution, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction,  or for damage to or destruction of any tangible property including loss of use thereof;

(B) for any actual or alleged **Wrongful Act** by **Directors and Officers** of any **Subsidiary** in their capacities as such or, with respect to Insuring Agreement (C), by any **Subsidiary** if such **Wrongful Act** actually or allegedly occurred when such corporation was not a **Subsidiary**;

(C) for, based upon, arising from, or in any way related to any claim, **Wrongful Act,** or circumstance if notice thereof is given under any directors and officers liability policy, the term of which incepted prior to the Inception Date of this Policy;

(D) brought or maintained by or on behalf of the **Company** or any **Director** or **Officer,** in any capacity, except:

     **(1)** a **Claim** that is a derivative action brought and maintained on behalf of the **Company** by one or more security holders who are not **Directors** and **Officers** and who bring or maintain the **Claim** without the solicitation, assistance or participation of any **Director** and **Officer;**

     **(2)** a **Claim** by a former **Director** or **Officer** for the actual or alleged wrongful termination, discrimination or sexual harassment of such **Director** or **Officer;**

     **(3)** a **Claim** for contribution or indemnity, if the **Claim** directly results from another **Claim** that is otherwise covered under this Policy; or

     **(4)** a **Claim** by any employee(s) of the **Company** described in Section IV.(D)(2) of this Policy;

(E) for, based upon, arising from, or in any way related to:

     **(1)** the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

     **(2)** any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste,

including without limitation any **Securities Claim** or any other **Claim** by or on behalf of the **Company** or its shareholders in their capacity as such.

Pollutants include, but are not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed;

(F) for, based upon, arising from, or in any way related to such **Directors and Officers** serving as a director, officer, trustee, regent, governor or employee of any entity other than the **Company** even if such service is at the direction or request of the **Company,** provided this exclusion does not apply with respect to a **Claim for a Wrongful Act** by a **Director** or **Officer** while serving in an **Outside Position** if such **Claim** is brought and maintained without the solicitation, assistance or participation of the entity in which the **Director** or **Officer** serves in the **Outside Position** or any director, officer, trustee, regent, governor or employee of such entity;

(G) for, based upon, arising from, or in any way related to an actual or alleged violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar federal, state, local or common law;

(H) for, based upon, arising from, or in any way related to any demand, suit, or other proceeding against any **Insured** which was pending on or existed prior to the applicable Prior Litigation Date specified in Item H of the Declarations, or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other proceeding;

(I) for, based upon, arising from, or in any way related to their gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled;

(J) for, based upon, arising from, or in any way related to any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication adverse to the **Insured** establishes such an act, omission or willful violation, provided this exclusion shall apply to Insuring Agreement (C), if granted, only if such judgment or final adjudication establishes that a **Director** or **Executive Officer** of the **Company** committed such an act, omission or willful violation;

(K) for an accounting of profits made from the purchase or sale by such **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any federal, state, local or common law; or

(L) for, based upon, arising from, or in any way related to the actual or proposed payment by the **Company** of allegedly inadequate or unfair consideration in connection with its purchase of securities issued by the **Company**; provided, however, that this exclusion shall not apply to Insuring Agreements (A) or (B) or to **Claims Expenses** under Insuring Agreement (C).

The **Wrongful Act** of any **Director** or **Officer** shall not be imputed to any other **Director** or **Officer** for purposes of applying the exclusions set forth in this Section V.

VI.  LIMITS OF LIABILITY, RETENTION AND COINSURANCE

(A) The Insurer's aggregate Limit of Liability for all **Loss** otherwise covered under this Policy shall be the amount shown under Item C of the Declarations whether such **Loss** is covered under one or more Insuring Agreements. The Limit of Liability in the **Discovery Period** shall be a part of, and not in addition to, the Limit of Liability shown under Item C of the Declarations.

(B) Except as provided in paragraph (C) below, the Insurer's liability in respect of **Loss** arising from each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention set forth in Item D of the Declarations.

(C) If in a **Securities Claim** all defendant **Insureds** obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment of no liability in their favor, there shall be no Retention or coinsurance percentage applicable to any **Claims Expenses** resulting from such **Securities Claim**.

(D) All **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** of one or more of the **Insureds** shall be considered a single **Claim**. Such **Claims** shall be deemed to be first made on the date the first such **Claim** is made or deemed to be made pursuant to Section VIII.(A) of this Policy, regardless of whether such date is before or during the **Policy Period**.

(E) If **Loss** arising from a single **Claim** is covered in whole or in part under more than one Insuring Agreement, the applicable Retention shall be applied separately to that part of the **Loss** covered by each Insuring Agreement and the sum of the Retentions so applied shall constitute the Retention applicable to such **Claim**; provided, however, the largest Retention amount set forth in Item D of the Declarations shall be the maximum Retention applicable to such **Claim**.

