031105.txt

1

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3

4    UNIFIED WESTERN GROCERS, INC.,   ) CIVIL NO. 03-00336HG
                                      )
5                    Plaintiff,       )
                                      )
6         vs.                         )
                                      )
7    TWIN CITY FIRE INSURANCE COMPANY,)
                                      )
8                    Defendant.       )
     _____)

9

10                  TRANSCRIPT OF PROCEEDINGS

11        The above-entitled matter came on for hearing on

12   Friday, March 11, 2005, at 11:37 a.m., at Honolulu, Hawaii,

13   BEFORE:          THE HONORABLE HELEN GILLMOR
                      United States District Judge
14
     REPORTED BY:     STEPHEN B. PLATT, RMR, CRR
15                    Official U.S. District Court Reporter

16   APPEARANCES:     WILLIAM C. McCORRISTON, ESQ.
                      JONATHAN H. STEINER, ESQ.
17                    CHRISTOPHER J. COLE, ESQ.
                      McCorriston Miller Mukai MacKinnon
18                    500 Ala Moana Boulevard
                      Five Waterfront Plaza, Fourth Floor
19                    Honolulu, Hawaii  96813

20                                   Attorneys for the Plaintiff

21                    WESLEY H.H. CHING, ESQ.
                      Fukunaga Matayoshi Hershey & Ching
22                    841 Bishop Street
                      Davies Pacific Center, Suite 1200
23                    Honolulu, Hawaii   96813

24

25

2

1    APPEARANCES (Continued):

031105.txt

2

3

4        KIM WEST, ESQ.
         SAMANTHA M. BALL, ESQ.
5        Tucker Ellis & West, LLP
         1000 Wilshire Blvd., Suite 1800
6        Los Angeles, California  90017

7                              Attorneys for the Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              3

1   FRIDAY, MARCH 11, 2005                    11:37 A.M.

2                       -oo0oo-

3          THE CLERK:  Civil Number 03-336, Unified Western

4   Grocers, Incorporated, versus Twin City Fire Insurance

5   Company.

031105.txt

6       This case is called for hearing on plaintiffs'

7  motion for reconsideration of the court's December 6, 2004,

8  oral order granting defendant Twin City Fire Insurance

9  Company's motion for summary judgment; and defendant's motion

10  to quash subpoena.

11       MR. McCORRISTON:  Good morning, Your Honor.

12       William McCorriston, John Steiner and Chris Cole for

13  the plaintiffs, both corporate and individual.

14       THE COURT:  Good morning.

15       MS. BALL:  Good morning, Your Honor.

16       Samantha Ball, Wesley Ching, and Kim West is

17  available by telephone, for Twin City Fire Insurance Company.

18       THE COURT:  Good morning.

19       MS. BALL:  Good morning.

20       THE COURT:  Okay, Mr. McCorriston, you have filed a

21  motion for -- the rest of you folks, why don't you sit down.

22       Mr. McCorriston, you filed a motion for

23  reconsideration, so if you want to argue that.

24       MR. McCORRISTON:  Thank you very much, Your Honor.

25       Your Honor is correct, this is our motion for

4

1  reconsideration, and let me begin by saying what it is not

2  asking to be reconsidered:

3       We are not asking that the denial of our affirmative

4  motion for summary judgment be reconsidered; we are not asking

5  that your ruling on exclusion F be reconsidered.  We are only

6  asking that your grant of the defendant's motion for summary

7  judgment be reconsidered under the grounds of manifest error,

8  and new evidence.

9       Now, whether the rubric is under Rule 59(e) or

Page 3

031105.txt

10   Rule 60 is really pretty much the same bag, and we do not

11   believe that the court erred in characterizing the complaint

12   in the light most favorable to the defendants to deny our

13   motion for summary judgment. We do believe that

14   characterizing the complaint in a light most favorable to the

15   defendants, to grant their motion for summary judgment, is

16   manifest error.

17          Judge, I'm not going to deal with the procedural

18   issues because I think they are pretty well discussed in the

19   papers.  There's ample authority for you, under either 59(e)

20   or 60, to grant -- entertain the motion for reconsideration.

21          I want to turn to, really, the basis of our concern

22   about the ruling, which is that, when you stated in your oral

23   ruling that this case was primarily one where allegations were

24   of looting, you recognized, to use your word, that there is a

25   disconnect in some of the paragraphs to the looting

5

1   allegations, recognizing, I think implicitly, that there are

2   certainly other theories in the third amended complaint in

3   addition to the looting allegations.

