McCORRISTON MILLER MUKAI MacKINNON LLP

| | |
|---|---|
| WILLIAM C. McCORRISTON | #995-0 |
| CHRISTOPHER J. COLE | #5781-0 |
| JONATHAN H. STEINER | #6084-0 |

Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Phone No.: (808) 529-7300/Fax No.: (808) 524-8293
E-Mail: steiner@m4law.com

Attorneys for Plaintiff UNIFIED
WESTERN GROCERS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNIFIED WESTERN GROCERS, INC.; CERTIFIED GROCERS OF CALIFORNIA, LTD.; GROCERS SPECIALTY COMPANY; ALFRED A. PLAMANN; CHARLES PILLITER; DANIEL T. BANE; ROBERT M. LING; and DAVID A. WOODWARD,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation,<br><br>　　　　　　　Defendant. | CIVIL NO. CV03-00336 HG BMK<br>(Declaratory Judgment)<br><br>PLAINTIFF UNIFIED WESTERN GROCERS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT FILED 4/5/07; DECLARATION OF CHRISTOPHER J. COLE; EXHIBITS I-K; CERTIFICATE OF SERVICE<br><br>Date:　June 14, 2007<br>Time:　11:30 a.m.<br>Judge:　Barry M. Kurren<br><br>Trial Set: November 6, 2007 |

PLAINTIFF UNIFIED WESTERN GROCERS, INC.'S
REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO AMEND COMPLAINT FILED 4/5/07

Plaintiff Unified Western Grocers, Inc., f.k.a. Certified Grocers of California, Ltd. ("Unified") respectfully submits this reply memorandum in response to Defendant Twin City Fire Insurance Company ("Twin City")'s opposition memorandum ("Memo in Opp.") filed on May 25, 2007.

I.   Standards for Amending Pleadings

Both Unified and Twin City have pending motions before the Court to amend their pleadings. Both sides agree that this Court has the discretion to grant a party leave to amend its pleadings, and such leave should be "freely granted." Fed. R. Civ. P. 15(a). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir.1991); United States v. Webb, 655 F.2d 977, 979 (9th Cir.1981). Furthermore, Unified agrees with Twin City that "the Rule 15 policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" See Twin City's Motion for Leave to Amend Answer filed 4/5/07, at p. 6 (quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)). The case law cited by both sides set forth four factors for this Court to look at in deciding the motion. All four factors weigh strongly in favor of granting Unified's motion.

53946/162432.2

II.     There has been no Undue Delay

Twin City finds itself in the awkward position of arguing that its own motion to amend its answer to assert two new affirmative defenses was timely filed, whereas Unified's motion to amend – filed on the same day – was untimely. Anticipating the obvious point that "what is sauce for the gander must be sauce for the goose," Grosz-Salmon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1161 (9th Cir. 2001), Twin City tries to distinguish the two motions as "apples and oranges" by claiming that Twin City did not know about the "new facts"[1] supporting its own proposed affirmative defenses until February, 2007. See Opp. Memo, at p. 15, n.7.

This is demonstrably false.

Twin City knew about the settlement allocation since January, 2005. On January 19, 2005, Unified notified Twin City that a tentative settlement had been reached in the underlying case. See Exhibit I, attached. Plaintiffs' counsel reported, **"The settlement essentially provides for payment of $500,000 to settle the claims in Yee v. Unified et al., Civil No. 02-00164, and payment of**

---

[1] Twin City's motion cited the following "new facts": Unified paid $2.5 million to settle all three underlying lawsuits, but allocated "a mere $500,000" to Yee v. Unified, et al., Civ. No. 02-00164 (the so-called "entities litigation"). See Twin City's Motion for Leave to Amend [Etc.], filed 4/5/07 ("Twin City Motion"), at p. 4. As Twin City explained, "This imaginary apportionment created by the Unified Defendants through the Settlement Agreement *is the basis* for Twin City's Motion for Leave to Amend Answer." Id. at p. 5 (emphasis added). See also id. at p. 11 ("The Settlement Agreement serves to shift 80% of the $2.5 million settlement payment in the Underlying Litigation to the lawsuit involving the Unified D&O's, while apportioning a mere 20% (or $500,000 dollars) to the action for which there undisputedly is no coverage. Hence, under the principle of equitable contribution, Twin City may seek reimbursement . . ..").