(F) If the **Company** is permitted or required by law to ultimately indemnify the **Directors** and **Officers**, or to advance **Claims Expenses** on their behalf, and does not in fact do so other than for reasons of **Financial Insolvency**, then the Insurer's liability under Insuring Agreement (A) shall be subject to the Insuring Agreement (B) Retention amount set forth in Item D of the Declarations and the coinsurance percentage set forth in Item E of the Declarations (if such **Loss** results from a **Securities Claim**). For purposes of this paragraph, the shareholder and board of directors resolutions of the **Company** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted or required by law.

(G) The Limit of Liability available to pay judgments or settlements shall be reduced by **Claims Expenses**.

(H) With respect to all **Loss** covered under Insuring Agreements (B) or (C) which arises from a **Securities Claim** and is in excess of the applicable Retention, the **Company** shall bear uninsured the coinsurance percentage of all such **Loss** specified in Item E of the Declarations. The Insurer's liability shall apply only to the remaining percentage of all such **Loss**.

## VII. ALLOCATION

If both **Loss** covered under this Policy and loss not covered under this Policy are incurred, either because a **Claim** against an **Insured** includes both covered and uncovered matters or because a **Claim** not covered under Insuring Agreement (C) is made against both a **Director** and **Officer** and others, including the **Company**, the **Insureds** and the **Insurer** shall fairly and reasonably allocate such amount between covered **Loss** and uncovered loss.

If there can be an agreement on an allocation of **Claims Expenses**, the **Insurer** shall advance on a current basis **Claims Expenses** allocated to covered **Loss**. If there can be no agreement on an allocation of **Loss**:

(A) in any arbitration, suit or other proceeding, no presumption shall exist concerning what is a fair and reasonable allocation;

(B) the **Insurer** shall advance on a current basis **Claims Expenses** which the **Insurer** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined; and

(C) the **Insurer**, solely if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Insurer** and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Claims Expenses** on account of a **Claim** shall be applied retroactively to all **Claims Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Claims Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

## VIII. NOTICE

(A) If during the **Policy Period** the **Insureds** become aware of a specific **Wrongful Act** that may reasonably be expected to give rise to a **Claim** against any **Director** or **Officer** or, with respect to Insuring Agreement (C), the **Company**, and if such **Wrongful Act** is reported to the **Insurer** during the **Policy Period** in writing with particulars as to the reasons for anticipating such a **Claim**, the nature and dates of the alleged **Wrongful Act**, the alleged damages sustained, the names of potential claimants, any **Director** or **Officer** involved in the alleged **Wrongful Act** and the manner in which the **Insureds** first became aware of the specific **Wrongful Act**, then any **Claim** subsequently arising from such duly reported **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the **Wrongful Act** is first duly reported to the **Insurer**.

(B) Notice of any **Claim** or specific **Wrongful Act** shall be given in writing to The Hartford, Hartford Plaza, Hartford, CT. 06115 Attention: D&O Claims. All other notices under this Policy shall be given to the same addressee but to the attention of Financial Products Underwriters.

(C) All notices under this Policy shall refer to the Policy Number, shall be in writing, shall be given by mail, prepaid express courier or facsimile properly addressed and shall be effective upon receipt.

## IX. GENERAL CONDITIONS

(A) TERRITORY

This Policy extends to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

(B) CANCELLATION OF POLICY

The **Insurer** may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the **Parent Company** at its last known address. The **Insurer** may not otherwise cancel this Policy. The **Parent Company** may cancel this Policy by sending contemporaneous notice to the **Insurer**, provided the **Parent Company** may not cancel this Policy after the effective date of the acquisition of the **Parent Company** as

DO 00 R292 00 0696
NDA0105226-01    2/01/01

described in Section IX.(H)(2) of this Policy. In the event the **Parent Company** cancels this Policy, the Insurer shall retain the customary short rate premium. Payment of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

(C)  SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. The obligations of the **Insureds** pursuant to this Section IX.(C) survive the termination of the **Policy Period**.

(D)  COMPANY AUTHORIZATION

By acceptance of this Policy, the **Insureds** agree that the **Parent Company** may act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or cancellation, the payment of premiums and the receiving of any return premium, the negotiation, agreement to and acceptance of any endorsements to this Policy, and the exercising of the **Discovery Period** option.

(E)  OTHER INSURANCE

If any **Loss** arising from any **Claim** is insured by another valid policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to this Policy's Policy Number.

(F)  ALTERATION, ASSIGNMENT AND TITLES LIMITATION

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement signed by an authorized representative of the Insurer.

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(G)  ACTION AGAINST INSURER

No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial, or by written agreement of the **Insureds**, the claimant and the Insurer.

No person or organization shall have the right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representative. Bankruptcy or insolvency of an **Insured** or of an **Insured's** estate shall not relieve the Insurer of any of its obligations hereunder.