4          But then you went on to state that this being

5   primarily a case involving looting allegations, that you

6   believe, under the policy, it would not apply at all to the

7   third amended complaint, and thereby granted summary judgment.

8          I think in doing so there were two critical paths

9   that the court should have taken to avoid error.  The first

10   was to examine all the paragraphs in the third amended

11   complaint; more specifically, those that we have described in

12   our papers.

13          And this morning I would like to address

031105.txt
14    particularly those paragraphs that begin on 140 of the third
15    amended complaint, et seq.
16         Paragraph 141 attaches, as Exhibit 1, a listing of
17    all the actions taken by the defendant officers and directors,
18    and that's the focus of my argument this morning, Your Honor.
19    The focus is on officers and directors, and the breach of
20    fiduciary duties that are alleged in the third amended
21    complaint against them.
22         And in paragraph 141, it does state -- not by
23    implication, but expressly, that what is being complained
24    about is the action of these officers and directors on
25    May 13th, 1996, where the amount of damages were $13.5

6

1    million.
2         Paragraph 142:  That these same officers and
3    directors who took those actions in Exhibit 1, as stated in
4    paragraph 141, that they all had conflicts of interest because
5    they were officers and directors of other subsidiaries or
6    affiliates of Unified.
7         And, importantly, paragraph 143, Your Honor, where
8    it's alleged that these same directors and officers, in taking
9    those same acts, knew or should have known -- underscored:
10    Knew or should have known, that they had a conflict of
11    interest.  That's classic breach of fiduciary duty language.
12    That's classic negligence language.  That's classic tort law
13    pleading.
14         Paragraph 143, in and of itself, establishes, by
15    notice pleading, a negligence claim in this case.
16         Paragraph 144 continues on the same path:  That the
17    defendants, in taking these actions, again, in classic
                              Page 5

031105.txt

18   negligence breach of fiduciary language, knew or should have

19   known that they would breach their -- parentheses (fiduciary)

20   close parentheses -- duties as officers and directors, and

21   that subsequent to May 13th, 1996 -- that's the date of the

22   sale, Your Honor -- so they are saying both at the date of the

23   sale, and thereafter, the same individual defendants breached

24   their fiduciary duties under the negligence standard by taking

25   further actions that aided and abetted HGS to do things which

7

1   ultimately inured to the detriment of their creditors.

2        Paragraphs 146 is also instructive, because that

3   paragraph says that what we are saying in these series of

4   allegations is not limited to disgorgement or restitutionary

5   damages; it's saying that those damages are included -- but

6   the damages are not limited to the amount paid to our clients

7   for the sale of HGS, and the interest on the $5.3 million

8   promissory note.

9        As you probably are aware, that the total amount of

10  disgorgement -- potential amount of disgorgement or

11  restitutionary damages is a tick under $3 million, which would

12  include the $2.5 million consideration paid, and approximately

13  $350,000 worth of interest paid on the note, that is mentioned

14  in paragraph 146.

15       So, here we have a very clear allocution of

16  negligence; a very clear allocution of breach of fiduciary

17  duties; a statement of damages far north of the $3 million

18  disgorgement or restitutionary damages, so there, I think, is

19  the "disconnect" that Your Honor mentioned in her oral ruling;

20  that, if the restitutionary damages, or disgorgement damages,

21  are $3 million, where do the rest of the $13.5 million come

031105.txt

22    from?

23          Well, the rest of the $13.5 million, and including

24    the first $3 million, comes from the breach of fiduciary duty

25    claims that are alleged against these individual officers,

8

1     that they knew or should have known -- that had conflicts of

2     interest or had done acts in Exhibit 1 to the complaint which

3     violated negligence pleading -- negligence standards.

4           So it's clear, there's been no explanation in any of

5     the papers from the defendants as to where this $13.5 million

6     damages can come from in a restitutionary context, or

7     disgorgement context.

8           Your Honor, the complaint, for an example,

9     includes -- in that many iterations of it, including the third

10    amended complaint -- claims such as that from the State of

11    Hawaii, where it is alleged that, from 1997 through

12    bankruptcy -- November, 1997, now, this is almost a year and a

13    half after the sale took place, not money that we got from the

14    sale, not money that we got from HGS -- that, somehow, because

15    of the breach of fiduciary duties and negligence of the

16    defendants, that damages which started accruing a year and a

17    half after the sale, by nonpayment of tobacco taxes, are our

18    fault, are our damages.

19          Those aren't disgorgement damages.  Those aren't

20    restitution damages.  HGS never got the money -- I mean

21    Certified, the defendants, never got the money.  Obviously,

22    these are damages that exist independent to any kind of

23    looting allegation that are in the complaint.  There has been

24    no explanation of how the looting allegations relate to these

25    other itemization of damages.