**$2,000,000 to settle the claims in <u>Yee v. Unified et al.</u>, Civil No. 02-00668, as well as the claims in <u>Value Recovery Group, L.P. v. Unified et al.</u>, Civil No. 04-1-0355-02."** <u>Id.</u> Thereafter, Twin City inquired in a letter how the allocation was determined, <u>see</u> Exhibit J, and Unified's counsel promptly replied, <u>see</u> Exhibit K. Twin City was later advised that the settlement had been approved. <u>See</u> Exhibit C to Memo in Opp. (3/11/05 hearing transcript), at p. 12; Cole Decl. At the hearing on Unified's motion to reconsider, Twin City's counsel argued:

> One quick point about the references to collusion in the settlement: The reality is, is that the settlements that are proposed are unusual on their face because, given the nature of the allegations, *the amount that they are seeking to settle from the directors and officers is significantly more than the settlement amount from the corporation. That speaks volumes.*

<u>Id.</u> at p. 15 (emphasis added).

Therefore, Twin City's claim that it did not know of these "new facts" until February, 2007 is totally false.

In contrast, Twin City did not deny coverage for the claims asserted by Value Recovery Group, L.P. ("VRG") until January 25, 2005 (Exhibit F), which is six days **after** Plaintiffs disclosed the settlement allocation (Exhibit I).[2] Plaintiffs had previously tendered the VRG claims in mid-2004 and had to prompt Twin City

---

[2] Twin City ponders why Plaintiffs did not include the VRG issue in the complaint, claiming this is "unexplained by Plaintiffs." <u>See</u> Memo in Opp. at p. 13. The answer is obvious and was explained in the subject motion: (1) VRG did not sue the insureds until 1 year after this action was filed; and (2) Twin City did not deny coverage until January 25, 2005; by then, this entire case had been dismissed on summary judgment and was pending reconsideration and appeal.

in early January, 2005 to respond with its coverage position. See Exhibits C-E to the instant motion. Ironically, Twin City actually waited *longer than Unified did* to file its motion to amend in relation to the date it learned of the "new facts" supporting its proposed amended pleadings. Twin City's boast that it acted "at stealth speed" (Twin City Motion, at p. 7) is inaccurate and a bit silly. The reality is that this case was on hold from December 2004 to January 2007. Until reversal and remand, it made little sense for either side to waste attorneys' fees on a potentially pointless motion to amend. Neither side unduly delayed filing a formal motion to add issues that both sides knew about since January 2005 at the latest.

Twin City's argument that Plaintiffs waited too long to assert its bad faith claim ignores the fact that Plaintiffs raised the issue in 2004. See 11/3/04 motion and related papers, adopted herein by reference. As noted previously, the 2004 motion for leave to assert a bad faith claim was denied without prejudice.

III.   Twin City Will not be Prejudiced

Twin City will suffer no prejudice. Twin City has been aware since 2004 that Unified sought to put the proposed amendments in issue in this case. Unified promptly told Twin City about the VRG coverage issue in mid-2004. See Exhibits C, D. In August of 2004, Twin City addressed coverage over the VRG claims in its summary judgment motion as if that issue was *already* part of the case. As noted above, Twin City was notified of Plaintiff's proposed bad faith

claim in Fall 2004. Three years is plenty of time to prepare to litigate a bad faith claim. The current motion to amend was filed and served on Twin City exactly 215 days, or 5,160 hours, before the presently scheduled trial date. All pretrial deadlines have been vacated. Twin City's claims of delay and prejudice are not well taken, inasmuch as Twin City failed to respond to Unified's VRG tender letter for seven months, and even then only after being prompted.

IV.   The Proposed New Causes of Action are not Futile

Both of the new causes of action proposed to be added by this motion are actionable. For alleged futility to operate as a bar to an amendment, the non-movant must demonstrate that no facts could possibly be alleged in support of the new claim or defense, under a Rule 12(b)(6) standard. Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1983). Twin City cannot meet this high burden.