(H)  CHANGES IN EXPOSURE

(1)  Acquisition or Creation of Corporation; Assets Acquisition; Assumption of Liabilities

If before or during the **Policy Period** the **Company**:

DO 00 R292 00 0696
NDA0105226-01    2/01/01

(a) acquires securities or voting rights in another corporation or creates another corporation, which as a result of such acquisition or creation becomes a **Subsidiary**, or

(b) acquires any corporation by merger into or consolidation with the **Company**,

such corporation and its **Directors and Officers** shall be **Insureds** under this Policy but only with respect to **Wrongful Acts** taking place after such acquisition or creation.

However, if during the **Policy Period** the fair value of (i) all cash, securities, assumed liabilities and other consideration paid by the **Company** for any such acquisition, or (ii) all assets acquired or liabilities assumed by the **Company** in any single transaction or series of related transactions, exceeds 20% of the total consolidated assets or liabilities, respectively, of all **Companies** as reflected in the **Parent Company's** last audited consolidated financial statements prior to such acquisition, the **Parent Company** as a condition precedent to coverage with respect to such new **Insureds** or to coverage for **Wrongful Acts** relating to such acquired assets or assumed liabilities and occurring subsequent to such acquisition or assumption, shall give written notice of such acquisition or assumption to the Insurer as soon as practicable but in no event more than ninety (90) days after the effective date of such acquisition or assumption, together with such information as the Insurer may require, and shall pay any additional premium so required by the Insurer. If the **Parent Company** fails to comply with such condition precedent, coverage otherwise afforded by this Section (H)(1) shall terminate as of ninety (90) days after the effective date of such acquisition or assumption.

(2) **Acquisition of Parent Company**

If during the **Policy Period** (i) the **Parent Company** merges into or consolidates with another entity such that the **Parent Company** is not the surviving entity, or (ii) another entity, or person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Company**, then coverage under this Policy shall continue until the later of:

(a) termination of the **Policy Period**, or

(b) any subsequent date to which the Insurer may agree by endorsement,

but only with respect to **Claims** for **Wrongful Acts** taking place prior to such merger, consolidation or acquisition. Any coverage extension pursuant to (b), above, shall be conditioned upon any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension. Any **Claim** made during such coverage extension shall be deemed to have been made during the **Policy Period** in which such merger, consolidation or acquisition occurred.

The **Parent Company** shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable, together with such information as the Insurer may reasonably require.

(3) **Cessation of Subsidiaries**

If before or during the **Policy Period** a corporation ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Directors and Officers** shall continue until termination of this Policy but only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such corporation ceased to be a **Subsidiary**.

(I) **REPRESENTATIONS AND SEVERABILITY**

The **Insureds** represent that the particulars and statements contained in the Proposal are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.

DO 00 R292 00 0696
NDA0105226-01    2/01/01

The **Insureds** agree that in the event that the particulars and statements contained in the Proposal are untrue, this Policy shall not afford any coverage with respect to any of the following **Insureds**:

(1)   any **Director** or **Officer** who knew as of the Inception Date of this Policy the facts that were not truthfully disclosed in the Proposal,

(2)   the **Company**, under Insuring Agreement (B), to the extent it indemnifies any **Director** or **Officer** referenced in (1), above, and

(3)   the **Company**, under Insuring Agreement (C), if a **Director** or any **Executive Officer** knew as of the Inception Date of this Policy the facts that were not truthfully disclosed in the Proposal,

whether or not such **Director, Officer** or **Executive Officer** knew of such untruthful disclosure in the Proposal.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**TWIN CITY FIRE INSURANCE COMPANY**
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

*C. M. O'Halloran*

Secretary

*Ramani Ayer*

President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN
NDA0105226-01    2/01/01

ENDORSEMENT NO:    1

This endorsement, effective 12:01 am,    2/01/01                                    forms part
of policy number    NDA0105226-01

issued to:          UNIFIED WESTERN GROCERS, INC.

by:                 TWIN CITY FIRE INSURANCE CO.


## PROFESSIONAL ERRORS AND OMISSIONS EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed that Section V., EXCLUSIONS, shall be amended by adding the following:

M       for, based upon, arising from, or in any way related to **Directors** and **Officers** and/or the **Company** engaging in
business as, undertaking any activities in the capacity of, giving advice in connection with or rendering or failing
to render professional services as any of the following: [only those items signified with an "X" shall be considered
as part of this Endorsement]

( )    Advertisers, including, but not limited to, the creation, development, implementation, sale or termination
of advertising materials or any campaign.

( )    Architects and/or Engineers, including, but not limited to, the formulation of designs and specifications;
the preparation of drawings, plans or blueprints; the expression of an opinion on the feasibility of any
aspect of a project; or the supervision of construction, manufacture or assembly.