031105.txt

9

1       We have included two expert reports.  As this court

2   knows, under our local rules, there are certain deadlines set

3   for the disclosure of expert opinions.  Included in those

4   local rules -- subsumed within them, are certain due dates as

5   to when a party must disclose what their theory of damages is,

6   what the support for the damages -- what data supports the

7   damages, and any expert opinions which are going to be offered

8   to support the damages.

9       Now, as it's been pointed out, we did get these

10  reports on November 23rd -- the afternoon of November 23rd,

11  and our reply briefs were due on the 24th.  It is true that we

12  did not submit them as part of our reply brief; in fact, they

13  weren't reviewed before we submitted the reply brief because

14  we were undertaking the responsibilities that we had with

15  regard to the pleading, and not through the discovery at that

16  time.

17      But to analogize this, as the defendants have, to

18  having Shaquille O'Neal on the bench, and not playing him in

19  the game, and then only after we lose the game coming back on

20  a motion for reconsideration and asking to play Shaquille

21  O'Neal, is absolutely incorrect.

22      We went into the motion believing, as I have just

23  stated, that the paragraphs that I have enumerated, the

24  negligence theories, the breach of fiduciary duties, we

25  thought was enough to grant us our summary judgment, but at

10

1  the least, deny the motion for summary judgment that they had.

2      If anything, in those paragraphs which I have just

031105.txt

3   enumerated, that shows that Shaquille O'Neal was playing the
4   game all the time; that was brought to the court's attention.
5           But the expert reports are kind of like videotape
6   that Shaquille O'Neal actually was in the game, because those
7   expert reports show, just as I have stated today, that the
8   primary focus of this case, at least as of the time the
9   experts' reports were filed, are not looting allegations; they
10  are allegations that these directors breached their fiduciary
11  duties, and as a consequence, that even though the company,
12  HGS, may not have been insolvent, they were, quote, "within
13  the zone of insolvency," and according to these experts, and
14  the theory that at least is being proposed as the theory for
15  damages in the case by the expert witnesses, that at that
16  point in time, because the directors knew or should have
17  been -- again, a negligence -- breach of fiduciary standard --
18  that they were within the zone of insolvency, they should have
19  known that the company was going to go further and further
20  into debt.  And as they went further and further into debt,
21  the chances of repaying creditors -- which appeared after the
22  sale -- would have been difficult.
23          And that's in the law -- which, by the way, has not
24  been adopted by the State of Hawaii, or this court, but it has
25  been adopted in other jurisdictions, this theory of zone of

11

1   insolvency, and deepening insolvency, that the experts rely
2   on.
3           Basically, their theory is, we should have
4   liquidated the company on the date of the sale, rather than
5   sell it; by failing to liquidate the company, we breached our
6   fiduciary duties, thereby causing the company to become

031105.txt

7   increasingly insolvent.

8          That is not looting; that is a negligence standard;

9   that is a breach of fiduciary standard. Those expert

10   opinions, and those expert opinion reports, absolutely stand

11   for the proposition that, if that theory is viewed in the

12   light most favorable to the defendants, motion for summary

13   judgment should never have been granted to the defendants in

14   this case.

15          Your Honor, there really is -- maybe we'll hear

16   something today, but there's been nothing in their papers to

17   explain -- by the way, those expert reports have now moved the

18   figure from $13.5 million, which I read to you in the

19   allegations in the complaint, to something -- damages in

20   excess of $20 million, which they want from the individual

21   defendants, jointly and severally.

22          Under this theory, it has nothing to do with

23   looting; their current theory is that we should have

24   determined, and did not, through negligence, or breach of

25   fiduciary duties, that this company was in the zone of

12

1   insolvency, and declared the company insolvent, liquidated it

2   and not sell it. That's their theory. That's falling --

3   fairly within the four square corners of the insurance policy.

4          Your Honor, I take umbrage to the language in the

5   papers of the defendants, that somehow, because there has been

6   a settlement agreement -- and let me update to you that the

7   settlement not only was put on the record, but now it has been

8   finally documented. It still has to be approved by the

9   bankruptcy court. That's the status of the settlement, that

10   somehow there was some collusion in this case between

Page 10

031105.txt

11  Mr. Jaress and myself, regarding the motion for

12  reconsideration.