A.   Proposed Count 2 (Coverage for VRG Claims) is Actionable

In the underlying litigation, VRG claimed that the insureds "owed a duty of care to [VRG] and *negligently* breached that duty." See Exhibit C to Motion (VRG complaint), at p. 8, ¶58 (emphasis added). Twin City says that VRG could only have prevailed in the underlying case if it proved that the individual insured directors and officers acted with actual intent to defraud, and that, therefore, insurance coverage is prohibited by Cal. Ins. Code § 533. See Memo in Opp., at pp. 14-15. As it has consistently done throughout this case, Twin City myopically

and unreasonably focuses exclusively on allegations of a scheme to funnel money to Unified, and *ignores VRG's claims against the insured directors and officers for negligence, breach of fiduciary duty, and damages.*

In Hawaii, a duty of care generally arises in favor of the class of persons who could be foreseeably harmed by an allegedly negligent tortfeasor's conduct. Janssen v. American Hawaii Cruises, 69 Haw. 31, 34, 731 P.2d 163, 166 (1987). In the context of claims against directors and officers of an insolvent corporation, it has long been established in Hawaii as elsewhere that corporate directors and officers owe a fiduciary duty of care to creditors. Troy Laundry Mach. Co. v. Sanitary Steam Laundry Co., 18 Haw. 388, 390 (1907). The law does not make fine distinctions between existing or future creditors in this regard. See McConnell v. Butler's Estate, 402 F.2d 362, 366 (9th Cir. 1968) ("it does not matter whether a creditor became such before or after the date of the exchange agreement; the crucial time as to creditors who will be prejudiced is the time when payment would be made, since that is the time when funds would actually be depleted."). VRG claimed that the insureds' negligence led to HGS's insolvency and harmed its predecessor in interest, Southern Pacific Bank, when that bank's Coast Business Credit division ("Coast") loaned money to HGS. See Exhibit C, VRG complaint, at p. 9, ¶61. This is a claim that has been recognized at common law. See 3 Fletcher Cyclopedia § 849 (2006).

Furthermore, contrary to Twin City's argument, claims by future creditors based on allegedly improper conveyances are actionable where the debtor engaged in an unreasonably risky transaction, regardless of any actual intent to defraud. Haw. Rev. Stat. § 651C-4(a)(2). Hence, VRG could have won without proving that anybody, much less the insured directors and officers, had acted with an intent to inflict damage for which insurance is made illegal by Cal. Ins. Code § 533.[3]

Finally, one of the insured directors and officers (Daniel Bane) remained on the HGS board of directors long after the May 1996 sale, within a time frame that could encompass the liability and damages alleged by VRG. Accordingly, it cannot be assumed that VRG occupied the status of a "future" creditor.

B.   The Proposed Count 3 (Bad Faith) is Viable

1.   The Proposed Allegations State a Claim for Relief

The new proposed count 3 states a claim upon which relief may be granted. The fact that Twin City's arguments (some of which derived, at least in part, from its bad faith) succeeded in persuading Hon. Helen Gillmor to erroneously enter

---

[3] Neither Metzger v. Lalakea, 32 Haw. 706 (1933), nor Lippi v. City Bank, 955 F.2d 599 (9th Cir. 1992) held, as Twin City contends, that a future creditor must prove that the preferred transferee actually intended to defraud some one in order to set aside a transfer. Even at common law, such a claim could also be premised on a showing that the transaction was "secret" or that the debtor used the conveyance to embark on a particularly hazardous transaction with the intent (by the debtor) to place the risk on those subsequently dealing with the debtor. Metzger, 32 Haw. at 720. The focus is on the debtor's intent, not the transferee's intent. As the Ninth Circuit observed, "[T]he focus of the 'actual intent to defraud inquiry' for standing purposes should be the transaction, not the role of each defendant in relation to the fraud. . . . Whether every defendant or transferee is *in on the fraud* is irrelevant." 955 F.2d at 607 (emphasis added).

summary judgment in its favor does not immunize Twin City from bad faith liability under California law, nor does it equate with a complete "genuine dispute" defense as a matter of law.