( )    Broadcasters, including, but not limited to, broadcasting, publishing, telecasting, advertising, re-
broadcasting or re-televising.

( )    Counselors, including, but not limited to, giving advice, especially as a result of a consultation, about any
person's health, whether physical, mental or spiritual.

( X )  Data Processors and/or Programmers, including, but not limited to, the compilation or development of
any data, programs or records of others.

( )    Educators, including, but not limited to, educational instruction; offering of career guidance;
administration of discipline or corporal punishment; student consumerism, including class content and
grading practices; expulsion procedures, admittance procedures, including student enrollment or
participation in any extracurricular program; or busing and/or other transportation practices of students to
or from schools or extracurricular events in connection with a program or plan of integration or
desegregation.

( X )  Insurance Agents or Brokers, including, but not limited to, the negotiation of insurance contracts; the
collection or remittance of premiums; the rendering of advice concerning limits of liability, deductibles,
terms, conditions, applications of exclusions, scope of coverage, or types of coverages or forms to be
carried; the rendering of loss control services; the handling of any claim or notice of circumstances which
may give rise to a claim or any obligation arising out of or under any insurance contract.


DO 00 R304 00 0696                                                              Page 1

ENDORSEMENT NO:    1

( X )    Insurers, including, but not limited to, the actual or alleged refusal to renew or cancellation of any policy of insurance, reinsurance, bonds or indemnity, including, but not limited to annuities, endorsements, pension contracts, risk management or self-insurance programs, pools, or similar programs (hereinafter collectively referred to as "Insurance Contract"); any actual or alleged failure or refusal to pay, or delay in the payment of benefits due or alleged to have been due under any Insurance Contract; or any actual or alleged lack of good faith or fair dealing in the handling of any claim or obligation arising out of or under any Insurance Contract.

(    )    Investment Advisors (as defined in the Investment Advisors Act of 1940) and/or Brokers and/or Dealers (as those terms are defined in the Securities Exchange Act of 1934), including, but not limited to, giving financial, economic or investment advice and/or investment management services concerning corporate mergers, acquisitions, restructurings, or divestitures; investment banking, underwriting of securities, broker-dealer or syndication activities; or purchasing or selling securities for which the **Company** receives a selling commission, other remuneration, or has an equity interest in the issuer of said securities. Additionally, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** for, based upon, arising from, or in any way related to fees or other amounts charged for the **Company's** and/or the **Directors'** and **Officers'** services.

(    )    Investment Managers, including, but not limited to, the appointment of Advisors and/or Administrators; the execution, whether directly or through authority given to Investment Advisors and/or Administrators, of any direction to purchase or sell or otherwise acquire or dispose of any investment vehicle; the delivery of any stipulated or suggested rate of return or profit or interest or return of invested principal or any other measure of investment performance; or the reporting of investment results. Additionally, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** for, based upon, arising from, or in any way related to fees or other amounts charged for the **Company's** and/or the **Directors'** and **Officers'** services.

(    )    Management Consultants, including, but not limited to, giving advice or services in the management of another's business or operation.

(    )    Mortgage Bankers or Mortgage Brokers, including, but not limited to, loan origination, loan processing, loan marketing, construction lending, loan closing, loan warehousing, loan accounting, loan servicing, and the purchase or sale of loans or mortgage-backed securities.

(    )    Printers/Publishers, including, but not limited to, composing, revising, preparing for publication, editing, proof reading, designing, arranging of style and appearance, typesetting, printing, engraving, issuing or circulating of any printed matter.

(    )    Travel Agents, including, but not limited to, the sales and/or servicing of travel accommodations.

This exclusion shall not apply to any **Claim** brought or maintained by or on behalf of a security holder(s) of the **Company** other than a **Director** or **Officer**, whether directly or derivatively, where such **Claim** is based on the failure of a **Director** or **Officer** to properly supervise or manage such professional services, or based on any improper disclosure or nondisclosure of material information relating to such professional services.

All other terms and conditions of this Policy remain unchanged.

DO 00 R304 00 0696

ENDORSEMENT NO:          2

This endorsement, effective 12:01 am,     2/01/01                                    forms part
of policy number     NDA0105226-01

issued to:          UNIFIED WESTERN GROCERS, INC.

by:                 TWIN CITY FIRE INSURANCE CO.

## PAYMENTS AND GRATUITIES EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that Section V., EXCLUSIONS, is amended by adding the following:

N

for, based upon, arising from, or in any way related to payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services official, agent, representative, employee or any member of their family or any entity with which they are affiliated; or

for, based upon, arising from, or in any way related to payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time official, director, agent, partner, representative, principal shareholder, owner, employee, or affiliate (as that term is defined in the Securities Exchange Act of 1934) (collectively, "Related Party") of any customer of the Company, including any officers, directors, agents, owners, partners, representatives, principal shareholders, employees or family members of any Related Party; or

for, based upon, arising from, or in any way related to political contributions, whether domestic or foreign.