13          As I stated in my declaration, I did not talk to

14  Mr. Jaress about my proposed offer of proof in this case; that

15  proffer comes from what I have learned in the depositions, in

16  the transcripts of the depositions, which, by the way, have

17  been sent to the defendant's counsel.  I have not talked to

18  Mr. Jaress about what his testimony would be, and nothing in

19  the settlement presupposes that the insurance company pays a

20  dollar.  A settlement in this case is independent of what

21  happens here, and what happens as far as insurance coverage.

22          So to state, as to me, and as to Mr. Jaress, that

23  there is somehow some unfair collusion, so that we could bring

24  this motion for reconsideration, is both unjust, unfair, and I

25  hope will be retracted by counsel in the course of this

13

1   hearing.

2           Thank you, Your Honor.

3           THE COURT:  Thank you, Mr. McCorriston.

4           Now, Mr. West, you are still with us?

5           MR. WEST:  Yes, I am.

6           THE COURT:  Okay.

7           Who is going to be arguing today?

8           MS. BALL:  I will, Your Honor.

9           THE COURT:  Okay.

10          MR. WEST:  Your Honor?

11          THE COURT:  Yes, Mr. West?

12          MR. WEST:  Samantha Ball is obviously going to

13  argue, but if I could address a few points?

14          THE COURT:  Before or after Ms. Ball?

031105.txt

15        MR. WEST:  Before.

16        MR. MCCORRISTON:  Your Honor, I think only one

17  should be allowed to argue, following local practice.

18        THE COURT:  Well, if he has some comments that may

19  be of assistance, I would like to hear 'em.

20        Okay, Mr. West, speak up.

21        MR. WEST:  I'll make it quite brief.

22        Your Honor, it's not the legal theories or the

23  causes of action that determine whether there's coverage; it's

24  the conduct and the wrongful acts that are alleged that

25  determine whether something's uninsurable or not.

14

1        So the court correctly concluded that this asset

2  stripping scheme was really something that resulted in the

3  looting of the corporation.  And the fact that the theories of

4  liability might include negligence or breach of fiduciary duty

5  is not the determining factor.

6        The determining factor for determining whether

7  something constitutes a return of an ill-gotten gain, or

8  whether it's an uninsurable loss because of the nature of the

9  conduct, is determined by the very acts themselves.

10        On the issue of the zone of insolvency, and the

11  theory that they should have liquidated instead of selling,

12  and that that is not looting... well, it's obvious that -- the

13  flip side of that is, they chose not to liquidate because they

14  chose, instead, to initiate the looting scheme.

15        So they are really putting the cart before the horse

16  in arguing that that's not looting.  The failure to liquidate

17  when they should have liquidated results from the decision to

18  strip assets out of the company.  And, once again, those are

031105.txt

19  uninsurable wrongful acts.

20          And, then, finally, Your Honor, you very carefully

21  considered, at the initial hearing, the very allegations of

22  the complaint, and there are ample allegations in the

23  complaint, as you recognized, that show that not only were

24  they pursuing an ill-gotten gain in seeking disgorgement of an

25  ill-gotten gain, but also, that the directors and officers

                                                                15

1  personally benefited.

2          So those are the points that I wanted to make.

3          One quick point about the references to collusion in

4  the settlement:

5          The reality is, is that the settlements that are

6  proposed are unusual on their face because, given the nature

7  of the allegations, the amount that they are seeking to settle

8  from the directors and officers is significantly more than the

9  settlement amount from the corporation.  That speaks volumes.

10          So those are my comments, Your Honor.

11          THE COURT:  Thank you, Mr. West.

12          MR. McCORRISTON:  May I address those comments,

13  since we are taking different counsel?

14          THE COURT:  No.  I am going to let her speak first,

15  and then you will have your rebuttal.

16          MS. BALL:  Thank you, Your Honor.

17          THE COURT:  Because we will be here all day, and

18  I've got other...

19          Okay, go ahead.

20          MS. BALL:  Thank you, Your Honor.

21          As we argue in our papers, Your Honor correctly

22  decided the summary judgment motion based upon the allegations

031105.txt

23  in the third amended complaint. As Mr. West just pointed out,

24  the insuring agreement of the policy, and the law provides

25  that you did exactly what you should have done: You looked to

16

1   see what was alleged.

2        Your Honor, this is a simple insurance matter.  The

3   third amended complaint speaks to a looting scheme, a scheme

4   to rob all of the assets of HGS until it was no longer able to

5   operate.  This is simply not insurable under California law.