A recent decision by the California Court of Appeals, cited by Unified in its supporting brief, is instructive. In Jordan v. Allstate Ins. Co., 148 Cal. App. 4th 1062, 56 Cal. Rptr. 3d 312 (2007) ("Jordan II"), the court reversed summary judgment in favor of the insurer despite the fact that (1) the appeals court had earlier ruled that the insurance company's construction of its policy in denying coverage was reasonable, and (2) the plaintiff had not yet established her entitlement to any insurance coverage under the policy.

In Jordan II, the insurer denied a homeowner's first party coverage claim for a house that was falling apart due to a fungus infestation after determining that a "wet or dry rot" exclusion in the policy barred coverage. Id. at 1068, 56 Cal. Rptr. 3d at 315-316. After filing suit against the insurer, the insured raised a second basis for coverage under the policy pursuant to language extending coverage for an "entire collapse" caused by "hidden decay". Id. In the first appeal, the appellate court agreed that the insurer's construction of the "entire collapse" provision as barring coverage whenever dry or wet rot is present was reasonable, but held that the insured's contrary interpretation was also reasonable, thus rendering the policy

ambiguous and construed against the insurer. Jordan v. Allstate, 116 Cal. App. 4th 1206, 11 Cal. Rptr. 3d 169 (2004) ("Jordan I").

On remand, the insurer argued that, because the appellate court had ruled that its construction of the insurance policy was reasonable, it could not be found liable for bad faith as a matter of law. Jordan II, 56 Cal. Rptr. 3d at 316. The lower court was persuaded by this argument, and dismissed the bad faith claim on summary judgment. Id. at 317. The appeals court reversed, because the insured presented evidence in opposing summary judgment suggesting that the insurer failed to conduct a fair, thorough, timely and complete investigation of the "entire collapse" alternate basis for coverage that the insured raised after she filed suit. Id. at 321-2. The court stated that, "in order to protect the interests of its insured, it [is] essential that an insurer *fully* inquire into *possible* bases that *might* support the insured's claim." Id. 319 (quoting Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 816, 169 Cal. Rptr. 691 (1979)) (emphasis in original). Furthermore, "[a]n insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." Id. at 320 (quoting Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 1624, 50 Cal. Rptr.2d 224 (1996)). This obligation to fairly and thoroughly investigate all possible bases of coverage continues in full force

after litigation ensues. Id. at 322, n.7.[4] An insurance company owes duties of good faith and fair dealing to its insureds. The court does not. Thus, an insurer must investigate with an eye toward the possibilities of coverage, and be *even more solicitous of its insured's interests than the court is expected to be*. Obtaining an early favorable ruling does not insulate Twin City from bad faith liability.

Pursuant to the proper 12(b)(6) standard of review, the following facts taken from the proposed new pleading and Unified's other submissions must be accepted as true: (1) there is coverage under the Twin City policy; (2) Twin City failed to conduct a full, fair and unbiased investigation of its grounds for denying coverage; (3) Twin City unreasonably relied solely on the third-party claimants' unproven allegations; (4) in viewing said pleadings, Twin City ignored allegations asserting covered claims for negligence and damages; (5) Twin City raised section 533 as a coverage defense without conducting any investigation into the insureds' actual conduct and intent, despite previously conceding the possibility that the insureds acted innocently or merely negligently; (6) Twin City unreasonably refused to fund the defense of covered claims; and (7) Twin City improperly raised (and continues

---

[4] Twin City's citation to Slottow v. American Cas. Co. of Reading, Pa., 10 F.3d 1355, 1362 (9th Cir. 1993) is inapposite. Slottow addressed the standards for imposing punitive damages in breach of contract cases, and had nothing to do with bad faith or motions for leave to amend. Further, Twin City's implication that corporate insureds may not pursue bad faith claims is unavailing. See Essex Ins. Co. v. Five Star Dye House, Inc., 38 Cal.4th 1252, 137 P.2d 192 (2006) (corporation can pursue assigned bad faith claim seeking economic damages); Lance Camper Mfg. Corp. v. Republic Indem. Co. of America, 90 Cal. App. 4th 1151, 109 Cal. Rptr. 2d 515(2001) (corporate insured's bad faith verdict, including punitive damages, affirmed).

to raise) section 533 as a coverage defense despite previously recognizing that an adjudication that each insured acted willfully is a necessary predicate.