All other terms and conditions of this Policy remain unchanged.

DO 00 R307 00 0696

ENDORSEMENT NO:     3

This endorsement, effective 12:01 am,     2/01/01                                    forms part
of policy number     NDA0105226-01

issued to:          UNIFIED WESTERN GROCERS, INC.

by:                 TWIN CITY FIRE INSURANCE CO.


## OUTSIDE FOR-PROFIT POSITION EXTENSION - DOUBLE EXCESS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed the term **"Outside Position"**, as defined in Section II.(D), OUTSIDE POSITION LIABILITY EXTENSION,
shall include the position of director, officer, trustee, or other equivalent executive position held by a **Director** or **Officer**
in the following entities if service in such position is with the knowledge and consent or at the request of the **Company**:


| Director and/or Officer | Outside Organization(s) | Capacity(ies) |
|---|---|---|
| AL PLAMANN<br>DAN BANE<br>DAVE WOODWARD | K.V. MART, INC.<br>HAWAIIAN GROCERY STORES, INC<br>MAJOR MARKET, INC. | |


All other terms and conditions of this Policy remain unchanged.


DO 00 R325 00 0696

ENDORSEMENT NO:    4

This endorsement, effective 12:01 am,    2/01/01    forms part
of policy number    NDA0105226-01

issued to:    UNIFIED WESTERN GROCERS, INC.

by:    TWIN CITY FIRE INSURANCE CO.


## ADD SUBSIDIARY WITH PENDING OR PRIOR LITIGATION
## AND PRIOR ACTS EXCLUSIONS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed that the definition of "Subsidiary" in Section IV.(N) is amended to include the following:

GROCERS SPECIALTIES COMPANY

It is further agreed that Section V., EXCLUSIONS, is amended by adding the following:

O.    for, based upon, arising from, or in any way related to any act(s) or omission(s) actually or allegedly committed or
attempted by the above referenced **Subsidiary** and/or its **Directors** and **Officers** prior to    5/29/99 .

It is further agreed that, solely with respect to the extension of coverage afforded by this Endorsement, the Prior
Litigation Date set forth in Item H of the Declarations is amended to read in its entirety as follows:

Insuring Agreements A and B:    5/29/99

Insuring Agreement C:    0/00/00


I other terms and conditions of this Policy remain unchanged.


DO 00 R334 00 0696

ENDORSEMENT NO:          5

This endorsement, effective 12:01 a.m.                    2/01/01                              forms part
                        NDA0105226-01
of policy number

issued to:              UNIFIED WESTERN GROCERS, INC.

by:                     TWIN CITY FIRE INSURANCE CO.


## AMEND DEFINITION OF DIRECTOR(S) AND/OR OFFICER(S) - INDIVIDUALS


### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed that the definition of "Director(s)" and/or "Officer(s)" under Section IV., DEFINITIONS, (D), is amended to
include the following individual(s):

ROBERT E. STILES, PRESIDENT OF GELSONS MARKETS


All other terms and conditions of this Policy remain unchanged.


DO 00 R476 00 0598

ENDORSEMENT NO:     6

This endorsement, effective 12:01 am,     2/01/01                              forms part
of policy number     NDA0105226-01

issued to:     UNIFIED WESTERN GROCERS, INC.

by:     TWIN CITY FIRE INSURANCE CO.

## DELETE CONSENT TO SETTLEMENT CLAUSE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that Section III., CLAIMS EXPENSES, SETTLEMENTS AND COOPERATION, (D), is deleted in its entirety.

All other terms and conditions of this Policy remain unchanged.

DO 00 R489 00 0598

ENDORSEMENT NO:     7

This endorsement, effective 12:01 am,     2/01/01                    forms part
of policy number     NDA0105226-01

issued to:          UNIFIED WESTERN GROCERS, INC.

by:                 TWIN CITY FIRE INSURANCE CO.


## INVESTIGATIVE COSTS COVERAGE ENDORSEMENT


### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


It is agreed that:

1.  Section I., INSURING AGREEMENTS, shall be amended to include the following:

    (D)  **INVESTIGATIVE COSTS COVERAGE**

    The Insurer will pay on behalf of the **Company** all **Investigative Costs** which the **Company** shall become legally obligated to pay as a result of a **Shareholder Derivative Demand** first made during the **Policy Period** or **Discovery Period**, if applicable, on the **Company** for a **Wrongful Act** of a **Director and/or Officer** which takes place during or prior to the **Policy Period**.