6        Now that plaintiffs have lost, they come here and

7   they seek a second bite of the apple.  I just heard

8   Mr. McCorriston make exactly the same argument that was made

9   by McCorriston's firm, Mr. Seibert, at the hearing on

10  December 6, on the motion for summary judgment.  They

11  vigorously argued the breach of fiduciary duty cause of

12  action, and they vigorously asserted that there was insurance

13  coverage for those claims.

14       Conversely, Your Honor, Twin City pointed the

15  court's attention to the Bank of the West, and the Level Three

16  cases, which stand for the proposition that you have to look

17  past the labels; you have to look to see what's really

18  happening.  It doesn't matter if you use a nicer word than

19  "theft," it's still uninsurable if it has to do with the

20  restoration of ill-gotten gains.

21       Your Honor, they spoke regarding an amount of money,

22  and as Your Honor is aware, the pleadings set forth the

23  amounts of restitution, and they are much higher than

24  Mr. McCorriston just stated. And, again, you have to look to

25  the allegations in the third amended complaint, not to what's

031105.txt

17

1    proven, because there's not been an adjudication, and due to

2    the settlement I doubt there ever will be.

3         Those amounts are expressly set forth in the

4    paragraphs in the third amended complaint, and they total

5    $7.7 million.  Regardless, the complaint is full of

6    allegations that state that this conduct is uninsurable.

7         Because Mr. McCorriston just went through his

8    favorite portions of the complaint, I'll briefly remind

9    Your Honor that the third amended complaint, at paragraph 28,

10   said that the defendants schemed or embarked on a series of

11   transactions to take as much money as they could.

12        The third amended complaint then says that the

13   defendants falsely endorsed documents, and falsely completed

14   articles of incorporation.  That's in paragraphs 34 and 35.

15        Continuing, paragraph 35 says that they falsely

16   altered and erased or obliterated information on documents.

17   Paragraph 40 mentions the word "intentionally."

18        Moving on, Your Honor, paragraph 79 speaks to cash

19   being taken from HGS by the defendants.  And it also speaks to

20   the conduct of the defendants as aiding and abetting and

21   conspiring with one another to rob assets from HGS.

22        Paragraph 82 mentions the scheme that the defendants

23   embarked upon, to withdraw cash from HGS and give it,

24   essentially, worthless stock.

25        Continuing on to paragraph 106, the trustee alleges

18

1    that the scheme rendered HGS insolvent.  Paragraph 107 says

2    the scheme intended to mislead others.

031105.txt

3          I'm almost done...

4          At paragraph 118, the trustee alleges that the

5     defendants engaged in an effort to conceal their wrongful

6     acts.  Evidence of the same was fraudulently concealed by

7     defendants.  And then it continues on to say that these acts

8     were concealed from other officers of HGS, and that said

9     concealment was done intentionally.

10          Count 17 of the third amended complaint, at

11    paragraph 239, says that defendants aided and abetted one

12    another.  Paragraph 260 says that the defendants have been

13    unjustly enriched, and the court should order restitution.

14    Paragraph B, in the prayer of relief, asks for rescission of

15    the transactions.

16          Your Honor, this conduct cannot be insurable under

17    California law.  I believe Your Honor carefully looked at all

18    the evidence before this court at the hearing on December 6 of

19    2004, and correctly ruled that there's no coverage under

20    California law for such conduct, regardless of the fact that

21    the trustee uses the word "damages," and regardless of the

22    fact that he has a cause of action for a "breach of fiduciary

23    duty."

24          The cases instruct us that you have to look past the

25    label, to see what the wrongful acts actually are, and if they

19

1     have to do with wrongful taking, theft, robbery, looting --

2     whichever word we choose to affix to it, it's uninsurable.

3          Moreover, I believe that Mr. McCorriston has

4     bypassed the standards on reconsideration, because they are so

5     rigorous.  Your Honor, they are not allowed to come in here

6     and make the same argument again.  They should be precluded

031105.txt

7    from going through the same argument, and we should not have

8    to respond to it.

9         Moving on to the expert report issue, Your Honor,

10   those expert reports were available prior to the date that the

11   McCorriston firm filed their reply brief, and they were

12   available prior to the date that they gave oral argument.

13   They had 13 days to think about and mention the expert

14   reports, yet they chose not to do so.

15        At the hearing on December 6, Your Honor let us

16   speak for almost an entire hour, and at the conclusion of oral

17   argument, you asked if we had anything else to say.  No one

18   spoke.  The McCorriston firm did not speak.

19        Moreover, those expert reports don't meet the

20   standard of newly discovered evidence not previously

21   available.  If you look at the expert reports, if Your Honor

22   is even going to engage in that activity, you'll see that the

23   experts rely on information that was available as early as

24   1989, and the latest information contained in the reports

25   appears to be several years ago.