Twin City's argument that Unified cannot file a bad faith claim until it has been judicially established that coverage exists barely merits a reply. Twin City provided no support for this frivolous argument. Jordan II, supra, is one of literally thousands of cases which either directly or indirectly (by virtue of the fact that coverage and bad faith claims were joined in the same suit) reject this contention.

2.   The Bad Faith Claim is Not Time-Barred

Twin City argues that the proposed Count 3 would be time-barred by California's statute of limitations. Twin City's contention is erroneous for at least three reasons. First and foremost, this action was filed in June, 2003, so Count 3 relates back to that original commencement date because it arises out of the same conduct: Twin City's denial of insurance coverage for the underlying Hawaiian Grocery Stores litigation. Fed. R. Civ. P. 15(c)(2). Indeed, Twin City's bad faith occurred in certain respects *after* this lawsuit was filed and is ongoing.

Second, the assumption that California's statute of limitations applies in this case is incorrect. Applicable choice-of-law rules indicate that Hawaii's statute of limitations governs, despite the application of California's substantive law to the coverage issues. See Deutsch v. Turner Corp., 324 F.3d 692 (9th Cir. 2003) (forum state would presumptively apply its own limitations period under conflict of laws

analysis); Industrial Indem. Co. v. U.S., 757 F.2d 982 (9th Cir. 1985) (same). Cf. Ferens v. John Deere Co., 494 U.S. 516, 520 (1990) (Mississippi law would supply the limitations period despite the fact that Pennsylvania law governed the substantive issues). California has no substantial interest in the application of its statute of limitations to this case, which has been brought in another state against a non-California resident defendant. See ABF Capital Corp. v. Osley, 414 F.3d 1061 (9th Cir. 2005) (the primary purpose behind California's statute of limitation is to protect California defendants and courts from having to litigate stale claims). Under Hawaii law, Unified has six years to bring an action for breach of the covenant of good faith and fair dealing that does not seek any damage to person or property, Haw. Rev. Stat. § 657-1, and any amendment relates back by operation of statute. See Haw. Rev. Stat. § 657-3.5.

Third, Plaintiffs put Twin City on notice by filing a timely motion in 2004 to assert a bad faith claim. It would be inequitable for Twin City to rely on the statute of limitations to prevent this Court from reaching the merits. Also, Twin City has engaged in a continuing *and ongoing* course of bad faith conduct. Fact issues concerning accrual and tolling preclude a denial of relief on a motion to amend.

V.      This Motion has not been Filed in Bad Faith

Seriously undermining its own assertion that the proposed new claims would be an exercise in futility, Twin City cries that Unified's motion is a "transparent

attempt to increase the perceived settlement value of this simple declaratory relief case" in advance of the upcoming settlement conference.  See Memo in Opp., at p. 20.  Of course, when Unified filed this motion, it did not know the timing in which it would be disposed.  Both of the proposed new causes of action have merit and serve Unified's legitimate objectives in this case to vindicate its contractual rights as Twin City's insured.  Twin City does not even articulate a rational basis for surmising that Unified has filed this motion in bad faith.  Twin City has thus failed to meet its burden of proving that Unified has acted with an improper motive or otherwise filed this motion in bad faith.

For all of the reasons mentioned herein and in the subject motion and its supporting papers, Unified respectfully requests that the court grant the motion in its entirety and grant Unified leave to file the amended pleadings as proposed.

DATED:  Honolulu, Hawaii, _____JUN - 1 2007_____.

_____
WILLIAM C. McCORRISTON
CHRISTOPHER J. COLE
JONATHAN H. STEINER

Attorneys for Plaintiff UNIFIED WESTERN GROCERS, INC