2.  Section VI., LIMITS OF LIABILITY, RETENTION AND COINSURANCE, shall be amended as follows:

    a.  The following shall be added to subsection (A):

    The Insurer's maximum liability for all **Investigative Costs** covered under Insuring Agreement (D) on account of all **Shareholder Derivative Demands** first made during the **Policy Period** or **Discovery Period**, if applicable, is $ __250,000__ . This is a sublimit which is part of and not in addition to the Limit of Liability set forth in Item C of the Declarations.

    b.  The following shall be added to subsection (B):

    No Retention shall apply to **Investigative Costs** covered under Insuring Agreement (D). This provision shall not affect the applicability of the Retention to all other **Loss** covered under the Policy.

3.  Section IV., DEFINITIONS, is amended by adding the following:

    ( P ) **"Investigative Costs"** means reasonable costs, charges, fees (including attorneys' and experts' fees) and expenses incurred by the **Company**, its board of directors or any committee thereof in connection with the investigation or evaluation of any **Shareholder Derivative Demand**, but shall not include the wages, salaries, benefits, expenses or fees of the directors, officers or employees of the **Company**.

    Any limitation to coverage for **Loss** under the Policy shall also apply to **Investigative Costs**.


DO 00 R500 00 0598                                          Page 1

ENDORSEMENT NO:     7

(Q ) **"Shareholder Derivative Demand"** means any written demand by one or more shareholders of the **Company** upon the board of directors of the **Company** to bring a proceeding in a court of law against any **Director and/or Officer** for a **Wrongful Act** of a **Director and/or Officer** taking place before or during the **Policy Period.**

4.   Solely for purposes of coverage under Insuring Agreement (D):

a.   Wherever the term **Loss** appears in this Policy, it shall be deleted and replaced with **Investigative Costs.**

b.   Wherever the term **Claim** appears in this Policy, it shall be deleted and replaced with **Shareholder Derivative Demand.**

All other terms and conditions of this Policy remain unchanged.

DO 00 R500 00 0598

Page 2

ENDORSEMENT NO:    8

This endorsement, effective 12:01 am,    2/01/01                                    forms part
of policy number    NDA0105226-01

issued to:    UNIFIED WESTERN GROCERS, INC.

by:    TWIN CITY FIRE INSURANCE CO.

## ORDER OF PAYMENT ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that covered Loss due under this Policy shall be paid by the Insurer in the following order of priority:

(1)  first pay such Loss for which coverage is provided under Insuring Agreement A of the Policy;

(2)  with respect to whatever remaining amount of the Limit of Liability is available after payment of such Loss, pay Loss for which coverage is provided under Insuring Agreement B of this Policy;

(3)  with respect to whatever remaining amount of the Limit of Liability is available after payment of such Loss, pay Loss incurred by the Company and covered under Insuring Agreement C.

All other terms and conditions of this Policy remain unchanged.

DO 00 R504 00 0598

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT 9

This endorsement, effective on        2/01/01            at 12:01 A.M. standard time, forms a part of

Policy No.    NDA0105226-01        of the    TWIN CITY FIRE INSURANCE CO.

Issued to    UNIFIED WESTERN GROCERS, INC.

*Ramani Ayer*

Authorized Representative

ADD SUBISIDIARY WITH PENDING
OR PRIOR LITIGATION AND PRIOR
ACTS EXCLUSIONS

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that the definition of "Subsidiary" in Section IV.(N) is amended
to include the following:

United Grocers, Inc.

It is further agreed that Section V., EXCLUSIONS, is amended by adding the
following:

P. for, based upon, arising from, or in any way related to any act(s) or
   omission(s) actually or allegedly committed or attempted by the above
   referenced Subsidiary and/or its Directors and Officers prior to
   September 9, 1999.

It is further agreed that, solely with respect to the extension of coverage
afforded by this Endorsement, the Prior Litigation Date set forth in Item H of
the Declarations is amended to read in its entirety as follows:

Insuring Agreements A and B: September 9, 1999
Insuring Agreement C: N/A

All other terms and conditions of this Policy remain unchanged.

Page  1

GU 207 (6-78)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT    10

This endorsement, effective on          2/01/01          at 12:01 A.M. standard time, forms a part of

Policy No.    NDA0105226-01          of the    TWIN CITY FIRE INSURANCE CO.

Issued to    UNIFIED WESTERN GROCERS, INC.

*Ramani Ayer*

__Authorized Representative__

ENDORSEMENT # 10

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that Section V. EXCLUSIONS, (D) is amended by adding the following:

(5) a Claim brought or maintained by or on behalf of any Insured(s) who, at the time such Claim is first made, has not served as a Director or Officer of the Company for at least the immediately preceding three (3) years, provided such Claim is brought and maintained without the solicitation, assistance or participation of any Insured(s) who is currently serving as such a Director and/or Officer.

Coverage extended under the above paragraph shall not apply with respect to any based upon, arising from, or in consequence of any facts or circumstances which, as of the effective date of this endorsement, the Insured(s) against whom such Claim is made had reason to suppose might give rise to a future Claim.