20

1         They could have obtained that information before,

2    had they wanted to.  It's not new, and it's not evidence,

3    Your Honor; it's expert opinion.  It's the opinion of the

4    experts based upon some math calculations that they did.

5    These are CPA's; they are not qualified to speak to whether or

6    not those numbers are the equivalent of the restoration of

7    ill-gotten gain; that's not their bailiwick.  That's why they

8    don't speak to those issues in their reports.

9         They crunch numbers, and they come up with a series

10   of numbers, but, again, Your Honor, it doesn't matter; under

031105.txt

11    Bank of the West, and Level Three, you have to look past the

12    labels.

13          If you count as many times that they use the word

14    "damages," it makes no difference. If it has to do with the

15    restoration of something that was taken, it's not insurable.

16          Your Honor very correctly took a look at the third

17    amended complaint, and all the evidence that was before this

18    court, and you determined that there's no coverage, as a

19    matter of law. For plaintiffs to come in here now, after they

20    had their day in court, and their opportunity to present their

21    best evidence, and to insinuate or accuse this court of coming

22    to a conclusion that no other court could have come to, a

23    wholesale disregard or misapplication of the law, is absurd,

24    and it's quite unfair, Your Honor.

25          I believe Mr. West has addressed the other issues

21

1    that Mr. McCorriston brought up, and I don't know if this is

2    the proper time for me now to speak to the issue regarding the

3    motion to quash, Your Honor? But if you would like to defer,

4    then I'll submit at this time.

5          THE COURT:  No, go ahead, you can speak to that.

6          MS. BALL:  Okay.

7          Your Honor, Mr. Jaress, as you know, is the counsel

8    for the trustee, and plaintiffs attempt to have him come in

9    here --

10          THE COURT:  I think it's pronounced "Jaress."

11          MS. BALL:  "Jaress," thank you, Your Honor.

12          ...to have him come in here and testify about what

13    he did not express in the third amended complaint.

14          What they suggest is that an insurance company would

Page 18

031105.txt

15  have to contact the attorney who drafted the complaint to find

16  out if he really intended something other than what he wrote

17  when he drafted the complaint.  That idea is absurd.

18          Secondly, if you follow their line of thinking, once

19  judgment had been entered, or once summary judgment had been

20  ruled on, the insurance company, and perhaps even the court,

21  would have to contact the drafter of the complaint to make

22  sure that he hadn't changed his mind to find out about what he

23  thought, but didn't write in the third amended complaint.

24          Mr. Jaress had four opportunities to draft that

25  complaint, and I'm well aware that there was much dispute

22

1  regarding the allegations.

2          And, finally, the third amended complaint was

3  answered by the Unified defendants.  Not once did they mention

4  in their oral argument, or in their papers on summary

5  judgment, that what Mr. Jaress might think -- but didn't

6  express -- is relevant.

7          Moreover, anything that Mr. Jaress might have to

8  say, that's duplicative of what's in the third amended

9  complaint, is cumulative and it's a waste of this court's time

10  to listen to it.

11          The policy provides, and the law holds, that

12  Your Honor should look at the third amended complaint, at the

13  allegations, to determine whether or not there's coverage.

14  Your Honor did that.

15          The law does not suggest, or provide in any

16  instance, that the drafter of the complaint has anything

17  relevant to say -- outside of what he already put down on the

18  piece of paper.  There's not one case -- we could not find one

Page 19

031105.txt

19    case, after days of searches, where a court in the United

20    States of America allowed that. And that's because,

21    Your Honor, it's simply an absurd idea.

22          We would ask that you would quash the subpoena to

23    Mr. Jaress.

24          And while we never intended to insult

25    Mr. McCorriston in any way, we feel that his declaration is

☐

23

1    not based upon personal knowledge due to his purported lack of

2    conversation with Mr. Jaress; and, moreover, because

3    Mr. Jaress' testimony is irrelevant, Mr. McCorriston's

4    declaration should not be considered, nor should it be part of

5    this record.

6          And if you have any questions, Your Honor, I would

7    like to answer them; otherwise, I'll submit at this time.

8          THE COURT: Thank you; I have no questions.

9          MS. BALL: Thank you, Your Honor.

10          THE COURT: Do you wish to speak again,

11    Mr. McCorriston?

12          MR. McCORRISTON: Yes, thank you, Your Honor.

13          I think Mr. West and Ms. Ball make my point for me,

14    that not once did they dispute the fact that paragraphs 141,

15    et seq., state a claim for negligence, and breach of fiduciary

16    duties because, obviously, they do, on their face, but they

17    were overlooked in the court's opinion.