All other terms and conditions of this Policy remain unchanged.

Page   1

GU 207 (6-78)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT   11

This endorsement, effective on          2/01/01          at 12:01 A.M. standard time, forms a part of

Policy No.   NDA0105226-01          of the     TWIN CITY FIRE INSURANCE CO.

Issued to     UNIFIED WESTERN GROCERS, INC.

_Ramani Ayer_
Authorized Representative

REINSTATEMENT OF LIMIT OF
LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed:

1. In the event a Claim is reported to the Insurer in accordance with the terms of this Policy, the Company thereafter shall have the right to purchase from the Insurer a reinstatement of this Policy ("Reinstated Policy").  The Company may exercise such right only if it provides to the Insurer written notice thereof within sixty (60) days after the Insurer first receives notice of such Claim, but no later than sixty (60) days after the termination of the Policy Period.  The Company may purchase only one such Reinstated Policy during the Policy Period, regardless of the number of Claims reported to the Insurer.

2. The Reinstated Policy shall afford coverage specifically excess of this Policy, and any other policy which is specifically excess of this Policy. Except as otherwise set forth in the Reinstated Policy, the Reinstated Policy shall be subject to the same terms and conditions as are contained in this Policy and shall terminate on the same date that this Policy terminates.

3. The Reinstated Policy's Limit of Liability shall be $10,000,000, which shall be the Insurer's maximum liability under the Reinstated Policy for all Claims first made during the period the Reinstated Policy is in effect. However, the Insurer's maximum liability under this Policy and the Reinstated Policy, combined, shall be $10,000,000 for all Loss on account of any single Claim or two or more Claims arising from the same or Interrelated Wrongful Acts.  The immediately preceding sentence further limits and does not increase the Insurer's maximum liability under this Policy or the Reinstated Policy.

GU 207 (6-78)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT    11

This endorsement, effective on             2/01/01                    at 12:01 A.M. standard time, forms a part of

Policy No.    NDA0105226-01          of the    TWIN CITY FIRE INSURANCE CO.

Issued to    UNIFIED WESTERN GROCERS, INC.

*Ramani Ayer*

Authorized Representative

REINSTATEMENT OF LIMIT OF
LIABILITY (CONT'D)

4. The Reinstated Policy shall cover, subject to its terms and conditions, Loss on account of Claims first made on or after the inception date of such Reinstated Policy and before termination of such Reinstated Policy.  The Reinstated Policy will not afford any coverage for any Claim based upon, arising from, directly or indirectly resulting from, or in consequence of, or in any way involving: (i) any Wrongful Act, written notice of which has been given under this Policy or prior similar policy by the Company and/or the Directors and Officers prior to the inception date of the Reinstated Policy, (ii) any written demand received or settlement effected by the Company and/or the Directors and Officers on or prior to the inception date of the Reinstated Policy, or (iii) the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, proceeding, order, decree, judgment, or settlement.

5. The premium for the Reinstated Policy shall be 150% of the annual premium, which, as a condition precedent to the Company's rights under this endorsement, shall be paid within thirty (30) days of the Company's written notice to the Insurer of its election to purchase the Reinstated Policy.  The premium for the Reinstated Policy shall be deemed fully earned on the date that such premium is paid to the Insurer.

6.  The inception date of the Reinstated Policy shall be the date on which the Insurer first receives such notice of election from the Company, unless another date mutually is agreed upon between the Insurer and the Company.

All other terms and conditions of this Policy remain unchanged.

Page   2

GU 207 (6-78)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT   12

This endorsement, effective on       2/01/01           at 12:01 A.M. standard time, forms a part of

Policy No.   NDA0105226-01          of the    TWIN CITY FIRE INSURANCE CO.

Issued to    UNIFIED WESTERN GROCERS, INC.

*Ramani Ayer*

Authorized Representative

ENDORSEMENT # 12

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that:

1. Section IX. GENERAL CONDITIONS, (B), CANCELLATION OF POLICY, is deleted in
   its entirety and replaced with the following:

   (B) CANCELLATION OF POLICY

   The Insurer may cancel this policy for non-payment of premium by sending
   not less than ten (10) days notice to the Parent Company at its last
   known address.  The Insurer may not otherwise cancel this Policy.

1. Section IX. GENERAL CONDITIONS, is amended by adding the following:

   (J) FULLY-EARNED PREMIUM

   The entire premium for this policy shall be deemed fully earned as of
   inception.

All other terms and conditions of this Policy remain unchanged.

Page  1

GU 207 (6-78)

AUG. 9. 2004 12:06PM    GMIS. FINANCIAL SERVICES    21 NO. 8086574P. 30-41/49

ENDORSEMENT NO: 13

This endorsement, effective 12:01 am,    2/01/01    forms part
of policy number    NDA0105226-01

issued to:    UNIFIED WESTERN GROCERS, INC.

by:    TWIN CITY FIRE INSURANCE CO.