18          They seem to pay lip service to the correct legal

19    proposition that the court has to look beyond the plain words

20    in the pleading. And then they ask you to do just that, only

21    read the pleading, and, beyond that, only read it the way they

22    read it. So they want you to do two things: They don't want

031105.txt

23    you to go beyond the face of the pleading; and even as to the

24    face of the pleading, they want you to only read the

25    paragraphs that they want you to read, not the paragraphs that

24

1    I want you to read, and they want you to characterize it the

2    way they want it characterized, not the way I want it

3    characterized, and that's just not the law.

4          Your Honor, there is a negligence claim stated.

5    There is a breach of fiduciary duty stated. There is no

6    contest, and none has been made, either this this morning, or

7    in their papers, that that type of negligent breach of

8    fiduciary conduct is covered within the four corners of the

9    policy.

10          So they want you to say that this is really a case

11    about looting. Nothing's been proven in this matter -- in the

12    underlying case, about looting.

13          Mr. Jaress -- and we believe he's correct -- totally

14    incorrect about whether or not there was any looting. There

15    are allegations of intentional conduct such as looting, and

16    there are also allegations for negligent breach of fiduciary

17    duty conduct. One is not covered on the policy; one is

18    covered under the policy.

19          They only want to look at one side of it. I want

20    you to look at the other side of it. But what is wrong is if

21    you give an omnibus characterization to the whole complaint

22    which is inconsistent with some of the allegations -- which is

23    what has happened.

24          I think Ms. Ball makes the point again when she

25    says -- and reads to you from the complaint, paragraph ten,

Page 21

031105.txt

1   paragraph 38, paragraph 34, paragraphs 35, 40, 79, 118, 239,

2   and others, which say that these have to do with the fact that

3   these people looted the company, and the damages is -- we want

4   that money back.

5           where is the other $10 million in the complaint?

6   where have they ever explained that to you?  where's the

7   $10 million -- where's their evidence, or even a theoretical

8   model, that that $10 million was put into my client's pocket,

9   either the individuals, for personal benefit of them, or the

10  corporations?  That $10 million isn't money that was put into

11  anybody's pocket; it was third-party --

12          THE COURT:  Mr. McCorriston, if I followed your line

13  of logic, there would be no damages that grew out of looting

14  that could be collected, and that just can't work.  I mean,

15  you can't insure the damages that grow out of looting, either,

16  just like you can't insure the looting.  So that kind of

17  progression, logically, isn't working for me.

18          MR. McCORRISTON:  Judge, I don't know --

19          THE COURT:  And I know, by saying that, I raise lots

20  of issues in your mind, but I've got to do a video conference

21  with people on the mainland at 12:00, so we have to wind this

22  up.

23          MR. McCORRISTON:  Judge, the motion for summary

24  judgment really was for one step of a two-step process.  The

25  first step is whether there are any covered claims --

1   potential covered claims in this case, and those are the ones

2   I've told you:  The negligence, the breach of fiduciary

3   duties, upwards of $20 million in claim are nonrestitutionary,

031105.txt

4    they're non-intentional; they are obviously covered claims.

5         So step two would be the application between

6    uncovered claims and covered claims, if there was a finding of

7    looting -- which there may be, and there may never be.

8         So you cannot characterize and assume that the

9    allegations regarding looting are correct, and in fact make a

10   finding of looting, when there are parallel allegations of

11   negligence which may have led to the underlying plaintiffs

12   incurring the same type of damages.

13        In other words, every single penny, including the

14   $3 million, could have resulted from the negligence of breach

15   of fiduciary duty conduct which is covered by the individual

16   defendants.  Every single penny of it.  It doesn't depend on

17   whether or not there was looting or not.

18        So they have -- and it's not uncommon to have --

19   different theories of liability for the same types of damages.

20   But when there are different theories of liability for the

21   same types of damages for coverage questions -- and this was

22   the Gray versus Zurich -- you can't pick one and say the whole

23   case is about one; you can't assume that.  If there is any

24   theoretical model which is within the covered claims, that's

25   what you go with.

27

1         And I'll just end on this, Your Honor.  I am quoting

2    from Gray versus Zurich; everybody believes the California

3    laws -- Gray versus Zurich is the seminal law in California on

4    this subject:

5         "To restrict the defense obligation of the insured

6    to the precise language of the pleading would not only ignore

7    the thrust of the cases but would create an anomaly for the

031105.txt

8    insured."