## CANCELLATION ENDORSEMENT

## CALIFORNIA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following definitions apply solely for purposes of this endorsement:

1) "Insurer" means the insurance company which issued this policy;

2) "Named Insured" means the entity listed on the Declarations Page; and

3) "First Named Insured" means the entity listed on the Declarations Page.

It is agreed that the cancellation provision of this policy is deleted in its entirety and replaced by the following:

A.   CANCELLATION

1.   The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation, provided the First Named Insured does not cancel this policy after the effective date of the acquisition of the First Named Insured as described in this policy.

2.   If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on non-payment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

3.   Written notice of cancellation shall be delivered or mailed to the producer of record and the Named Insured at the mailing address shown on the policy at least ten (10) days prior to the effective date of cancellation. The notice shall state the effective date of and the reason for the cancellation. Proof of mailing of the notice shall be sufficient proof of notice.

B.   NONRENEWAL

If the Insurer decides not to renew the policy, the Insurer shall mail or deliver to the producer of record and the Named Insured notice of nonrenewal at the mailing address shown on the policy at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy. Proof of mailing of the notice shall be sufficient proof of notice.

We are not required to send notice of nonrenewal in the following situations:

COPY

DO 04 R293 01 0597

Page 1

NOV.AUG. 9. 2004 12:07PM . GMIS FINANCIAL SERVICES                    21.NO. 8086574P. 31.42/49

ENDORSEMENT NO:  13

a.  If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

b.  If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements cited above.

c.  If you have obtained replacement coverage, or if the Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d.  If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e.  If the Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f.  If we have made a written offer to the First Named Insured, in accordance with the time frames shown in the nonrenewal notice requirements cited above, to renew the policy under changed terms or conditions or at an increased premium rate when the increase exceeds 25%.

C.  MIDTERM CHANGES IN COVERAGE

If a policy has been in effect for more than sixty (60) days or if the policy is a renewal, effective immediately, no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

1.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by the Named Insured which materially increase any of the risks or hazards insured against.

2.  Failure by the Named Insured to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance, or which were conditions precedent to the use by the insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

3.  A determination by the commissioner that loss of or changes in an insurer's reinsurance covering all or part of the risk covered by the policy would threaten the financial integrity or solvency of the insurer unless the change in the terms or conditions or rate upon which the premium is based is permitted.

4.  A change by the Named Insured in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or materially changed risk, unless the added, increased, or changed risk is included in the policy.

Written notice shall be mailed or delivered to the Named Insured and the producer of record at the mailing address shown on the policy at least thirty (30) days prior to the effective date of any increase, reduction or change. The notice shall state the effective date of, and the reasons for, the increase, reduction, or change.

All other terms and conditions of this Policy remain unchanged.

DO 04 R253 01 0697

Page 2

## IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your agent. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

The Hartford
Hartford Plaza
Hartford, CT 06115

Telephone – (860)-547-4707

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

Consumer Affairs Division
California Department of Insurance
300 South Spring Street
Los Angeles, CA 90013
1-800-233-9045

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your agent, company or the Bureau of Insurance have your policy number available.

ILNP 85 14 03 89 CA
EL 04 R111 00 0493

NDA0105226-01    2/01/01

# IMPORTANT INFORMATION
## California Insurance Guarantee Association

Companies writing property and casualty insurance business in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share. California law requires all companies to surcharge policies to recover these assessments. If your policy is surcharged, "CA Surcharge" with an amount will be displayed on your premium notice.

UG 128 (11-94)

NDA0105226-01      2/01/01

ENDORSEMENT NO:14

This endorsement, effective 12:01 am, February 1, 2001 forms part
of policy number NDA 0105226-01

issued to:      UNIFIED WESTERN GROCERS, INC.

by:             TWIN CITY FIRE INSURANCE COMPANY

## ADD SUBSIDIARY WITH PENDING OR PRIOR LITIGATION
## AND PRIOR ACTS EXCLUSIONS

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that Endorsement No.4 is deleted in its entirety.

It is agreed that the definition of "Subsidiary" in Section IV (N) is amended to include the
following:

Gourmet Specialties, Inc.

It is further agreed that Section V., EXCLUSIONS, is amended by adding the following:

O.      for, based upon, arising from, or in any way related to any act(s) or omission(s) actually or
        allegedly committed or attempted by the above referenced Subsidiary and/or its Directors
        and Officers prior to May 29, 1999.

It is further agreed that, solely with respect to the extension of coverage afforded by this
Endorsement, the Prior Litigation Date set forth in Item H of the Declarations is amended to read in
its entirety as follows:

        Insuring Agreements A and B: May 29, 1999
        Insuring Agreement C: n/a

All other terms and conditions of this Policy remain unchanged.

                                        Authorized Representative

DO 00 R334 00 0696