9            As the Richie versus Anchor case points out, "the

10   complainant in the third-party action drafts the complaint in

11   the broadest terms, he may very well stretch the action which

12   lies in only nonintentional conduct to the dramatic complaint

13   that alleges intentional conduct."

14            Exactly what we have here: We have both. And I

15   admit the dramatic part of the complaint is the intentional

16   conduct.

17            In light of the likely overstatement of the

18   complaint, and of the plasticity of modern pleading, we should

19   hardly designate the third party as the arbiter of parties'

20   coverage.

21            In other words we should look beyond

22   the characterization in the complaint. Are there theoretical

23   models involved in this damage claim which could come within

24   the coverage of the insurance policy? Obviously there are in

25   negligence breach of fiduciary duty claims.

28

1            Thank you.

2            THE COURT: Thank you, Mr. McCorriston.

3            Now, I recognize that there is a lot of money at

4    stake in this case, and that the kinds of allegations in all

5    four of the complaints are the kinds of allegations that make

6    people very uncomfortable, because they are talking about true

7    wrongdoing, not just mistakes being made. The allegation and

8    the essence of the complaint is about people actually doing

9    something very wrong, and that also makes people very

10   uncomfortable.

11            But this case is one that I have spent a great deal

031105.txt

12  of time on before it went over to Judge Real, and I wrote -- I
13  don't know if it was two or four orders in this case, and I
14  spent a great deal of time dealing with the complaints, and
15  seeing what it was they were alleging, and so I am comfortable
16  with my previous ruling.

17          I feel that this case is one that alleges
18  wrongdoing, and I'm not going to repeat now -- I will issue a
19  written order, I'm not going to repeat now what I said
20  earlier, but I am not persuaded by the motion for
21  reconsideration, and I don't believe that it would be
22  appropriate to hear from Mr. Jaress on this.  I don't think
23  that an attorney should be able to come in and expand on what
24  they have put in the complaint, in coverage, or even a defense
25  lawsuit.  I think that would end up with a very strange method

                                                            29

1   of analyzing it.
2           MR. MCCORRISTON:  (Standing.)
3           THE COURT:  So I am going to quash the subpoena.
4   And while I understand you're wanting to be sure that,
5   Mr. McCorriston, in doing your declaration, that there was
6   nothing improper, and that was the purpose of your doing it, I
7   don't think it adds to the overall basis upon which I should
8   be making a decision, so I don't consider it to be in -- your
9   declaration to be improper in any way, but I don't think it's
10  appropriate evidence for me to consider, and so I am going to
11  strike it.

12          Now, I will issue a written order with respect to
13  the motion for reconsideration.

14          MR. MCCORRISTON:  Your Honor, just for the record, I
15  want to make it clear that the purpose of calling Mr. Jaress
                          Page 25

031105.txt

16    was not to expand on -- or explain new things in the

17    complaint, but also to explain what's in the complaint now.

18            THE COURT:  Okay, I appreciate that, but if you

19    think about it from the point of view of how we treat

20    complaints in the normal course, that's just not how we

21    approach a complaint.

22            A person attempting to answer the allegations in a

23    complaint -- unless you are in a trial situation, and you do

24    it through evidence, etc., that's one way of expanding on the

25    complaint, or making a motion to modify, at trial, with

30

1    respect to a complaint, and have some other cause of action,

2    etc., be considered at trial ,but I don't think that, in this

3    context, it would be appropriate for me to hear from

4    Mr. Jaress.

5            So we'll deal with the other issues in the written

6    order.

7            And, I appreciate the fact that we can all have a

8    respectful difference of opinion with respect to this, and

9    that's why they have lawyers for both sides.

10            So, thank you all.

11            We stand in recess.

12            MR. McCORRISTON:  Thank you, Your Honor.

13            MS. BALL:  Thank you, Your Honor.

14            MR. CHING:  Thank you, Your Honor.

15            THE BAILIFF:  All rise, please.

16            Court stands in recess.

17            (The hearing in the above-entitled

18            cause was concluded at 11:53 a.m.)

19                          - - -

031105.txt

20
21
22
23
24
25

31

1
2
3
4
5
6
7                              -ooOoo-
8            I, Stephen B. Platt, Official Court Reporter,
9    United States District Court, District of Hawaii, do hereby
10   certify that the foregoing is a true and correct transcript of
11   proceedings before the Honorable Helen Gillmor, United States
12   District Judge.
13
14
15
16
17
18
19
20                              -------------------------------
21   TUESDAY, MARCH 16, 2005        STEPHEN B. PLATT, CSR NO. 248
22
23

031105.txt

24

25